Traci L. Van Pelt, Wyo. Bar #6-4330
Michael T. McConnell, Wyo. Bar #5-2942
Jared C. Lockwood, *Pro Hac Vice*
McConnell Fleischner Houghtaling & Craigmile, LLC
4700 S. Syracuse Street, Suite 200
Denver, CO  80237
(303) 480-0400 – Phone
(303) 458-9520 – Facsimile
tvanpelt@mfhc.com
mmcconnell@mfhc.com
jlockwood@mfhc.com

Attorneys for Defendant Secore & Waller, LLP

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| THE MARTHA W. GIBBS REVOCABLE | ) | |
| TRUST, SUSAN GIBBS, SCOTT M. GIBBS, | ) | |
| AND JAMES W. GIBBS, TRUSTEES; and | ) | |
| ALIDA D. TALMAGE TRUST FBO MARTHA | ) | |
| GIBBS, SUSAN GIBBS, SCOTT M. GIBBS, | ) | |
| AND JAMES W. GIBBS, TRUSTEES, | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 2:10-cv-00120-WFD |
| DENNIS R. LAWRENCE, et al. | ) | |
| Defendants | ) | |

---

## DEFENDANT SECORE & WALLER, LLP'S MEMORANDUM BRIEF IN SUPPORT OF THE FED. R. CIV. P. 12(b)(2) MOTION TO DISMISS

---

## TABLE OF CONTENTS

I.   INTRODUCTION...................................................................................1

II.  OVERVIEW OF THE PARTIES AND CLAIMS...................................... 1

III. LEGAL STANDARDS REGARDING PERSONAL JURISDICTION............... 4

    A.  Personal Jurisdiction – General Principles............................................4

    B.  Standards for a Motion to Dismiss under FED. R. CIV. P. 12(b)(2)...........11

IV.  FACTUAL BACKGROUND...................................................................12

V.   LEGAL ARGUMENT..........................................................................16

    A.  This Court Should Dismiss S&W for Lack of Personal Jurisdiction Pursuant
    to FED. R. CIV. P. 12(b)(2)...............................................................17

       i.   Requiring S&W to Defend This Matter in Wyoming Will Be a
       Constitutionally Significant Inconvenience................................18

      ii.   S&W Has Insufficient Contacts with the State of Wyoming...........18

     iii.   S&W Would Be Severely Inconvenienced Should it Have to Defend in
      Wyoming.........................................................................21

     iv.   S&W's Conduct Occurred in Texas.........................................21

VI.  CONCLUSION..................................................................................23

# TABLE OF AUTHORITIES

## Cases

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) .................5, 12

*AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008)...........................................16

*Benally v. Amon Carter Museum of Western Art*, 858 F.2d 618, 625 (10th Cir. 1988) (emphasis added)..............7, 24

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) .................7, 13, 21, 22

*Busch v. Buchman, Buchman & O'Brien*, 11 F.3d 1255, 1259 (Fifth Cir.1994)..................................................12, 20

*Cont'l Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1314 (10th Cir.1982).....................................................8

*Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 146 (10th Cir.1992)..................................................................................8

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)..........................................6, 7

*Dusenbery v. U.S.*, 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed. 2d 597 (2002) ......................................................9

*Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir.1995) ....................................................................8

*Graymore, LLC v. Gray*, 2007 WL 1059004 at 3 (D. Colo. 2007)..........................................................................15

*Hanson v. Denckla*, 357 U.S. 235, 252-53, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ...............................................8

*Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)............6, 8

*Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d
492 (1982) .............................................................................................................................................11, 12

*International Shoe Co. v. State of Washington Office of Unemployment Compensation and Placement*, 326 U.S. 310,
316 66. S.Ct. 154, 90 L.Ed. 95 (1945)..............................................................................................................5, 12

*Koock v. Sugar & Felsenthal, LLP*, 2010 WL 1223794, at 2 (M.D. Fla., 2010......................................................15, 16

*Leney v. Plum Grove Bank*, 670 F.2d 878, 879 (10th Cir.1982)..............................................................................5

*Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir.1990) *and Bracewell*, 748 F.2d at 1504)........................................15

*Mathews v. Eldridge*, 424 U.S. 319, 331-32, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) .................................................13

*Media v. Four Winds Int'l Corp.*, 111 F. Supp.2d 1164, 1166 (D. Wyo. 2000) ........................................................21

*Melea, Ltd. v. Jawer, SA*, 511 F.3d 1060, 1066 (10th Cir. 2007) .......................................................................8, 9

*Miles, et al v. Lawrence, et al.*, Civil Action No. 10-CV-0034-WFD .........................................................................1

*Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir.1988)........................................................................................16

*Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 103-104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987)............10, 11

*Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 201 (E.D. Pa. 1974).............................................23

*Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000) ........................................passim

*Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1278 n. 5 (10th Cir.2005)..............................................9

*Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942(11th Cir. 1997 .........................passim

*Rush v. Savchuk*, 44 U.S. 320, 332, 100 S. Ct. 571, 572, 62 L.Ed. 2d 516 (1980) ...........................................9, 16

*Serras v. First Tennessee Bank National Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989)..............................................15

*Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991) .......................................................................14, 16

*Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir.1974).............................................................................16

*Willingway Hosp., Inc. v. Blue Cross & Blue Shield*, 870 F. Supp. 1102, 1104 (S.D.Ga.1994)....................10, 12, 21

## Statutes

15 U.S.C. § 78aa...............................................................................................................................................10, 11

15 U.S.C. §78aa...............................................................................................................................................10, 21

15 U.S.C. §78j(b)......................................................................................................................................................4

15 U.S.C.A. § 22......................................................................................................................................................11

17 C.F.R. §240.10b-5................................................................................................................................................4

28 U.S.C. §1367....................................................................................................................................................10

W.S. § 5-1-107.......................................................................................................................................................21

## Rules

Fed. R. Bankr. P. 7004(d) ....................................................................................................11

Fed. R. Civ. P. 12(b)(6) .......................................................................................................27

Fed. R. Civ. P. 12(b)(2) ..................................................................................................passim

Fed. R. Civ. P. 4....................................................................................................................10

## Secondary Sources

4 Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure § 1063 (1987)......................................10

*Federal Civil Rules Handbook 2010,* Baicker-McKee, Janssen, Corr, §2.1 .................................................................5

## **EXHIBITS**

Exhibit A – Affidavit of Attorney Joan Conway Waller (with attached Exhibits 1-4)

## I.  INTRODUCTION

The basis for this Motion is straightforward: this Court lacks personal jurisdiction over Defendant Secore & Waller, LLP ("S&W" or "the Law Firm"), a small Texas law firm with absolutely no connection to Wyoming.[1]   There is not a single allegation that supports this Court's exercise of personal jurisdiction over this Texas limited liability partnership.  Pursuant to Fed. R. Civ. Pro. 12(b)(2) and longstanding, crystal clear authority, this Court must dismiss the claims against S&W for lack of personal jurisdiction.

## II.  OVERVIEW OF THE PARTIES AND CLAIMS

Plaintiffs are two trusts, The Martha W. Gibbs Revocable Trust ("the Gibbs Trust") and the Alida Talmage Trust FBO Martha Gibbs ("the Talmage Trust") (collectively referred to as "the Trusts") and the various trustees of the Trusts.  Each of the Trustee Plaintiffs is an adult child of Martha W. Gibbs.  Mrs. Gibbs is not a Plaintiff.  As against S&W this case arises solely from the Gibbs Trust's purported purchase of preferred stock in a private entity, Shale Royalties - 12, Inc. (referred to hereafter as "SR-12").[2]   SR-12 is a Delaware corporation formed in April

---

[1] Pursuant to this Court's order of August 20, 2010 (Docket # 43), this Court consolidated this matter with *Miles, et al v. Lawrence, et al.*, Civil Action No. 10-CV-0034-WFD ("the *Miles* action), for the purposes of discovery and pretrial proceedings.  S&W incorporate by reference as if fully set forth herein, the arguments made in its pending Motion to Dismiss pursuant to Fed. R. Civ. Pro. 12(b)(2) filed in the *Miles* action.  Furthermore, to the extent S&W raises additional bases and legal authority in support of dismissal of the claims against it for lack of personal jurisdiction, S&W submits such bases and legal authority apply to the pending motion in the *Miles* action and are therefore incorporated by references as if fully set forth in the *Miles* action.

[2] Plaintiffs claim that the Trusts were misled by Mrs. Gibb's Wyoming accountant and Colorado financial advisers into making a series of high-risk investments resulting in $762,000.00 in losses.  However, only $135,000 was invested in SR-12; thus the remaining $627,000 in alleged losses is wholly unrelated to S&W's activities.  At its root, this is a securities and malpractice case against Plaintiffs' own financial advisers.  Plaintiffs claim their financial advisers talked them into investing in two separate and distinct groups of bad investments consisting primarily of oil and gas interests outside of Wyoming.  Plaintiffs claim all these high risk and illiquid

2008.  SR-12 had its only office in Texas.  (See, Exhibit A, Affidavit of Attorney Joan Conway Waller, at ¶ 27)  At the time of the SR-12 offering, Provident Royalties, LLC, a Delaware limited liability company with its only office in Texas, owned substantially all of SR-12, with the remaining owners being persons who were landmen or employees of Provident Royalties.  SR-12 was formed to acquire oil and gas leases and other mineral interests **outside** the state of Wyoming.  (Ex. A, Waller Aff., ¶ 18)  SR-12 conducted a private offering of preferred stock available only to accredited investors.

Provident Royalties and SR-12 retained S&W to draft the Private Placement Memorandum ("the PPM") for the SR-12 preferred stock.  (Ex. A, Waller Aff., ¶ 18)  S&W is not identified in any fashion in the PPM.  (Ex. A, Waller Aff., ¶ 22)  S&W drafted the PPM for SR-12 and never had any communications with any investor in SR-12, any registered representative offering preferred stock in SR-12 to potential investors, nor any investment advisor recommending SR-12 preferred stock.  (Ex. A, Waller Aff., ¶ 21)  All of S&W's activities related to the PPM occurred in Texas where S&W has its only offices and where SR-12 and Provident Royalties, LLC had their only offices.  (Ex. A, Waller Aff., ¶¶ 26, 27)

Plaintiffs specifically allege that Defendants Lawrence and Pope caused the Gibbs Trust to invest in SR-12.  There is no allegation that S&W brought the SR-12 investment to the attention of the Gibbs Trust or its advisors, ever spoke with any Plaintiff about SR-12, or had any contact – verbal or otherwise – with any Plaintiff about any matter.  There is no allegation that S&W caused the Gibbs Trust to invest in SR-12.  In fact, from the timing of the allegations in the Complaint, Plaintiffs did not even learn of S&W's existence – *or the existence of the PPM* –

_____

investments were not appropriate for the Trusts that were to provide support for Mrs. Gibbs.

2

until long after the Gibbs Trust had purchased stock in SR-12.

S&W is a small Texas law firm. (Ex. A, Waller Aff., ¶¶ 2, 3, 4, 34)  No party to this case – either Plaintiff or Defendant – has ever been a client of the Law Firm. (Ex. A, Waller Aff., ¶ 27)  Plaintiffs have never had any contact of any kind, in Wyoming or elsewhere, with S&W. (Ex. A, Waller Aff., ¶ 21)  At the time the Gibbs Trust invested in SR-12 it did not know that S&W drafted the PPM. (Amended Complaint, ¶¶ 63-64)  The only "contact" S&W had with the state of Wyoming, which could in anyway be associated with this lawsuit, is that S&W mailed cover letters and checks accompanying Notices of Sales of Securities ("the Notice") for the Shale Royalties offerings to the Wyoming Secretary of State, including a cover letter for the Notice for SR-12. (Ex. A, Waller Aff., ¶ 23)  S&W did not file the Notice with the state of Wyoming; SR-12 did. (Ex. A, Waller Aff., ¶ 23)  A director of SR-12 signed the Notice.  It was not signed by S&W. (Ex. A, Waller Aff., ¶ 23)  The entirety of S&W's contact with the state of Wyoming was the sending of a *cover letter* enclosing S&W's *client's* Notice to the Wyoming Secretary of State and enclosing the filing fee in compliance with W.S. § 17-4-132 and Wyoming Securities Rule Chapter 9, Section 2. (Ex. A, Waller Aff., ¶ 23)

S&W has never practiced law in Wyoming or engaged in business in Wyoming. (Ex. A, Waller Aff., ¶ 12)  There is no allegation that S&W mailed or communicated the PPM to any Wyoming investor.  Even a cursory reading of the Amended Complaint makes the Wyoming nature of this dispute crystal clear.  The key defendants – the financial advisors, accountants, and brokers/representatives – all engaged in business in Wyoming; it cannot be disputed that S&W did not.[3]  This Court simply lacks personal jurisdiction over the law firm.  It is unfair and

---

[3] The overwhelming focus of the Amended Complaint is investments and other financial

unreasonable, and therefore a violation of due process, to require S&W to defend the Gibbs Trust's spurious claims in this District.  At its heart, this is a securities and malpractice case against Plaintiffs' Wyoming and Colorado investment advisors.  S&W – a Texas law firm with no connection to Wyoming – should not be required to litigate these claims in this district.

Plaintiffs have asserted four claims for relief against S&W which are properly dismissed here: Count One – Securities Fraud under 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5; Count Five – Securities Fraud and Aiding and Abetting under the Wyoming Securities Act; Count Six – Aiding and Abetting under the Texas Securities Act; and Count Thirteen - Negligence.  Plaintiffs also alleged Fraud against "Defendants" generally (Eleventh Claim for Relief) *Amended Compliant* ¶¶ 185-188) yet pled no specific facts or allegations that would support a fraud claim against S&W.

The first procedural step in assessing the Gibbs Trust's claims against S&W is the evaluation of personal jurisdiction pursuant to FED. R. CIV. PROC. 12(b)(2) and governing Tenth Circuit authority, *Peay v. BellSouth Medical Assistance Plan,* 205 F.3d 1206, 1212 (10th Cir. 2000).  Under *Peay* and other Tenth Circuit law, this Court lacks personal jurisdiction over S&W.

### III.    LEGAL STANDARDS REGARDING PERSONAL JURISDICTION

#### A. **Personal Jurisdiction – General Principles.**

Before a federal district court may address the merits of a plaintiff's claim, it must satisfy three prerequisites: 1) jurisdiction over the person (a court's ability to drag a person or entity into

transactions wholly unrelated to SR-12 and S&W.

its district); 2) subject matter jurisdiction (the court's ability to hear a particular type of claim); and 3) venue. *Leney v. Plum Grove Bank*, 670 F.2d 878, 879 (10th Cir.1982); *see also*, *Federal Civil Rules Handbook 2010,* Baicker-McKee, Janssen, Corr, §2.1.   Key considerations in the evaluation of personal jurisdiction are the due process concepts of fair play and substantial justice. *International Shoe Co. v. State of Washington Office of Unemployment Compensation and Placement,* 326 U.S. 310, 316 66. S.Ct. 154, 90 L.Ed. 95 (1945).   In analyzing whether a court's exercise of personal jurisdiction offends traditional notions of fair play and substantial justice, the Court should determine first if there are minimum contacts and only if there are sufficient minimum contacts then determine "whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

As to the applicable test for personal jurisdiction, a court's analysis begins with two questions: "[f]irst, we ask whether any applicable statute authorizes the service of process on defendants.   Second, we examine whether the exercise of such statutory jurisdiction comports with constitutional due process demands." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).   As the Tenth Circuit noted in *Dudnikov*, "The Supreme Court has held that, to exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Id*. (internal citations omitted).

There are two ways, one general and one specific, to demonstrate the requisite minimum contacts.   "First, if a defendant has 'continuous and systematic general business contacts' with

the forum state, it may be subjected to the general jurisdiction of the forum state's courts." *Id.* (quoting *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).  "Second, even in the absence of 'continuous and systematic' contacts, a state's courts may exercise specific jurisdiction over a defendant that '**purposefully directed**' its activities at the state's residents, if the cause of action arises out of those activities."  *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)) (emphasis added).  This purposeful availment requirement also ensures that a defendant will not be subject to the laws of a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts, **or of the unilateral activity of another party or a third person**." *Id.*; *Benally v. Amon Carter Museum of Western Art, 858 F.2d 618, 625* (10th Cir. 1988) (emphasis added).

Here, there is no allegation that S&W had continuous and systematic business contacts with Wyoming.  Thus, there is simply no basis for the finding of general personal jurisdiction over S&W.  Turning to the analysis of "specific" personal jurisdiction, S&W submits that there is no allegation in the Amended Complaint – nor can there be without violating Rule 11 – that S&W purposely directed the drafting of the SR-12 PPM to the residents of Wyoming.  The actions of Defendants Lawrence, Pope or their related investment entities is not sufficient for this Court to find *S&W* directed *its* activities to The Gibbs Trust or any other resident of the state of Wyoming.  S&W submit there is a veritable legion of case law holding that "the unilateral activity of another party 'is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.'" *Doe v. Nat'l Med. Servs.,* 974 F.2d 143, 146 (10th Cir.1992) (quoting *Helicopteros Nacionales de Colombia, S.A., supra, 466 U.S. at 417*; *see  also Melea, Ltd. v. Jawer, SA,* 511 F.3d 1060, 1066

(10th Cir. 2007).

Here, the minimum contacts analysis must focus on the activities of S&W.  As the Supreme Court held long ago, "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla,* 357 U.S. 235, 252-53, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).  Rather, only the defendant's own actions, **directed at the forum state**, are relevant to the jurisdictional question. *Id.  See, also, Melea, supra.*

As the Tenth Circuit noted in *Melea v. Jawer,* a defendant's correspondence with someone within the forum is not sufficient to establish the requisite "minimum contacts."  *Id*. at 1068, fn. 7; *see also*, *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1077 (10th Cir.1995), *Cont'l Am. Corp. v. Camera Controls Corp.,* 692 F.2d 1309, 1314 (10th Cir.1982)).  Here, with respect to SR-12, S&W sent a single cover letter and check to the Wyoming Secretary of State. The Tenth Circuit has held that even if a defendant sends a large volume of communications to a person within the forum, it is the quality of those contacts that the Court must take into account. *Melea, supra*, 511 F.3d at 1068; *Pro Axess, Inc. v. Orlux Distribution, Inc.,* 428 F.3d 1270, 1278 n. 5 (10th Cir.2005).  Here, as noted S&W sent a ***cover letter*** enclosing its ***client's*** Notice of Sale of Securities for the SR-12 offerings to the Wyoming Secretary of State along with a check transmitting its client's funds held in trust.  This suit does not arise from the sending of that Notice.  Like the Tenth Circuit found in *Melea*, those types of communications are simply insufficient to meet the due process requirements of personal jurisdiction.  *Id*. at 1068.

Generally, before a federal trial court may exert personal jurisdiction over a defendant, the due process standards of either the Fifth or Fourteenth Amendments must be satisfied.

*Dusenbery v. U.S.,* 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed. 2d 597 (2002).   These

requirements must be met for each defendant named in the action.   *Rush v. Savchuk,* 44 U.S. 320,

332, 100 S. Ct. 571, 572, 62 L.Ed. 2d 516 (1980).

Here, Plaintiffs have pled federal question subject matter jurisdiction.   *Amended

Complaint, ¶* 9, citing 15 U.S.C. § 78aa and 28 U.S.C. §1367.   When the Court's subject matter

jurisdiction is premised on a purported federal question, personal jurisdiction must be analyzed

under the Due Process Clause of the Fifth Amendment.   *Peay v. BellSouth Medical Assistance

Plan,* 205 F.3d at 1211-1212 *Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 103-104,

108 S.Ct. 404, 98 L.Ed.2d 415 (1987); *Republic of Panama v. BCCI Holdings (Luxembourg)

S.A.,* 119 F.3d 935, 942(11th Cir. 1997.

Under *Peay,* in a federal question case this Court must determine (1) "whether the

applicable statute potentially confers jurisdiction" by authorizing the service of process on the

defendant and (2) "whether the exercise of jurisdiction comports with due process." *Peay*, 205

F.3d at 1209.   *Peay* goes on to state:

> While service of process and personal jurisdiction both must be satisfied before a
> suit can proceed, they are distinct concepts that require separate inquiries.
> *Willingway Hosp., Inc. v. Blue Cross & Blue Shield,* 870 F. Supp. 1102, 1104
> (S.D.Ga.1994) (citing 4 Charles Alan Wright and Arthur R. Miller, Federal
> Practice & Procedure § 1063 (1987)).   In the federal system, service of process is
> governed by Rule 4 of the Federal Rules of Civil Procedure.   By contrast, "'[t]he
> requirement that a court have personal jurisdiction flows . . . from the Due
> Process Clause. . . .   It represents a restriction on judicial power not as a matter of
> sovereignty, but as a matter of individual liberty.'"   *Omni Capital Int'l,* 484 U.S.
> at 104, 108 S.Ct. 404 (quoting *Insurance Corp. of Ireland v. Compagnie des
> Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)).
> More specifically, in federal question cases, personal jurisdiction flows from the
> Due Process Clause of the Fifth Amendment.   *See id.* at 103-04, 108 S.Ct. 404
> (assuming, in a federal question case, that a court's exercise of personal
> jurisdiction must comport with Fifth Amendment due process principles);
> *Republic of Panama,* 119 F.3d at 942 ("It is well established that when ... a

> federal statute provides the basis for jurisdiction, the constitutional limits of due
> process derive from the Fifth, rather than the Fourteenth, Amendment.").

*Id.* at 1209-1210.

Some federal statutes creating private rights of action authorize nationwide service. *See e.g.* 15 U.S.C.A. § 22; 15 U.S.C.A. §78aa; and Fed R. Bankr. P. 7004(d). There is a conflict among the Circuits about whether valid service under one of these nationwide service statutes automatically confers nationwide personal jurisdiction without more. *Peay, supra,* at 1210-1212. On at least two occasions, the Supreme Court has declined to decide whether the national contacts approach is constitutional under the Fifth Amendment. *Omni Capital Int'l,* 484 U.S. at 103 n. 5, 108 S.Ct. 404; *Asahi Metal Indus. Co. v. Superior Court of Cal.,* supra, 480 U.S. at 113. Under the rule in the Tenth Circuit, and the controlling authority for this Court, nationwide service does not mean that any and every United States District Court has personal jurisdiction over a defendant. *Peay, supra.* In the Tenth Circuit, an in depth Fifth Amendment due process analysis must be performed to determine if a federal trial court has personal jurisdiction over a defendant under the so-called "national contacts" test. *Id.,* at 1211. In *Peay*, the Tenth Circuit went on to explain:

> [T]he personal jurisdiction requirement flows from the Due Process Clause of the
> Fifth Amendment and restricts judicial power in order to protect the individual's
> liberty interest. *Bauxites,* 456 U.S. at 702, 102 S.Ct. 2099. Thus, the "**proper
> focus for a personal jurisdiction test should be on protecting an individual's
> liberty interest in avoiding the burdens of litigating" in an unfair or
> unreasonable forum**. *Busch v. Buchman, Buchman & O'Brien,* 11 F.3d 1255,
> 1259 (Fifth Cir.1994). "**Requiring that the individual defendant in a national
> service of process case only reside somewhere in the United States does not
> protect this interest.**" *Id.; see also Willingway Hosp., Inc. v. Blue Shield,* 870 F.
> Supp. 1102 at 1106 ("To allow Congress to dictate personal jurisdiction through
> the enactment of nationwide service of process provisions, unquestioned by the
> judiciary[,] is nonsensical.").

The Supreme Court has not yet defined Fifth Amendment due process limits on personal jurisdiction. However, the Court has held that due process under the Fourteenth Amendment requires that "**maintenance of [a] suit ... not offend traditional notions of fair play and substantial justice**." *International Shoe Co. v. Washington,* 326 U.S. at 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks and citation omitted). Due process limits on a court's ability to exercise jurisdiction "**are designed to protect [defendants] by providing them with fair notice that their activities will render them liable to suit in a particular forum.**" *Republic of Panama,* 119 F.3d at 945 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 470-77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). **A defendant is deemed to have "fair warning" if it has "purposefully directed [its] activities at residents of the forum**." *Burger King Corp.,* 471 U.S. at 472, 105 S.Ct. 2174 (internal quotation marks and citation omitted). However, **even if** a defendant has "minimum contacts" with the forum, **due process is not satisfied unless "the assertion of personal jurisdiction would comport with fair play and substantial justice.**" *Id.* at 476, 105 S.Ct. 2174 (internal quotation marks and citation omitted).

Like the Eleventh Circuit, we discern no reason why the Fourteenth Amendment's fairness and reasonableness requirements "should be discarded completely when jurisdiction is asserted under a federal statute." *Republic of Panama,* 119 F.3d at 945. The Due Process Clauses of the Fourteenth and Fifth Amendments are virtually identical, and both "were designed to protect individual liberties from the same types of government infringement." *Id.* (citing *Mathews v. Eldridge,* 424 U.S. 319, 331-32, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). **Accordingly, we hold that in a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant. In other words, the Fifth Amendment "protects individual litigants against the burdens of litigation in an unduly inconvenient forum.**" *Id.*

*Peay, supra,* at 1211-12 (emphases added).

Consequently, in a federal question case in the 10th Circuit, where personal jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be **fair and reasonable** to each defendant. *Peay, supra.* This Court must therefore perform a minimum contacts analysis to determine if dragging a defendant into that court is fair and reasonable. *Id.* This requires a minimum contact analysis that may differ somewhat from the traditional inquiry associated with diversity actions under the Fourteenth

Amendment.  *Peay,* at 1212.  This analysis is essentially a hybrid between the Fourteenth Amendment's minimum contracts test and the Fifth Amendment's fair and reasonable test.  *Id.* (stating the Fourteenth Amendment's fairness and reasonableness requirements should not be discarded when jurisdiction is asserted under a federal statute and requiring the plaintiff's choice of forum not to unduly inconvenience or burden a defendant).

S&W respectfully submit that under the circumstances of this case, this Court lacks personal jurisdiction over the law firm.  The Gibbs Trust's claims against S&W must be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(2).

### B.      Standards for a Motion to Dismiss under FED. R. CIV. P. 12(b)(2)

When presented with a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "a court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions."  *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991).  The court has discretion to decide which approach to follow.  *Id.*

In a motion to dismiss under  FED. R. CIV. P. 12(b)(2) the parties can present evidentiary material, such as affidavits and supporting documentation, in support of their respective positions.  *See e.g. Koock v. Sugar & Felsenthal, LLP,* 2010 WL 1223794, at 2 (M.D. Fla., 2010; *Graymore, LLC v. Gray,* 2007 WL 1059004 at 3 (D. Colo. 2007).  While the consideration of such materials ordinarily would convert a motion to dismiss into one for summary judgment, in the context of a motion to dismiss for lack of personal jurisdiction the motion remains one to dismiss even if evidence outside the pleadings is considered.  *Koock, supra, at 2* (citing

*Bracewell v. Nicholson Air Servs. Inc.,* 748 F.2d 1499, 1501 n. 1 (11th Cir.1984)).

A court's decision to hold an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction is discretionary but not mandatory. *Koock, supra,* at 2 (citing *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990) *and Bracewell,* 748 F.2d at 1504).

However a court chooses to address a Rule 12(b)(2)motion, the plaintiff always bears the burden of establishing that jurisdiction exists.  *Serras v. First Tennessee Bank National Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989).  It is the duty of the party asserting the claim to demonstrate that the Court has personal jurisdiction and that the due process requirements for personal jurisdiction are satisfied.  *See e.g. AST Sports Science, Inc. v. CLF Distribution Ltd.,* 514 F.3d 1054, 1056 (10th Cir. 2008) (where jurisdiction is contested, plaintiff has the burden).  The plaintiff must establish personal jurisdiction for each named defendant.  *Rush v. Savchuk,* 44 U.S. 320, 332, 100 S. Ct. 571, 572, 62 L.Ed. 2d 516 (1980).

If the defendant supports its motion to dismiss with affidavits, the plaintiff may not stand on its pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.  *Theunissen,* 935 F.2d at 1458 (citing *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 930 (6th Cir.1974)).  A court must accept the facts alleged in plaintiff's complaint as true, but only to the extent that they are not contradicted by defendant's affidavits.  *Koock, supra,* at 2 (citing *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir.1988)).

## IV.   FACTUAL BACKGROUND

S&W is a small law firm located in Dallas, Texas.  (Ex. A, Waller Aff., ¶ 3, 4, 34)  The firm has five attorneys: Joan Conway Waller, Dan Waller, Wayne Secore, David Dyer and Allison Baker.  (Ex. A, Waller Aff., ¶ 2)  All S&W's attorneys are licensed to practice law in

Texas.  One attorney, Wayne Secore, is also licensed to practice law in the State of Illinois.  (Ex. A, Waller Aff., ¶ 3)    No attorney at S&W, other than Wayne Secore, is licensed to practice law in any state other than Texas.  No attorney is licensed to practice law in Wyoming.  (Ex. A, Waller Aff., ¶ 3)

S&W's address and principal place of business is:

> **Secore & Waller, L.L.P.**
> Four Forest
> 12222 Merit Drive, Suite 1350
> Dallas, Texas 75251

The law firm has no other addresses or places of business.  (Ex. A, Waller Aff., ¶ 4).  In this matter, because of the pending *Miles* action, defense counsel accepted service of process in this matter in Colorado.  In the *Miles* action, S&W was served with process, in Dallas, Texas at its principal place of business.[4]  (Ex. A, Waller Aff., ¶ 5).

S&W has never maintained an office in Wyoming.  (Ex. A, Waller Aff., ¶ 6)  None of the S&W attorneys are licensed in Wyoming or in the United States District Court for the District of Wyoming.  (Ex. A, Waller Aff., ¶ 3)  S&W has no contacts with the state of Wyoming and has never had one single contact with Mrs. Martha Gibbs, the Trusts, or any of the trustees.  (Ex. A, Waller Aff., ¶¶ 6-17 and 21)  Rather, S&W represented Provident Royalties, LLC (a Delaware limited liability company with its sole office in Texas) and its subsidiaries, including SR-12 (a Delaware corporation with its sole office in Texas), with regards to the Provident Offerings.  (Ex. A, Waller Aff., ¶ 18) Provident Royalties, LLC, was located in Texas; its physical address and

---

[4] As noted, the Miles action is a suit involving a different party's purchase of preferred stock in Shale Royalties 4, Inc. (SR_4) and SR-12.  The only common facts vis a vis S&W in the Miles action and the case at bar is the fact that S&W drafted the PPM for the Shale Royalties offerings at issue in both cases, SR-4 and SR-12.

principal place of business was 15660 N. Dallas Parkway, Suite 400 Dallas, Texas 75248.  (Ex. A, Waller Aff., ¶ 27)  Each subsidiary, including SR-12 was also located at that address.  *Id.*

The scope of S&W's representation of Provident Royalties, LLC included incorporating special purpose subsidiary corporations, including SR-12.  (Ex. A, Waller Aff., ¶ 18)  S&W also prepared private placement memoranda for various Provident Royalties, LLC subsidiaries including SR-12.  *Id.*  S&W's representation of Provident Royalties, LLC and its subsidiaries took place in Texas.  *Id.*  Plaintiff the Gibbs Trust, through no contact with S&W, purports to have invested in SR-12.

S&W did not transmit, disburse, or disseminate any of the private placement memoranda drafted for any of the Shale Royalties entities, including the PPM for SR-12 to anyone other than the S&W clients who retained the law firm to draft the PPM and other counsel representing those clients.  (Ex. A, Waller Aff., ¶ 20) S&W's name is not found in the PPM for SR-12.  (Ex. A, Waller Aff., ¶ 22)*; Exhibit 2, Private Placement Memorandum for SR-12.*  Importantly, it should be noted that Plaintiffs allege the PPM for SR-12, and only the PPM for SR-12, links S&W to this action in any way.  *See generally, Amended Complaint.*  Plaintiffs' Amended Complaint does not allege that S&W provided Mrs. Gibbs, the Gibbs Trust, the Talmage Trust, or any trustee with any documents of any kind, let alone the PPM for SR-12.   In fact, Plaintiffs' Amended Complaint does not allege that S&W provided the SR-12 PPM to anyone, anywhere in the State of Wyoming.

S&W admits that it incorporated Provident Royalties, LLC subsidiaries, including SR-12. (Ex. A, Waller Aff., ¶¶ 18, 30)  S&W sent documents from Texas to the Delaware Secretary of State to incorporate SR-12.  S&W admits that pursuant to an offering under Rule 506 of

Regulation D of the Securities Act of 1933 and section 18(b)(4)(D) of the Securities Act of 1933, S&W, on behalf of SR-12, sent a cover letter to the Secretary of State of Wyoming, enclosing documents its clients had signed and a check drawn on the S&W trust account holding funds for that client.  (Ex. A, Waller Aff., ¶ 23)   Specifically, S&W transmitted to the State of Wyoming a Form D with the signature of Shale Royalties 12, Inc. executives, the required $200 check drawn on S&W's client trust account and Forms U-2 and U-2A which give SR-12's consent for the Wyoming Secretary of State to accept service of any legal process against SR-12 in the State of Wyoming.  (Ex. A, Waller Aff., ¶ 23)  Again, the only communication directly from S&W to the state of Wyoming was a cover letter transmitting S&W's client's documents and payment to the Secretary of State.  (Ex. A, Waller Aff., ¶ 23)

Form D is a formality for an exempt securities offering and was required to be filed in the State of Wyoming.  Forms U2 and U-2A are formalities of a securities offering which must be filed by the entity seeking to offer securities, here SR-12.  (Ex. A, Waller Aff., ¶ 23)  These forms simply gave SR-12's consent to be served with legal process in the state of Wyoming. (Ex. A, Waller Aff., ¶ 23, *Exhibit 4*)  The actual documents received by the Secretary of State for filing did not mention S&W, were not signed by S&W, and did not give S&W's consent to be served with legal process in Wyoming.  (Ex. A, Waller Aff., ¶ 23, *Exhibit 4*)  S&W is only identified in the cover letter and the check drawn on the law firm's trust account for its client's filing fee.[5]  (Ex. A, Waller Aff., ¶ 23, *Exhibit 4*)  By transmitting its client's documents to the State of Wyoming, S&W did  not direct its actions towards Wyoming or avail itself of "the privilege of conducting activities" within the State of Wyoming.  Rather, S&W simply assisted

---

[5] As this Court is aware, funds in a law firm's trust account do not belong to the law firm.  Thus, S&W simply transmitted its clients' funds to the Secretary of State.

its client's compliance with federal and state laws with respect to its client's offering of securities in Wyoming.

All of S&W's activity for SR-12 occurred in Texas where S&W's principal and only place of business is located. (Ex. A, Waller Aff., ¶ 26)  S&W drafted the PPM for SR-12 in Texas and delivered the PPM to its client in Texas. (Ex. A, Waller Aff., ¶¶ 20, 30)  All meetings between S&W and Provident Royalties, LLC or any subsidiary occurred in Texas. (Ex. A, Waller Aff., ¶ 29)  S&W attorneys did not travel outside of Texas for purposes of their representation of Provident Royalties, LLC or SR-12.  *Id.*  The actions, if any, of Provident Royalties, LLC, SR-12, of any third party broker/dealer, financial adviser or certified public accountant in Wyoming, including any use, dissemination or distribution of the PPM, is not attributable to S&W. (Ex. A, Waller Aff., ¶ 31)

## V.   LEGAL ARGUMENT

Under the Due Process Clause of the Fifth Amendment "proper focus for a personal jurisdiction test should be on protecting an individual's liberty interest in avoiding the burdens of litigating" in an unfair or unreasonable forum. *Peay, supra,* at 1211 (*citing Busch v. Buchman, Buchman & O'Brien,* 11 F.3d at 1259) (emphasis added). "Requiring that the individual defendant in a national service of process case only reside somewhere in the United States does not protect this interest." *Id.* (emphasis added), *see also Willingway Hosp., Inc. v. Blue Shield,* 870 F. Supp. 1102, 1106 (S.D. Ga. 1994).

Due process limits on a court's ability to exercise personal jurisdiction "are designed to protect [defendants] by providing them with fair notice that their activities will render them liable to suit in a particular forum." *Republic of Panama,* 119 F.3d at 945 (citing *Burger King*

*Corp. v. Rudzewicz,* 471 U.S. 462, 470-77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). A defendant

is deemed to have "fair warning" if it has "purposefully directed [its] activities at residents of the

forum." *Burger King Corp.,* 471 U.S. at 472, 105 S.Ct. 2174.  However, even if a defendant has

"minimum contacts" with the forum, due process is not satisfied unless "the assertion of personal

jurisdiction would comport with fair play and substantial justice."  *Id.* at 476, 105 S.Ct. 2174; *see*

*also Media v. Four Winds Int'l Corp.,* 111 F. Supp.2d 1164, 1166 (D. Wyo. 2000).

> **A).     This Court Should Dismiss S&W for Lack of Personal Jurisdiction Pursuant to FED. R. CIV. P. 12(b)(2).**

The Amended Complaint asserts jurisdiction under 15 U.S.C. §78aa and the Wyoming

long-arm statute, W.S. § 5-1-107.  *Amended Complaint, ¶¶9-10.*  As this is a claim before the

Court on federal question jurisdiction, the Wyoming long-arm statute clearly does not grant this

Court personal jurisdiction over S&W and is irrelevant.  Further, 15 U.S.C. § 78aa does not

provide this Court with personal jurisdiction over Secore & Waller as the law firm has no

contacts with Wyoming, none of the due process requirements of the Fifth Amendment are met

and there will be a fundamental lack of fair play and substantial justice should S&W be forced to

defend this matter in the District of Wyoming.  Therefore, this Court should dismiss the case as

to S&W under FED. R. CIV. P. 12(b)(2).

To establish that jurisdiction does not comport with Fifth Amendment due process

principles, a defendant must first demonstrate "that his liberty interest actually have been [or will

be] infringed." *Peay, supra at 1212* (citing *Republic of Panama,* at 946).  To do this, the

defendant must show that the exercise of personal jurisdiction over him in the chosen forum will

"make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe

disadvantage in comparison to his opponent." *Burger King Corp.,* 471 U.S. at 478, 105 S.Ct.

2174 (internal quotation marks and citations omitted); *see also Republic of Panama,* 119 F.3d at

948 (following *Burger King Corp.*).   This burden has been described as establishing a

"constitutionally significant inconvenience."   *Peay,* 205 F.3d at 121; *Republic of Panama,* 119

F.3d at 946.

> **i.      Requiring S&W to Defend this Matter in Wyoming will be a Constitutionally Significant Inconvenience.**

In evaluating whether a defendant has met its burden "of establishing constitutionally

significant inconvenience," courts should consider the following factors: (1) the extent of the

defendant's contacts with the place where the action was filed; (2) the inconvenience to the

defendant of having to defend in a jurisdiction other than that of his residence or place of

business, including (a) the nature and extent and interstate character of the defendant's business,

(b) the defendant's access to counsel, and (c) the distance from the defendant to the place where

the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings

and the extent to which the discovery proceedings will take place outside the state of the

defendant's residence or place of business; and (5) the nature of the regulated activity in question

and the extent of impact that the defendant's activities have beyond the borders of its state of

residence or business.   *Peay,* 205 F.3d 1206, at 1212 (citing *Oxford First Corp. v. PNC

Liquidating Corp.,* 372 F. Supp. 191, 201 (E.D. Pa. 1974)).

> **ii.      S&W Has Insufficient Contacts with the State of Wyoming**

The Amended Complaint concedes that S&W is a Texas limited liability partnership and

law firm maintaining a principal place of business in Dallas, Texas.   *Amended Complaint* ¶ 29.

The Amended Complaint also alleges that S&W prepared the PPM and related documents for

SR-12, a Delaware corporation.  *Id.*

The Amended Complaint does not allege S&W had any contacts with the State of Wyoming.  Plaintiffs do not allege S&W did anything directed towards the State of Wyoming, any of its residents, or Plaintiffs.  *Id, see also Benally v. Amon Carter Museum of Western Art,* 858 F.2d 618, 625 (10th Cir. 1988) (stating that due process requires "a defendant's contacts with the forum state be the purposeful activities of that defendant and not the result of others in that state: 'The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State….'").

S&W has never maintained an office in Wyoming; has never hired employees, agents, or servants in Wyoming; has never owned, leased or held a security in any real or personal property in Wyoming; has never opened or maintained a bank account in Wyoming; has never paid or owed any taxes to the State of Wyoming or any of its political subdivisions; has never sought admission to practice law in the State of Wyoming; has never been admitted to practice law in Wyoming; has never practiced law in the State of Wyoming; has no clients in the State of Wyoming; has never engaged in any business in Wyoming; has never maintained a telephone or fax number in the State of Wyoming; has never maintained or been required to maintain a registered agent for service in Wyoming; never promoted any investments in Wyoming; never solicited Plaintiffs at any time, either in Wyoming or elsewhere; and has never been a party to a lawsuit in Wyoming except for the instant proceeding. (Ex. A, Waller Aff., passim)

The only tenuous thread connecting S&W's activities to this lawsuit (and the *Miles* action) is its representation of Provident Royalties, LLC and SR-12.  The scope of this representation included incorporating special purpose subsidiary corporations, including SR-12.

19

S&W prepared private placement memoranda for various Provident Royalties, LLC subsidiaries, including SR-12.  S&W's representation of Provident Royalties, LLC and its subsidiaries took place in Texas. (Ex. A, Waller Aff., ¶ 18)

Prior to drafting any incorporation documents or private placement memoranda for any Shale Royalties entities, S&W required the principals [control persons] responsible for the Shale Royalties offerings [who included the principals of Provident Royalties, LLC] to answer questionnaires regarding their involvement in any securities violations, litigation, bankruptcies or similar issues, or their involvement with any entity that had been involved in any violation of any federal or state securities law. (Ex. A, Waller Aff., ¶ 19)  All principals associated with the SR-12 offering, including the principals of Provident Royalties, LLC and SR-12, executed these questionnaires for such offering, affirming they were not currently or ever had been involved in any violation of any federal or state securities laws.  *Id.*  The persons who completed these questionnaires provided them to S&W in Texas.  *Id.*  Information S&W used in preparing the PPM was obtained from the answers to these sworn questionnaires, as well as from personal interviews, requests for information, on-site visits and other activities, all of which took place in Texas.  *Id.*

Further, S&W did not transmit, disburse, or disseminate any of the private placement memoranda drafted for any of the Shale Royalties entities, including SR-12, to anyone other than S&W's clients, all of whom were located in Texas, and other counsel representing those clients.. (Ex. A, Waller Aff., ¶ 20)  S&W is not identified in the PPM or any other offering documents. (Ex. A, Waller Aff., ¶ 22)

S&W has never had any contact of any kind with Martha Gibbs, Susan Gibbs, Scott

20

Gibbs, James Gibbs, Dennis Lawrence, or Randall Pope.  (Ex. A, Waller Aff., ¶ 21)  S&W has never had any contact with any person alleged to have participated or assisted in The Gibbs Trust's purchase of SR-12 stock regarding such purchase except its direct clients, Provident Royalties, LLC and SR-12.

### iii.    S&W Would be Severely Inconvenienced Should it Have to Defend in Wyoming

Plaintiffs concede that S&W is a Texas law firm.  *Complaint* ¶ 29.   S&W has five attorneys; four of whom are licensed to practice law only in Texas; the other is licensed to practice law in Texas and Illinois only.  (Ex. A, Waller Aff., ¶ 3)  None of the S&W attorneys are licensed in Wyoming or in the United States District Court for the District of Wyoming.  *Id.* All of S&W's actions in this matter occurred in Texas.  (Ex. A, Waller Aff., ¶ 26  S&W's client in this matter, Provident Royalties, LLC, the sponsor of SR-12, and SR-12, are both located in Texas and the PPM for SR-12 was delivered in Texas.   S&W's office is approximately 1,000 miles from Cheyenne and 1,200 miles from Casper.  (Ex. A, Waller Aff., ¶ 35)

Furthermore, Plaintiffs wish to litigate five distinct cases as one.  S&W is only alleged to have been "involved," by virtue of drafting the PPM, in the SR-12 transaction.  Plaintiffs claim against S&W involves only a $135,000 loss related to the Gibbs Trust's purchase of preferred stock in SR-12.   Overall, Plaintiffs claim that the Trusts lost $762,000.00 in transactions orchestrated by Defendants Lawrence, Pope and others.  The cost of S&W participating in this litigation and discovery on all of Plaintiffs' claims will far exceed the full amount Plaintiffs seek to recover from S&W – at most $135,000.  Plaintiffs' selection of Wyoming as the forum is certainly not fair and reasonable with respect to S&W.

### iv.    S&W's Conduct Occurred In Texas.

21

The only basis of the Plaintiffs' claims against Secore & Waller is the law firm's drafting of the SR-12 PPM.  All of S&W's actions in representing Provident Royalties, LLC and SR-12 in connection with the offering by SR-12 occurred in Texas where S&W's principal and only place of business is located.  (Ex. A, Waller Aff., ¶¶ 25, 27, 29)  S&W's client in this matter, Provident Royalties, LLC, the sponsor of the Shale Royalties offerings (including SR-4 and SR-12) was located in Texas.  *Id.*  All meetings between S&W and Provident Royalties, LLC and/or its principals occurred in Texas.  *Id.*  S&W did not travel outside of Texas for purposes of their representation of Provident Royalties, LLC.  *Id.*  All questionnaires sent to the principals of Provident Royalties, LLC in order to gather information to draft the PPM were sent within the state of Texas.  (Ex. A, Waller Aff., ¶ 19)  All principals of Provident Royalties answered those questionnaires and affirmed the accuracy of those answers in the state of Texas.  (Ex. A, Waller Aff., ¶ 19) .

In addition to the PPM, S&W drafted the certificates of incorporation and organization documents for SR-12 in Texas, and provided these documents to its clients in Texas.  (Ex. A, Waller Aff., ¶ 30) The actions, if any, of Provident Royalties, LLC or SR-12 in Wyoming, including any use of the PPM, is not attributable to S&W. (Ex. A, Waller Aff., ¶ 31)  Any actions of any third party broker/dealer, financial adviser or certified public accountant in Wyoming, including any use of the private placement memorandum, is not attributable to S&W. *Id.*  Any impact that the SR-12 PPM had outside of the State of Texas cannot be attributed to S&W and instead must be attributed to Provident Royalties, its subsidiaries, employees, brokers

or agents.[6] (Ex. A, Waller Aff., ¶ 32)

## VI.  CONCLUSION

Under the foregoing authorities and incorporating the legal arguments raised in S&W's

Motion to Dismiss Pursuant to Rule 12(b)(2) filed in the Miles action, this Court does not have

personal jurisdiction over S&W.  All claims against S&W must be dismissed under FED. R. CIV.

P. 12(b)(2).

**DATED** this 25th day of August, 2010.

Respectfully Submitted,


*S/        *Traci L. Van Pelt*
Traci L. Van Pelt, Atty. No. 6-4330
Michael T. McConnell, Atty. No. 5-2942
Jared C. Lockwood, *Pro Hac Vice*

**McConnell Fleischner Houghtaling & Craigmile,
LLC**
Denver Corporate Center, Tower 1
4700 South Syracuse Street, Suite 200
Denver, Colorado  80237-2710
Phone Number: 303-480-0400
Fax Number: 303-458-9520
tvanpelt@mfhc.com
mmcconnell@mfhc.com
jlockwood@mfhc.com

---

[6] As addressed more fully in S&W's Motions to Dismiss pursuant to FED. R. CIV. P. 12(b)(6), in this matter, Plaintiffs do not allege they read the PPM prior to the Gibbs Trust's investment in SR-12, that they relied upon any representations in that PPM in making the investment in SR-12 or that they knew of S&W prior to the Gibbs Trust's purchase of SR-12 stock.  Under both state and federal law, Plaintiffs have failed to state a claim against S&W.

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 25th day of August, 2010 a copy of the foregoing **DEFENDANT SECORE & WALLER, LLP's FED.R.CIV.P. 12(b)(2) MOTION TO DISMISS AND SUPPORTING BRIEF** has been e-filed and thereby served electronically via the Court's CM/ECF system to the following persons:

Kim D. Cannon, Esq.
J. Mark Stewart, Esq.
Davis & Cannon, LLP
422 West 26th Street, P.O. Box 43
Cheyenne, WY  82003
cannon@davisandcannon.com
mark@davisandcannonchey.com

John A. Hutchings, Esq.
Dill Dill Carr Stonbraker & Hutchings, P.C.
455 Sherman Street, Suite 300
Denver, CO  80203
jhutchings@dillanddill.com

David A. Baugh, Esq.
Baugh Dalton Carlson & Ryan
55 West Monroe Street, Suite 600
Chicago, IL  60603
dbaugh@baughdaltonlaw.com

Mark W. Gifford, Esq.
Jeffrey C. Brinkerhoff, Esq.
Gifford & Brinkerhoff
243 South Park Street, P.O. Box 2508
Casper, WY  82602
mark@giffordbrinkerhoff.com
jeff@giffordbrinkerhoff.com

*Traci L. Van Pelt*
Traci L. Van Pelt