Traci L. Van Pelt, Wyo. Bar #6-4330
Michael T. McConnell, Wyo. Bar #5-2942
Jared C. Lockwood, *Pro Hac Vice*
McConnell Fleischner Houghtaling & Craigmile, LLC
4700 S. Syracuse Street, Suite 200
Denver, CO  80237
(303) 480-0400 – Phone
(303) 458-9520 – Facsimile
tvanpelt@mfhc.com
mmcconnell@mfhc.com
jlockwood@mfhc.com

Attorneys for Defendant Secore & Waller, LLP

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| THE MARTHA W. GIBBS REVOCABLE | ) | |
| TRUST, SUSAN GIBBS, SCOTT M. GIBBS, | ) | |
| AND JAMES W. GIBBS, TRUSTEES; and | ) | |
| ALIDA D. TALMAGE TRUST FBO MARTHA | ) | |
| GIBBS, SUSAN GIBBS, SCOTT M. GIBBS, | ) | |
| AND JAMES W. GIBBS, TRUSTEES, | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 2:10-cv-00120-WFD |
| DENNIS R. LAWRENCE, et al. | ) | |
| Defendants | ) | |

---

**DEFENDANT SECORE & WALLER, LLP'S BRIEF IN SUPPORT OF
FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS**

---

# TABLE OF CONTENTS

I.     INTRODUCTION.................................................................1

II.    STATEMENT OF THE CASE.................................................3

III.   STATEMENT OF UNDISPUTED FACTS.................................5

IV.   LEGAL ARGUMENT.........................................................7

    A.    Fed.R.Civ.P. 12(b)(6) Standards...........................................7

    B.    Overview of Federal Securities Law.......................................9

    C.    Plaintiffs' Claims Against Secore & Waller Under 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5 Must Be Dismissed.......................................................9

        a.    Secore & Waller Cannot Be Liable Under 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5 for Merely Assisting in the Drafting of the Private Placement Memoranda.......................................................13

        b.    Plaintiffs Have Failed to Plead Scienter Against Secore & Waller...... 16

        c.    Plaintiffs Have Not Alleged Reliance on the Private Placement Memoranda.......................................................18

        d.    Plaintiffs Cannot Establish Loss of Causation Against Secore & Waller.19

    D.    Plaintiffs' Fifth Claim For Relief Against Secore & Waller for Violation of the Wyoming Securities Act, WS §17-4-122(a), Must Be Dismissed.......... 20

    E.    Plaintiffs' Sixth Claim For Relief Against Secore & Waller for Violation of the Texas Securities Act, Tex. Civ. St., Art. 581-33F(2), Must Be Dismissed..22

    F.    Plaintiffs' Eleventh Claim For Relief Against "Defendants" (Assumingly Including Secore & Waller) for Fraud Must Be Dismissed..........................28

        a.    Plaintiffs Failed to Plead Fraud With Particularity.......................29

        b.    Plaintiffs Have Alleged Fraud Generally Against All Defendants In Violation of PSLRA Requirements........................................... 30

    G.    Plaintiffs' Thirteenth Claim For Relief Against Secore & Waller For Negligence Must Be Dismissed.......................................................30

**V.    CONCLUSION.................................................................................32**

# **TABLE OF AUTHORITIES**

## **Cases**

*Abell v. Potomac Insurance Company*, 858 F.2d 1104, 1126 (5th Cir. 1988) ........................31
*Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir.2007)...............................................2
*Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1949-50 , 173 L.Ed.2d 868 (2009) .......................8
*Bauchman v. West High Sch.*, 132 F.3d 542, 550 (10th Cir. 1997) ...............................................8
*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)..................8,9
*Birt v. Wells Fargo Home Mortgage, Inc.* 75 P.3d 640, 656 (Wyo. 2003)........................34, 37
*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997)...............................2
*Brooks v. Zebre*, 792 P.2d 196,202 (Wyo. 1990)..........................................................35
*Bruschi v. Brown*, 876 F.2d 1526, 1530 (11th Cir. 1989)..................................................25
*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).................................................................13, 14
*City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1264 (10th Cir. 2001) .........................20
*City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1258 (10th Cir.2001)...............................................10
*County of Santa Fe, N.M. v. Public Service Co. of New Mexico*, 311 F.3d 1031, 1035 (10th Cir.2002) ............................2
Days *Inn Worldwide, Inc. v. Sonia Investments*, not reported in F.Supp.2d, 2007 WL 1188028 (N.D. Tex. 2007)....28
*Dorsey v. Portfolio Equities, Inc.*, 540 F. 3rd 333, 344 ....................................................28, 29
*Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-342, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)..........14, 19
*Durgin v. Mon*, 659 F. Supp. 2d 1240, 1255, (S.D. Fla. 2009)...............................................20, 22
*Enron Corporation Securities, Derivatives and ERISA Litigation v. Citigroup, Inc.*, 491 F. Supp. 2d 690, fn2 at 691 (S.D. Tex. 2007) ....................................................................28
*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n. 12, 96 S. Ct. 1375, 47 L. Ed. 2d 668 (1976) ..................20, 21, 22
*Farlow v. Peat, Marwick, Mitchell & Co.*, 950 F.2d 982, 986 (10th Cir. 1992)........................14, 36
*GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997).................................2
*Greebel v. FTP Software, Inc.*, 194 F.3d 185, 195-96 (1st Cir. 1999)..........................................11
*Halliburton Co. v. Claypoole*, 868 P.2d 252, 256 (Wyo.1994)..........................................35
*Helwig v. Vencor, Inc.*, 251 F.3d 540, 551 (6th Cir. 2001) ( *en banc* ) ...............................11
*Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S. Ct. 683, 74 L. Ed. 2d 548 (1983)..................12, 13, 19, 20
*Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir.2006)..........................................2
*Huddleston v. Herman & MacLean*, 640 F.2d 534, 549 (5th Cir. 1981) *aff'd in part, rev'd in part by, Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983) ....................................................24
*In re Estate of Drwenski*, 83 P.3d 457, 461 (Wyo. 2004)........................................38, 39
*In re Kendall Square Research Corporation Securities Litigation*, 868 F. Supp. 26, 28 (D.Mass.1994)....................15
*In re MTC Electronic Technologies Shareholders Litigation*, 898 F. Supp. at 987) ....................................14
*In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 741 (8th Cir. 2002) ..........................................11
*In re Refco, Inc. Sec. Litig.*, 609 F.Supp.2d 304 (S.D.N.Y. 2009)..........................................17
*In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1405 n. 4 (9th Cir.1996)........................................2
*Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir.2000)..........................................36
*Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 827 (8th Cir. 2003)...............................................11
*Lavoie v. Safecare Health Service, Inc.*, 840 P.2d 239, 252 (Wyo.1992)........................................35
*Leipham v. Adams*, 832, 894 P.2d 576 (Wash. App. 1995)...............................................39
*Marchant v. Cook*, 967 P.2d 551,554 (Wyo. 1998)..........................................................34
*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008) ..........................................20
*Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)........................................................8
*Moore v. Lubnau*, 855 P.2d 1245, 1248 (Wyo. 1993)..........................................................38
*Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, 388 F. Supp. 2d 780, 787 (S.D.Tex.2005) ....................................................................28
*Northway, Inc. v. TSC Industries, Inc.*, 512 F.2d 324, 339 (7th Cir. 1975)..........................................31
*Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir.2008)..........................................................2
*Pacific Inv. Management Co. LLC v. Mayer Brown, LLP*, 603 F.3d 144, 148 (2nd Cir. 2010)............................passim
*Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)........................................9
*Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206 (10th Cir. 2000)...............................................1

*Phillips v. Bell*, 265 Fed. Appx. 133, 138 (10th Cir. 2010) .................................................................9, 10
*Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 .............................................................38
*Ravenswood Inv. Co., v. Bishop Capital Corp.*, 374 F. Supp. 2d 1055, 1065 (D. Wyo. 2005) .....................25, 26, 35
*Robbins v. Oklahoma*, 519 F. 3d 1242, 1246 (10th Cir. 2008) .................................................................9, 10
*Schuler v. Community First National Bank*, 999 P.2d 1303, 1306 (Wyo.2000)......................................................38
*SEC v. Coffey*, 493 F.2d 1304, 1316 (6th Cir. 1974), cert. denied, 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975) ...................................................................................................................................31
*SEC v. Wolfson*, 539 F.3d 1249, 1257-1259 (10th Cir. 2008) ..............................................................14, 16
*Shapiro v. Cantor*, 123 F.3d 717 (2d Cir.1997)..................................................................................14, 15
*Southland Securities Corp. v. Inspire Ins. Solutions*, 365 F.3d 353, 365 (5th Cir. 2004).....................................37
*Sterling Trust Company v. Adderley*, 168 S.W.3d 835, 48 Tex. Sup. Ct. J. 887 (Tex. 2005)...........................passim
*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 156-157, 128 S. Ct. 761, 768, 169 L. Ed. 2d 627 (2008) ...............................................................................................................12, 13, 22, 23
*Strait v. Kennedy*, 13 P.3d 671 (Wash. App. 2000)..................................................................................39
*Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 13, n. 9, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971) ....................................................................................................................................12
*Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir.2006) .................................................................................36
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321, 127 S. Ct. 2499, 2508, 168 L. Ed. 2d 179 (2007).20, 21
*Trask v. Butler*, 872 P.2d 1080 (Wash. 1994).........................................................................................39
*Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir.2005)..............................................2
*Vosgerichian v. Commodore International*, 862 F. Supp. 1371, 1378 (E.D.Pa.1994)......................................................15
*Willmschen v. Meeker*, 750 P.2d 669, 672 (Wyo. 1988)..................................................................................35
*Wright v. Ernst & Young, LLP*, 152 F.3d 169, 176 (2nd Cir. 1998) ....................................................................15
*Ziemba v. Cascade International, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) .......................................................20

## Statutes

15 U.S.C. §78j ...........................................................................................................................10, 11
15 U.S.C. §78j(b)...................................................................................................................5, 9, 13, 16
15 U.S.C. §78u-4(b)(1); and (2) ...........................................................................................................16
15 U.S.C. §78u-4(b)(2)......................................................................................................................16
17 C.F.R. §240.10b-5 ..................................................................................................................passim
Private Securities Litigation Reform Act of 1995, Pub.L. No. 104-67, 109 Stat. 737........................................9, 16, 30
Regulation D 17 CFR 230.501 et seq ......................................................................................................27
Tex. Civ. St., Art. 581-33A(2) ......................................................................................................22, 23
Texas Securities Act .................................................................................................................22, 23, 26
Texas Securities Act, Tex. Civ. St., Art. 581-33F(2)....................................................................................22
Wyo. Stat, Ann. §17-4-113 (a)(ix)(B) ....................................................................................................21
Wyo. Stat. Ann. §17-4-133 (a)(ix)(A) ....................................................................................................21
Wyoming Securities Act, WS §17-4-122(a)........................................................................................21, 22, 29
Wyoming Statute §17-4-101, *et seq* .....................................................................................................21

## Rules

Fed. R. Civ. P. 12(b)(2) ....................................................................................................................1
Fed. R. Civ. P. 12(b)(6) ..............................................................................................................passim
Federal Rule of Civil Procedure 8(a)(2) ...................................................................................................8
Rule 9(b) ...................................................................................................................................29
Wyo. R. Civ. P. 12(b)(6) ...................................................................................................................22

## Secondary Sources

*Ruder, Multiple Defendants in Securities Law Fraud Cases: Aiding and Abetting, Conspiracy, In Pari Delicto, Indemnification, and Contribution, 120 U. Pa. L. Rev. 597, 632-33 (1972)* .......................................................25

iv

## LIST OF EXHIBITS

Exhibit 1 – Private Placement Memorandum ("PPM") for Shale Royalties 12, Inc.

# I.  INTRODUCTION[1]

Plaintiffs have filed an 82-page Amended Complaint asserting fifteen causes of action. They have named sixteen Defendants.  Out of the plethora of allegations pled in the Amended Complaint, only **one** relates to Defendant Secore & Waller, LLP ("Secore & Waller"), a small Texas law firm that indisputably never communicated with nor represented any of the Plaintiffs. When boiled down to its essence, Plaintiffs allege that Secore & Waller are liable for Plaintiff The Gibbs Trust's investment losses because Secore & Waller drafted a Private Placement Memorandum ("PPM") relating to the offering of preferred stock in SR-12, Inc. ("SR-12"), an entity in which the Gibbs Trust invested.  With respect to the PPM, in essence, the sole factual allegation supporting the claims against Secore & Waller is the allegation that the PPM failed to state that SR-12 did not have audited financial statements and warn potential investors that SR-12 "could be a Ponzi scheme."   Plaintiffs do not identify a single false statement contained within the PPM.

Although referred to throughout their Amended Complaint and relied upon as the basis for all the claims against Secore & Waller, Plaintiffs failed to attach a copy of the PPM to their Amended Complaint.  A copy of the PPM is attached to this Motion as Exhibit 1.[2]  What the

---

[1]     While, the first procedural step in assessing Plaintiffs claims against Secore & Waller is the evaluation of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2) and governing Tenth Circuit authority, *Peay v. BellSouth Medical Assistance Plan,* 205 F.3d 1206 (10th Cir. 2000), this Court has nevertheless requested all Rule 12 motions be filed by August 25, 2010, including motions under FED. R. CIV. P. 12(b)(6).  Under *Peay,* this Court lacks personal jurisdiction over Secore & Waller.  This issue is fully briefed by Secore & Waller in its Motion to Dismiss under FED. R. CIV. P. 12(b)(2), filed contemporaneously herewith.  Without consenting to this Court's personal jurisdiction over Secore & Waller and subject to its jurisdictional motions, Secore & Waller now moves to dismiss all claims against it under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

[2]  Under a long line of venerable Tenth Circuit authority, when a document is central to a plaintiff's claims, its authenticity is not in question, and it is referred to and quoted in the Complaint, a court may consider the document without converting a defendant's Rule 12(b)(6) motion into a motion for summary judgment. *See Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir.2007); *County of Santa Fe, N.M. v. Public Service Co. of New Mexico,* 311 F.3d 1031, 1035 (10th Cir.2002); *Utah Gospel Mission v. Salt Lake City Corp.,* 425 F.3d 1249, 1253-54 (10th Cir.2005), *quoted in Pace v. Swerdlow,* 519 F.3d 1067, 1072 (10th Cir.2008). *See also Holowecki v. Fed. Express Corp.,* 440 F.3d 558, 565-66 (2d Cir.2006) (applying same rule to

PPM actually says matters.  The PPM actually states the following:

- The SR-12 investment was "high risk" and suitable only for persons of substantial financial means who have no need for liquidity and who can afford to lose their entire investment.
- SR-12 was a start-up enterprise and SR-12 may have cash flow problems.
- SR-12 had **no operating history** on which investors may base an evaluation of potential future performance.
- Investors should retain their own legal or financial advisors about whether to invest in SR-12.
- SR-12 had **no assets**.
- SR-12 had **no prior activities**.
- SR-12 had only recently been incorporated.
- SR-12 had **no current cash flow**.
- SR-12 had **no balance sheets** for investors to review.
- SR-12 had **no financial information at all** for investors to review.

Ex. 1, PPM at pp. 1, 2, 11-15, 16, and 23 (emphasis added).

Secore & Waller respectfully submit that under controlling federal and state authority, all of Plaintiffs claims against the Law Firm must be dismissed.  There is no allegation that any Plaintiff ever spoke with Secore & Waller, that Secore & Waller is identified in any way in the PPM, that any Plaintiff relied upon Secore & Waller's drafting of the PPM in making the

---

consider plaintiff's filings with EEOC in deciding motion to dismiss ADEA claims as untimely), *aff'd,* 552 U.S. 389, 128 S.Ct. 1147, 170 L.Ed. 2d 10 (2008) Particularly in securities actions, courts often look to materials outside the pleadings in order to determine Rule 12(b)(6) motions. Courts routinely consider public filings at the motion to dismiss stage. *See, e.g., In re Stac Electronics Securities Litigation,* 89 F.3d 1399, 1405 n. 4 (9th Cir.1996) (district court's consideration of prospectus text, including portions not mentioned in the complaints, was appropriate at the motion to dismiss stage and did not convert the motion to one for summary judgment).  It is accepted practice that, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997); *see also Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, ... the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.") (citation omitted).  "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied."  *See GFF,* 130 F.3d at 1385.

investment in SR-12, that Secore & Waller sold the stock to the Gibbs Trust, the Secore & Waller provided the PPM to Plaintiffs, and so forth.  Plaintiffs simply fail to state any viable claims against Secore & Waller.  All claims – state and federal – should be dismissed with prejudice.

## II.    STATEMENT OF THE CASE

Plaintiffs are The Martha W. Gibbs Revocable Trust ("the Gibbs Trust"), its Trustees, and the Alida Talmage Trust FBO Martha W. Gibbs ("the Talmage Trust), and its Trustees. Martha W. Gibbs is not a plaintiff.  The Trustees are some of her adult children.  The thrust of the Amended Complaint is that other Defendants – not Secore & Waller – caused the Trusts to invest in allegedly high risk, illiquid investments.  The only Plaintiff to invest in SR-12 was the Gibbs Trust.  *Am. Compl.,* ¶¶ 46, 63.  The investments by the Talmage Trust or the other investments by the Gibbs Trust are wholly unrelated to Secore & Waller.  Plaintiffs go to great lengths to describe the activities of Messrs. Lawrence, Pope, and their investment entities.  **None** of those allegations relate to the conduct and claims against Secore & Waller.

Secore & Waller is a small Texas law firm.  It is undisputed that Provident Royalties, LLC, a Delaware limited liability company ("Provident" or "Provident Royalties"), retained Secore & Waller to draft the PPM for SR-12.  Provident and SR-12 were Secore & Waller's only clients in this matter; Plaintiffs were not clients.  Secore & Waller drafted the SR-12 PPM.  The drafting of the PPM is the sole factual basis for the claims against Secore & Waller.

SR-12 was organized to engage in "all aspects of the oil and gas business," including acquiring real estate, oil and gas leases, and exploration and development activities.  Ex. 1, PPM at p. 1.  SR-12 determined to whom the PPM would be sent.  Secore & Waller did not send the PPM to anyone, other than its clients when the drafting was completed.  Plaintiffs specifically alleged that Defendants Lawrence and Pope distributed the PPM and that Lawrence and Pope recommended the investment to the Gibbs Trust.  *Am. Compl.,* ¶ 63.

Plaintiffs have labeled the SR-12 acquisition as "Provident Royalties LLC Offering" in their Amended Complaint.  *Am. Compl.,* ¶¶ 39 - 43.  Plaintiffs allege the Gibbs Trust lost $135,000 on Provident offerings.  *Am. Compl.*, ¶ 46.  Plaintiffs elected not to sue Provident or any of its principals or subsidiaries.  Plaintiffs did not sue SR-12, the entity in which the Gibbs

Trust allegedly invested.  Rather, the only defendant with an alleged connection to SR-12 that Plaintiffs elected to sue (other than Plaintiffs' financial advisers who sold the SR-12 stock to the Gibbs Trust) is Secore & Waller.  Plaintiffs contend that the Gibbs Trust's financial advisors, including Defendants Lawrence and Pope, did not perform reasonable due diligence and ignored due diligence reports prepared by others that "raised red flags" about the SR-12 investment.  *Am. Compl.*, ¶ 65(g).  Plaintiffs do not allege that Secore & Waller had a duty to perform any due diligence tasks for their clients, nor that they received the due diligence reports prepared by others for SR-12.  *Am. Compl.*, ¶ 65(g).  In short, this case should lie against the individuals responsible for selling SR-12 stock to the Gibbs Trust, not the lawyers who drafted the PPM months before the purchase occurred.

Plaintiffs do not allege they were clients of Secore & Waller.  The Amended Complaint does not allege that Mrs. Gibbs or her children, trustees of the Gibbs Trust, ever read the PPM for SR-12.  The Amended Complaint does not allege that the trustees for the Gibbs Trust, at the time the SR-12 investment was made, read or relied upon the SR-12 PPM.  In fact, when read carefully, the Amended Complaint fails to allege that Plaintiffs ever received the PPM for SR-12.  Rather the Amended Complaint alleges that Plaintiffs received SR-12 "documents" after the Gibbs Trust's purchase of SR-12 stock was complete.  *Am. Compl.,* ¶63, 64(b).  Regardless, Plaintiffs fail to allege that they ever read the PPM for SR-12 prior to the Gibbs Trust purchase of SR-12 stock, a fact critical to the essential elements of each of the Gibbs Trust's claims.

Furthermore, Plaintiffs specifically allege that neither Martha Gibbs nor her children had any knowledge that the Gibbs Trust purchased SR-12 preferred stock until at least one year after the stock was purchased.  *Am. Compl.,* ¶ 63.  There is no allegation that Plaintiffs relied on any action or statement of Secore & Waller when the Gibbs Trust purchased SR-12 preferred stock.  Secore & Waller's name does not appear anywhere in the PPM for SR-12.  No statement in the PPM is attributed to Secore & Waller in any way.

There is no specific, well-pled allegation that Plaintiffs relied on any action or statement of Secore & Waller when purchasing the Provident offerings.  Plaintiffs do not identify a single false statement contained within the PPM.  Thus, there is no allegation against Secore & Waller upon which relief can be granted.

Plaintiffs have asserted four claims for relief against Secore & Waller which are properly dismissed here: (1) Count One – Securities Fraud under 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5; (2) Count Five – Securities Fraud and aiding and abetting under the Wyoming Securities Act; (3) Count Six – aiding and abetting under the Texas Securities Act; and (4) Count Thirteen - Negligence.  Plaintiffs also alleged Fraud against "Defendants" generally (Eleventh Claim for Relief) *Am. Compl.,* ¶¶ 185-188, yet plead no specific facts or allegations that would support a fraud claim against Secore & Waller.  All claims against Secore & Waller clearly fail to state a claim upon which relief can be granted and must be dismissed.

### III.    STATEMENT OF UNDISPUTED FACTS

Martha W. Gibbs is the beneficiary of the Martha W. Gibbs Trust (the "Gibbs Trust"). *Am. Compl.,* ¶ 1.  Until May 18, 2010, Martha W. Gibbs was the Trustee of the Gibbs Trust. *Am. Compl.,* ¶ 2.  On or about May 18, 2010, Martha W. Gibbs resigned as Trustee of the Gibbs Trust and Susan Gibbs, Scott M. Gibbs, and Jim W. Gibbs, three of her children, were appointed Trustees of the Gibbs Trust. *Id.*  Mrs. Gibbs' son, John S. Gibbs, who was directly involved in some of the investments that are the subject of this suit, is not a defendant. *Am. Compl.,* ¶¶ 59 and 62.  He is also not a Plaintiff.

Secore & Waller is a Texas limited liability partnership and law firm maintaining its sole place of business in Dallas, Texas. *Am. Compl.,* ¶ 29.  Plaintiffs allege that Secore & Waller prepared the Private Placement Memoranda of SR-12, a security, which was purchased by the Gibbs Trust. *Id.*  Plaintiffs do not allege that they were clients of Secore & Waller or that Secore & Waller sold or offered to sell any securities to any Plaintiff, including the Gibbs Trust. *See generally, Am. Compl.*

On or about June 26, 2008, The Gibbs Trust purchased $135,000 of preferred stock in SR-12. *Am. Compl.,* ¶¶ 5, 42 and 46.  This is the only investment related in any way to Secore & Waller. *Id.*  Plaintiffs allege that Defendants Lawrence and Pope caused the Gibbs Trust to purchase $135,000 of preferred stock in SR-12 *Am. Compl.,* ¶¶ 5, 63.

Specifically, in **May** of 2008, Lawrence and Pope offered and sold to the Gibbs Trust $135,000 of preferred stock in SR-12 *Am. Compl.,* ¶63.  None of Martha Gibbs' children: Susan Gibbs, Scott Gibbs or James Gibbs was aware of the Gibbs Trust's purchase of $135,000 of

preferred stock in SR-12 until at least one year after the purchase. *Am. Compl.,* ¶ 63. Furthermore, Martha W. Gibbs is purportedly unable to recall any specific facts regarding the transaction. *Id.* In other words, no representative of the Plaintiffs can say – under oath – that the PPM was reviewed or even received before the Gibbs Trust made its investment. Wisely, they have not made any such specific allegation. Their general allegation that the Trust relied upon the PPM in making its investment is simply insufficient to survive a motion to dismiss.

In fact, Plaintiffs do not allege that Martha Gibbs or the Gibbs Trust ever received a PPM for SR-12. Rather, Plaintiffs allege that on June 5, 2008 – after Plaintiffs allege the Gibbs Trust purchased the SR-12 stock (see, Am. Compl. ¶ 63), Defendant Pope wrote to Mrs. Gibbs and included "CapWest, Striker, and Share [sic "Shale"] Royalties 12 **documents**." *Am. Compl.,* ¶ 63 (b) (emphasis added). Plaintiffs do not specifically allege that these "documents" included a SR-12 PPM. *Am. Compl.,* ¶ 63. Further, Plaintiffs do not allege that Mrs. Gibbs or any Trustee of the Gibbs Trust read a PPM for SR-12 or relied upon it prior to purchasing SR-12 preferred stock.[3] *Am. Compl.,* ¶ 63.

Specifically, Plaintiffs allege that on June 5, 2008, Pope, though Personal Money Management, wrote to Martha W. Gibbs sending to her copies of her "… Share [sic "Shale"] Royalties 12 documents." *Am. Compl.,* ¶ 63 (b). In this June 5, 2008 letter, Pope thanked Martha W. Gibbs for her business. *Id.* On June 10, 2008, Defendant Lawrence sent to Nathaniel Glossi, an assistant to Pope, a voided check of the Martha W. Gibbs Revocable Trust with the following note: "Attached is a voided [check] on the account in which Martha Gibbs, Striker and Provident payments will be made. I have Provident wire instructions, please send Strikers. Dennis." *Am. Compl.,* ¶ 63 (c). Further, the Subscription Agreement for the SR-12 preferred stock expressly states that Defendant Lawrence reviewed the investment on behalf of the Gibbs Trust. *Am. Compl.,* ¶ 63 (d).

Plaintiffs do not allege that they relied on the SR-12 PPM in any way. *See generally Am. Compl.* In fact, Plaintiffs concede that not one of them knew about the $135,000 investment in SR-12 preferred stock until over a year after the Gibbs Trust, through Defendants Lawrence and Pope, purchased the stock. *Am. Compl.,* ¶ 63.

Plaintiffs allege that Defendants Lawrence and Pope actually offered and sold the SR-12

---

[3] In fact, it appears that Martha Gibbs was not involved in this transaction at all. *Am. Compl.,* ¶ 63.

stock to the Gibbs Trust. *Am. Compl.*, ¶ 63. Further, Plaintiffs allege that Defendants Lawrence and Pope were aware that none of the offering material for SR-12 preferred stock contained audited financial statements of the issuer, the promoter, any prior offerings, or any affiliates. *Am. Compl.,* ¶ 71. Plaintiffs allege that Lawrence, as a Certified Public Accountant, Pope, as a FINRA registered representative, and CapWest, as a FINRA registered broker-dealer, all knew or should have known of the significance of the lack of any audited or otherwise reliable financial information concerning the offerer, the issuer, its affiliates, and any prior offerings. *Id.* Plaintiffs specifically allege that before they sold stock to the Gibbs Trust, Lawrence, Pope, and CapWest all knew or should have known of the significant risks of the lack of audited financial statements, included: offering proceeds from prior offerings may have been used for purposes other than stated or represented in the offering material; assets may be overstated; revenues may be overstated; and offering proceeds may be used to pay promised returns to investors in prior offerings thus permitting the operation of a fraudulent Ponzi scheme. *Id.* Plaintiffs allege these are the individuals who offered the SR-12 stock for sale, who sold it to the Gibbs Trust, and who caused the Gibbs Trust to buy it. Am. Compl., ¶¶ 62, 63, 71.

Secore & Waller submits that under the undisputed facts and applicable law, Plaintiffs' claims against Secore & Waller must be dismissed.

## IV.   LEGAL ARGUMENT

Each of Plaintiffs four claims against Secore & Waller is properly dismissed here. Each claim is addressed in turn.

### A.   FED. R. CIV. P. 12(b)(6) Standards

Rule 12(b)(6) provides for dismissal of a Complaint for "failure to state a claim upon which relief can be granted." FED. RULE CIV. P. 12(b)(6). When determining whether to dismiss a case for failure to state a claim pursuant to FED. R. CIV. PROC. 12(b)(6), only well-pleaded, nonconclusory factual allegations in the complaint are accepted as true and viewed in light most favorable to the nonmoving party. *Ashcroft v. Iqbal,* --- U.S. ---, 129 S.Ct. 1937, 1949-50 , 173 L.Ed.2d 868 (2009); *Moore v. Guthrie,* 438 F.3d 1036, 1039 (10th Cir. 2006). Conclusory allegations will not be similarly treated, nor will arguments that extend beyond allegations contained in the complaint. *Bauchman v. West High Sch.,* 132 F.3d 542, 550 (10th

Cir. 1997). "The complaint itself must show [plaintiff] is 'entitled to relief' under each claim raised." *Id.*

As the Supreme Court stated in *Iqbal*:

> As the Court held in *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

*Iqbal*, 129 S. Ct. 1949.

Pursuant to *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a complaint must allege, "more than labels and conclusions, and formulate the elements of a cause of action…" The alleged facts must "raise a right to relief above the speculative level." *Id.* The Tenth Circuit has embraced and interpreted the standard set forth in *Twombly*:

> Following *Twombly*, we determined that "plausibility," as used by the Supreme Court referred to the scope of allegations in a complaint, and "if they are so general that they encompass a wide swath of conduct, and much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."

*Phillips v. Bell*, 265 Fed. Appx. 133, 138 (10th Cir. 2010) citing *Robbins v. Oklahoma*, 519 F. 3d 1242, 1246 (10th Cir. 2008). As the Tenth Circuit held in Phillips,

> While, generally, only the complaint and its allegations are considered in a motion to dismiss, documents referred to in the complaint may be considered at the motion-to-dismiss stage if they are "central to the plaintiff's claim" and their authenticity is undisputed. . . In reviewing a motion to dismiss, it is important to note "Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008). In the past, we "generally embraced a liberal construction of [this] pleading requirement," and held "a complaint containing only conclusory allegations could withstand a motion to dismiss unless its factual impossibility was apparent from the face of the pleadings...." *Id.* However, the Supreme Court has recently

> "clarified" this standard, stating that "to withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Id.* at 1247 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955, so that "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."

*Id.* at 138-139.

For the reasons set forth below, Plaintiffs' Complaint does not allege any clear set of plausible facts upon which relief can be granted, or any reasonably cognizable claim against Secore & Waller. Hence, Secore & Waller requests that all claims against the law firm be dismissed with prejudice.

## B. Overview of Federal Securities Law.

The Private Securities Litigation Reform Act of 1995, Pub.L. No. 104-67, 109 Stat. 737, (the "PSLRA") mandates a more stringent pleading standard for securities fraud actions in general, and for scienter allegations in particular. *City of Philadelphia v. Fleming Cos.,* 264 F.3d 1245, 1258 (10th Cir.2001). The PSLRA, therefore, requires the Court to disregard all "catch-all" or "blanket" assertions that do not live up to the particularity requirements of the statute. *In re Navarre Corp. Sec. Litig.,* 299 F.3d 735, 741 (8th Cir. 2002). Moreover, inferences of scienter must be both reasonable and strong to survive dismissal. *Kushner v. Beverly Enters., Inc.,* 317 F.3d 820, 827 (8th Cir. 2003); *Helwig v. Vencor, Inc.,* 251 F.3d 540, 551 (6th Cir. 2001) ( *en banc* ); *Greebel v. FTP Software, Inc.,* 194 F.3d 185, 195-96 (1st Cir. 1999).

## C. Plaintiffs' Claims Against Secore & Waller under 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5 Must Be Dismissed

Section 10(b) of the Securities Exchange Act makes it:

> unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission

may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. §78j.  Further, pursuant to this section, the SEC promulgated Rule 10b-5, which makes it unlawful

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, "in connection with the purchase or sale of any security."

17 CFR §240.10b-5.

The text of the Securities Exchange Act does not provide for a private cause of action for §10(b) violations.  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,* 552 U.S. 148, 156-157, 128 S. Ct. 761, 768, 169 L. Ed. 2d 627 (2008) (citing *Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co.,* 404 U.S. 6, 13, n. 9, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971)).  However, the Supreme Court has found a right of action implied in the words of the statute and its implementing regulation.  *Id.*  The implied private right of action under Rule 10b-5 was reaffirmed by the Supreme Court in *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S. Ct. 683, 74 L. Ed. 2d 548 (1983).  The Court explained the relationship between the implied cause of action under Section 10(b) of the 1934 Act and express liability under Section 11 of the 1933 Act, as follows:

Although limited in scope, Section 11 places a relatively minimal burden on a plaintiff. In contrast, Section 10(b) is a "catchall" antifraud provision, but it requires a plaintiff to carry a heavier burden to establish a cause of action. While a Section 11 action must be brought by a purchaser of a registered security, must be based on misstatements or omissions in a registration statement, and can only be brought against certain parties, a Section 10(b) action can be brought by a purchaser or seller of "*any* security" against "*any* person" who has used "*any* manipulative or deceptive device or contrivance" in connection with the purchase or sale of a security. 15 U.S.C. §78j (emphasis added). However, a Section 10(b) plaintiff carries a heavier burden than a Section 11 plaintiff. Most significantly, he

must prove that the defendant acted with scienter, *i.e.,* with intent to deceive, manipulate, or defraud.

*Herman & MacLean v. Huddleston*, 459 U.S. 375, 382.

Although an implied private right of action exists under §10(b) of 15 U.S.C. §78j, liability under 10(b) does not extend to aiders and abettors. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 177, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994); *and Stoneridge,* 552 U.S. at 158. In *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, the Supreme Court ruled that aiding and abetting liability may not be imposed under Rule 10b-5. Rather, for secondary actors such as lawyers and accountants to be liable under Rule 10b-5, the Supreme Court held that all of the requirements for primary liability must be satisfied. *Id.* Hence, a person bringing a private right of action against a secondary actor under §10(b) must allege that the conduct of the secondary actor satisfies each of the elements or preconditions to primary actor liability under §10(b). *Stoneridge,* 552 U.S. at 158.

As such, to establish liability against **any** actor (primary or secondary) in a §10(b) private action a plaintiff must plead and prove: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, at 157 (*citing Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 341-342, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)); *see also Farlow v. Peat, Marwick, Mitchell & Co.,* 950 F.2d 982, 986 (10th Cir. 1992).

First, it is not clear that Plaintiffs are asserting any primary liability claims against Secore & Waller. To the extent they are, those claims must be dismissed. For a private litigant to succeed on a claim for primary actor liability, it must prove that the statement on which the litigant relied was actually made by the defendant. As the Tenth Circuit explained in *SEC v. Wolfson*, 539 F.3d 1249, 1257-1259 (10th Cir. 2008)

> [T]he [Supreme] Court recognized that secondary actors could be held liable under the statute  so long as they themselves made a material misstatement or omission (or committed some other fraudulent act), and each of the remaining elements of liability under §10(b) are satisfied.
> …

> [A] secondary **actor** cannot incur **primary liability** under the Act for a statement
> not attributed to that **actor** at the time of its dissemination. Such a holding would
> circumvent the reliance requirements of the Act.

*Id*. (Internal citations omitted)

As the Second Circuit explained in *Shapiro v. Cantor,* 123 F.3d 717 (2d Cir.1997), "[i]f *Central Bank* is to have any real meaning, a defendant must actually make a false or misleading statement in order to be held liable under Section 10(b). Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b)." *Shapiro,* 123 F.3d at 720 (quoting *In re MTC Electronic Technologies Shareholders Litigation,* 898 F. Supp. at 987).

Moreover, a third party's review and approval of documents containing fraudulent statements is not actionable under Section 10(b) because one must *make* the material misstatement or omission in order to be a primary violator. *Wright v. Ernst & Young, LLP,* 152 F.3d 169, 176 (2nd Cir. 1998); *see, also, In re Kendall Square Research Corporation Securities Litigation,* 868 F. Supp. 26, 28 (D.Mass.1994) (accountant's "review and approval" of financial statements and prospectuses insufficient); *Vosgerichian v. Commodore International,* 862 F. Supp. 1371, 1378 (E.D.Pa.1994) (allegations that accountant "advised" and "guid[ed]" client in making allegedly fraudulent misrepresentations insufficient).

Here, Plaintiffs have not alleged that Secore & Waller made any material misstatements or omissions. Plaintiffs have alleged misstatements and omissions in the PPMs that are not attributed to Secore & Waller. Secore & Waller is not identified in the PPM. No statement within or outside the PPM is attributable to Secore & Waller. There is simply no basis for primary liability here. The same reasoning holds true for secondary actor liability.

To the extent Plaintiffs are asserting claims of secondary liability against Secore & Waller, Plaintiffs have failed to plead the required elements of a §10(b) claim against Secore & Waller in their Complaint. Specifically, under recent federal case law, Secore & Waller, as a secondary actor, cannot be liable for merely assisting in drafting the Private Placement Memoranda not attributed to Secore & Waller at the time of dissemination. *See Pacific Inv. Management Co. LLC v. Mayer Brown, LLP,* 603 F.3d 144, 148 (2nd Cir. 2010); *accord*, *Shapiro,* 123 F.3d at 720*; and SEC v. Wolfson,* 539 F.3d at 1257-58 (10th Cir. 2008). Moreover, with

respect to the §10(b) claims against Secore & Waller, Plaintiffs have failed to plead the required element of scienter.  Plaintiffs have not alleged any facts demonstrating scienter.  Plaintiffs have merely alleged that Secore & Waller "should have known" of the alleged risks presented by a lack of audited financial statements.  Further, the facts as alleged do not establish a connection between the alleged misrepresentation or omission by Secore & Waller and the purchase of the Provident offerings, do not establish reliance on the SR-12 PPM, and do not establish loss causation.  Plaintiff have therefore have failed to state a claim against Secore & Waller under 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5  upon which relief can be granted.

> **a.  Secore & Waller Cannot Be Liable Under 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5 for Merely Assisting in the Drafting of the Private Placement Memoranda**

Plaintiffs' claim against Secore & Waller under §10(b) must be dismissed under FED. R. CIV. P. 12(b)(6) as Plaintiffs have failed to assert that allegedly false statements in the SR-12 PPM were attributable to Secore & Waller at the time the SR-12 PPM was disseminated.   The Second Circuit has held that for a defendant to be liable under §10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 for making false statements, the false statements must have been attributed to the defendant at the time they were disseminated.  *Pacific Inv. Management Co. LLC v. Mayer Brown, LLP,* 603 F.3d at 148.   It is not sufficient that the defendant created, drafted or assisted in drafting the allegedly false statements.  *Id*

In *Pacific Investment,* the plaintiffs invested in the corporate stock of Refco.  Refco collapsed and plaintiffs lost their investments.  *Id.* at 144.  The plaintiffs sued Refco's outside counsel, Mayer, Brown, Rowe & Maw LLP and Mr. Collins, a partner at Mayer Brown, who was the law firm's primary contact with Refco.  *Id.*  Plaintiffs' claims were based on a fraudulent scheme involving sham loans that were designed to conceal the true financial condition of Refco.  *Id.*  Collins and Mayer Brown allegedly participated in the fraud by drafting documents for the transactions.  *Pacific Inv. Management Co. LLC,* 603 F.3d at 149.

In the *Pacific Investment* case, Plaintiffs asserted claims for violations of section 10(b) of the Securities Exchange Act of 1934.  *Id.,* at 150.  Plaintiffs alleged that Mayer Brown and Collins participated in several of these sham loan transactions over a five-year period.  *Id.,* at 149.  According to plaintiffs' complaint, defendants' involvement included negotiating the terms

of the loans, drafting and revising the documents relating to the loans, transmitting the documents to the participants, and retaining custody of and distributing the executed copies of the documents.[4]  *Id.*, at 149-150.  Plaintiffs also alleged that defendants were responsible for false statements appearing in three Refco documents: (1) an Offering Memorandum for an unregistered bond offering; (2) a Registration Statement for a subsequent registered bond offering; and (3) a Registration Statement for Refco's initial public offering of common stock. *Id.*  Plaintiffs alleged that these documents failed to disclose the true nature of Refco's financial condition, which had been concealed through the multiple sham loans.  *Id.*

The law firm and Collins moved to dismiss plaintiffs' claims.  A federal district court granted defendant's Rule 12(b)(6) motion to dismiss this claim.  *See In re Refco, Inc. Sec. Litig.,* 609 F.Supp.2d 304 (S.D.N.Y. 2009).  The circuit court affirmed and held that attorneys may not be held liable for violating Rule 10b-5 for drafting false statements that are not attributed to them at the time the statements are disseminated.  *Pacific Inv. Management Co. LLC v. Mayer Brown, LLP,* 603 F.3d at 155.

The Second Circuit held that to be held liable for violating Rule 10b-5, it is not enough that the secondary actor defendant created the false statement.  *Id.* at 151.  Further, the Second Circuit found that to be held liable for violating Rule 10b-5, it is not enough for the secondary actor to simply be identified in the document containing the false statement.  *Id.* at 150.  Rather, the Second Circuit determined that to be held liable for violating Rule 10b-5, the allegedly false statement must be attributed to the secondary actor defendants in the document at the time the document is disseminated – i.e. at the time the false statement was disseminated, the secondary actor defendant must be identified as the author of the document containing the allegedly false statement or identified as the author of the false statement itself.  *Id.* at 158.

Under the rule requiring attribution, the court added, it is not enough that the secondary actor was identified as being involved in a transaction, or that the public understands that a secondary actor has a role behind the scenes.  Rather, the court held that "[a]n attribution requirement makes clear – to secondary actors and investors alike – that those who sign or

---

[4] By contrast, Plaintiffs make no such allegations here, only that Secore & Waller drafted the PPM.

otherwise allow a statement to be attributed to them expose themselves to liability. Those who do not are beyond the reach of Rule 10b-5's private right of action." *Id.* at 157.

Applying the attribution requirement, the circuit court upheld the district court's dismissal of the Rule 10b-5(b) claims against Mayer Brown and attorney Collins under FED. R. CIV. P. 12(b)(6). *Id*. The Offering Memorandum, the Registration Statement, and the IPO Registration Statement did not mention Mr. Collins individually by name. *Id.* at 158. And although the Offering Memorandum and the IPO Registration Statement noted that Mayer Brown represented Refco, neither document attributed any particular statement to Mayer Brown or identified Mayer Brown as the author of any portion the document. *Id.* The court found that the attribution requirement was not satisfied by the mere fact that Mayer Brown was identified in the document as representing Refco. *Id.*

The attribution requirement for secondary actor liability under §10(b) announced in *Pacific Inv. Management Co. LLC v. Mayer Brown, LLP,* is directly on point in this case and should be applied by this Court here. Additionally the facts alleged in this case actually lend themselves better to application of the attribution requirement and mandate dismissal of Plaintiffs' §10(b) claim against Secore & Waller.

First, the PPM does not contain any statement made by Secore & Waller or even remotely attributable to the Law Firm. Secore & Waller is not even identified in the PPM. Moreover, Plaintiffs do not specifically allege that Gibbs or her children ever received a SR-12 PPM, rather she just received "documents". *Am. Compl.,* ¶¶ 63. Plaintiffs do not allege that she read the PPM for SR-12 or relied upon it when the Gibbs Trust purchased $135,000 in SR-12 preferred stock. *Id.* Rather, Plaintiffs allege that none of the trustees of the Gibbs Trust were aware of the Trust's purchase of SR-12 preferred stock until over a year after the purchase occurred. *Id.*

Additionally, Plaintiff do not allege that Secore & Waller is identified in the SR-12 PPM as the drafter of the document, the source of any statements, or the source of any information contained in the PPM. Finally, Plaintiffs have not identified a single false statement within the PPM. Their entire claim is premised on the allegation that despite telling each investor that the company had no financial history at all, the PPM should have disclosed there were no audited

financial statements.

Clearly, the facts as plead in Plaintiffs Complaint mandate dismissal of all 15 U.S.C. §78j(b) and 17 C.F.R. §240.10b-5 claims against Secore & Waller under FED. R. CIV. P. 12(b)(6).

**b.  Plaintiffs Have Failed to Plead Scienter against Secore & Waller.**

As noted above, to prove any defendant violated Section 10(b) of the Securities Exchange Act, the plaintiff must show, among other things, the defendant acted with scienter. *Dura Pharmaceuticals., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).  In fact, scienter, is the "most significant" heightened pleading requirement a Plaintiff must fulfill in private §10(b) actions. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382.  Additionally, the Private Securities Litigation Reform Act (PSLRA) imposes on a plaintiff the heightened pleading requirement of scienter.  Under the PSLRA's heightened pleading instructions, any private securities complaint alleging that the defendant made a false or misleading statement must: (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. §78u-4(b)(1); and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. §78u-4(b)(2); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 321, 127 S. Ct. 2499, 2508, 168 L. Ed. 2d 179 (2007).  Here, Plaintiffs have filed to allege any set of facts sufficient to show Secore & Waller acted with the requisite mental state.

The facts required to sufficiently plead scienter in a 10(b) claim must show "a mental state embracing intent to deceive, manipulate, or defraud."  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n. 12, 96 S. Ct. 1375, 47 L. Ed. 2d 668 (1976); *Herman & MacLean v. Huddleston*, 459 U.S. at 283; *SEC v. Ruberz,* 350 F. 3d 1084, 1094 (9th Cir. 2003).  In some cases, however, courts have held that "severe recklessness" can constitute scienter. *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008).  However, severe recklessness requires more than "inexcusable negligence."  *Ziemba v. Cascade International, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).  Actionable "recklessness" in the securities context is "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the

defendant must have been aware of it."  *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1264 (10th Cir. 2001); *see Durgin v. Mon*, 659 F. Supp. 2d 1240, 1255, (S.D. Fla. 2009) (holding that lack of due diligence was at most negligence, not reckless conduct).

In a FED. R. CIV. P. 12(b)(6) context, to determine whether a complaint supports a strong inference of scienter, the Court must accept as true all factual allegations in the complaint and considers the complaint in its entirety, including documents incorporated into the complaint by reference and matters subject to judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23.  "The inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* (emphasis omitted).  "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Id.*  Thus, the court considers "plausible nonculpable explanations for the defendant's conduct" in addition to inferences favoring the plaintiff. *Id.* at 2510.  "The inference of scienter must be more than merely 'reasonable' or 'permissible'- it must be cogent and compelling, thus strong in light of other explanations." *Id.* Ultimately, the court asks, "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.*

Plaintiffs' Complaint makes no allegations of scienter whatsoever on the part of Secore & Waller.  The few allegations on this point are nothing more than conclusory and wholly devoid of any factual support.  The Amended Complaint pleads no fact showing Secore & Waller possessed "a mental state embracing intent to deceive, manipulate, or defraud" when drafting the Private Placement Memoranda or any facts that would give rise to a strong inference of scienter on the part of Secore & Waller.  *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n. 12; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23.  Rather, the only allegations against Secore & Waller is that it failed to conduct due diligence –Plaintiffs do not allege, and cannot allege the Law Firm had a duty to do so - failed to disclose the risk of the lack of audited financial statements, and failed to disclose the "possible operation of a Ponzi scheme." *Am. Compl.,* ¶ 100.  These allegations do not even come close to properly asserting scienter, or the intent to deceive manipulate or defraud potential investors against Secore & Waller and thus

Plaintiffs fail to state a claim under §10(b) upon which relief can be granted.  Rather, these allegations more closely resemble a claim of negligence.  S*ee Durgin v. Mon*, 659 F. Supp. 2d at 1255 (stating lack of due diligence is at most negligence).  Negligence cannot be grounds for recovery under §10(b).  *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 214.

Taking the allegations in the Amended Complaint as a whole, it is apparent that Plaintiff has not alleged that Secore & Waller acted with scienter, or had the requisite "intent to deceive, manipulate or defraud," any investor, much less Martha Gibbs, her children or the Gibbs Trust. Plaintiffs have not even alleged that Gibbs or her children had any contact with Secore & Waller or knew anything about the existence of Secore & Waller prior to or at the time the Trust purchased SR-12 preferred stock.

Moreover, Plaintiffs proffer only conclusory allegations that "Secore & Waller, as attorneys, and purported experts in transactional securities, either knew, or recklessly ignored warning signs that the Provident offerings were or may be fraudulent Ponzi schemes…."  *Am. Compl., ¶* 100.  Plaintiffs offer no facts to support this claim.  These conclusory allegations are not grounded in fact and certainly cannot support Plaintiffs §10(b) claim against Secore & Waller under the heightened pleading requirements required to maintain a 10(b) claim.

### c.  Plaintiffs Have Not Alleged Reliance on the Private Placement Memoranda

The rule requiring attribution of a false statement to a secondary actor is consistent with the Supreme Court's holding in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.,* 552 U.S. 148 (2008).  *See Pacific Inv. Management Co. LLC,* 603 F.3d at 155-156.  In *Stoneridge*, which involved deceptive conduct rather than false statements, the Supreme Court held that a secondary actor could not be held liable under Rule 10b-5 where the plaintiff did not rely on the secondary actor's own deceptive conduct, rather than the primary actor's deceptive conduct. *Stoneridge, supra.*  Under *Stoneridge*, direct reliance is required for a Rule 10b-5 claim. *Id.*

Again, Plaintiffs do not allege that Martha Gibbs or any representative of the Gibbs Trust ever received a PPM for SR-12.  Rather, Plaintiffs allege that on June 5, 2008 – after the Gibbs Trust purchased SR-12 stock – Defendant Pope wrote to Mrs. Gibbs and included "CapWest, Striker, and Share [sic "Shale"] Royalties 12 **documents**."  *Am. Compl., ¶* 63 (b) (emphasis

added).  Plaintiffs do not specifically allege that these "documents" included a SR-12 PPM.  *Am. Compl.,* ¶ 63.  Further, Plaintiffs do not allege that Ms. Gibbs read a PPM for SR-12 or relied upon it prior to purchasing SR-12 preferred stock. *Am. Compl.,* ¶ 63.  In fact, the Amended Complaint conceded that Martha Gibbs was likely not involved in this transaction at all.  *Id.*  The Amended Complaint further goes on to affirmatively concede that none of the other trustees of the Gibbs Trust we involved in the $135,000 purchase of SR-12 preferred stock.  *Id.*  In fact, from the allegations contained in the Amended Complaint it appears that Defendants Lawrence and Pope purchased the SR-12 preferred stock for the Gibbs Trust.  *Am. Compl.,* ¶ 63.  Plaintiffs claim they should have been able to review the PPM and glean that the SR-12 operation was a scam.[5]  Am. Compl. ¶ 71.

Plaintiffs do not allege that they relied on the SR-12 PPM in any way.  *See generally Am. Compl.*  In fact, Plaintiffs concede that not one of them knew of the $135,000 investment in SR-12 preferred stock until over a year after the Gibbs Trust, through Defendants Lawrence and Pope, purchased the stock.  *Am. Compl.,* ¶ 63.  Plaintiffs make no allegations that they relied on the SR-12 PPM or statements by Secore & Waller in purchasing any SR-12 stock.  Hence, Plaintiffs have failed to allege yet another required element of a §10(b) claim against Secore & Waller - reliance.  As such, Plaintiffs' §10(b) against Secore & Waller must be dismissed with prejudice under FED. R. CIV. P. 12(b)(6).

**d.  Plaintiffs Cannot Establish Loss Causation Against Secore & Waller.**

In *Huddleson v. Herman & MacLean,* 640 F.2d 534, 549 (5th Cir. 1981) *aff'd in part, rev'd in part by, Herman & MacLean v. Huddleston*, 459 U.S. 375 (1983), the Fifth Circuit stated that in an action under §10(b):

> Causation is related to but distinct from reliance. Reliance is a *causa sine qua non*, a type of "but for" requirement: had the investor known the truth he would not have acted. Causation requires one further step in the analysis: even if the investor would not otherwise have acted, was the misrepresented fact a proximate cause of the loss? The plaintiff must prove not only that, had he known the truth, he would not have acted, but in addition that the untruth was in some reasonably direct, or proximate, way responsible for his loss. The causation requirement is satisfied in a Rule 10b-5 case only if the misrepresentation touches upon the

---

[5] Interestingly, the PPM drafted by Secore & Waller did its job, namely, disclosing information an investor needed to know to investigate the SR-12 investment.

> reasons for the investment's decline in value. If the investment decision is induced by misstatements or omissions that are material and that were relied on by the claimant, but are not the proximate reason for his pecuniary loss, recovery under the Rule is not permitted. Absent the requirement of causation, Rule 10b-5 would become an insurance plan for the cost of every security purchased in reliance upon a material misstatement or omission

*Huddleson,* 640 F. 2d at 549 (internal citations omitted).

Loss causation requires a showing that the misrepresentations or omissions caused the economic harm. *Huddleson,* 640 F.2d at 549. In other words, a plaintiff must demonstrate that the defendant's fraudulent conduct "touches upon the reasons for the investment's decline in value." *Id.* "If the particular loss complained of is caused by supervening general market forces or other factors unrelated to the defendant's misconduct that operate to reduce the value of the plaintiff's securities, the plaintiff is precluded from recovery under Rule 10b-5." *Bruschi v. Brown,* 876 F.2d 1526, 1530 (11th Cir. 1989).

Here, Plaintiffs' Complaint is devoid of any allegations related to the alleged acts or omissions of Secore & Waller that touch in any way on loss causation. First, Plaintiffs have failed to allege reliance on the SR-12 PPM in purchasing the SR-12 preferred stock. *Am. Compl.* ¶ 63. Further, Plaintiffs have not alleged that any statement in the SR-12 PPM was attributable to Secore & Waller at the time of dissemination. Finally, as specifically related to loss causation, Plaintiff has not alleged that any allegedly false statement in the SR-12 PPM caused Plaintiffs' $135,000 investment to decline in value. In fact, Plaintiffs specifically allege that Provident Royalties, LLC – not Secore & Waller – operated a fraudulent ponzi scheme, which caused Plaintiffs' investment in SR-12 to decline in value. Consequently, Plaintiffs cannot recover under §10(b) as factors other than Secore & Wallers' alleged omissions in the SR-12 PPM, namely Provident Royalties, LLC allegedly operating a fraudulent ponzi scheme caused the loss in the value of Plaintiffs' securities. *See, Bruschi v. Brown,* 876 F.2d at 1530. Plaintiffs do not allege that any act, omission or statement of Secore & Waller caused Plaintiffs' investments to decline in value, nor can they. Hence, Plaintiffs have failed to establish the requisite element of their §10b claim – loss causation. Plaintiffs' §10b claim against Secore & Waller must be dismissed accordingly.

### D. Plaintiffs' Fifth Claim For Relief Against Secore & Waller for Violation of the

**Wyoming Securities Act, WS §17-4-122(a), Must Be Dismissed.**

This Court has held that Wyoming Statute §17-4-101, *et seq.*, is "fairly analogous to the federal claim regarding Section 10 of the Securities of the Exchange Act and Rule 10b-5." *Ravenswood Inv. Co., v. Bishop Capital Corp.,* 374 F. Supp. 2d 1055, 1065 (D. Wyo. 2005). In other words, section WS §17-4-122(a)(ii) is the Wyoming state law equivalent to a claim under Section 10(b) of the Securities Exchange Act or a Rule 10b-5 claim. The same federal authority cited above applies with equal force to Plaintiffs' claims under the Wyoming state statute. *Ravenswood*, 374 F. Supp. 2d at 1065. Section 17-4-122(a)(ii) of the Wyoming Securities Act states that any person who:

> Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him . . .

Wyo. Stat. Ann §17-4-122(a)(ii).

Case law applying WS §17-4-122 is sparse. However, the statutory language mandates dismissal of this claim against Secore & Waller with prejudice. Wyo. Stat. Ann. §17-4-133 (a)(ix)(A) defines "sale" or "sell" to include "every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value". Wyo. Stat. Ann. §17-4-113 (a)(ix)(A). Further, Wyo. Stat, Ann. §17-4-113 (a)(ix)(B) defines "Offer" or "offer to sell" to include "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value".

Plaintiffs have only alleged that Secore & Waller prepared the PPM of SR-12, the security purchased by the Trusts that is the subject of this Wyoming Securities Act claim. *See Am. Compl.,* ¶ 29. Plaintiffs do not allege that Secore & Waller sold or offered to sell any securities to Martha Gibbs or the Gibbs Trust. *See generally, Am. Compl.*

Wyo. Stat. Ann §17-4-122(a)(ii) explicitly applies only to "[a]ny person who **"[o]ffers** or **sells** a security…" *Id.* (emphasis added).  Plaintiffs have alleged only that Secore & Waller drafted the PPM for SR-12 and have not alleged that Secore & Waller sold, offered, or offered to sell any securities to Miles or her Trusts, including preferred stock in SR-12.  The language of the Wyoming Securities Act statute is clear and unambiguous and therefore should be construed as written.  *See State v. Nelson,* 49 P.3d 185, 188 (Wyo. 2002).  As such, Plaintiffs' claim against Secore & Waller under Wyo. Stat. Ann. §17-4-122 must be dismissed for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6) and/or Wyo. R. Civ. P. 12(b)(6).

**E.  Plaintiffs' Sixth Claim For Relief Against Secore & Waller for Violation of the Texas Securities Act, Tex. Civ. St., Art. 581-33F(2), Must Be Dismissed.**

The sixth claim for relief in the Amended Gibbs Complaint alleges causes of action under the Texas Securities Act (the "TSA").  This cause of action asserted by Plaintiff should be dismissed because, again, Plaintiffs have not pled facts showing that Secore & Waller acted with the required scienter.  Plaintiff also has not pled facts showing a primary violation by Provident Royalties, LLC and Shale Royalties 12, Inc.

Specifically, in paragraph 150, Plaintiff alleges that Provident and SR-12 (both non-parties) offered and sold securities consisting of preferred stock of SR-12 to the Gibbs Trust, by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Vernon's Ann., Tex. Civ. St., Art. 581-33A(2).  *Am. Compl., ¶* 150.  In paragraph 154, Plaintiffs allege that Secore & Waller is a person who directly or indirectly, with intent to deceive or defraud, or with reckless disregard for the truth or the law, materially aided SR- 12 and Provident as sellers of the preferred stock of SR-12 and are jointly and severally liable with and to the same extent as those sellers, pursuant to TSA Art. 581-33F(2). *Am. Compl., ¶* 154.  Plaintiffs' claims fail.

Section 33F(2) of the TSA provides:

> (2)  A person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable under

> Section 33A, 33B, or 33C jointly and severally with the seller,
> buyer, or issuer, and to the same extent as if he were the seller,
> buyer, or issuer.

*Id.*

The elements of a cause of action under Section 33F(2) are as follows:

1. A primary violation;
2. The aider had a general awareness of its role in an illegal activity;
3. The aider provided substantial assistance; and
4. The aider intended to deceive or acted with reckless disregard for the truth or the law. [This fourth element requires pleading and proof of either intent or recklessness in its subjective form, directly related to the primary violation].

*Sterling Trust Company v. Adderley*, 168 S.W.3d 835, 48 Tex. Sup. Ct. J. 887 (Tex. 2005); Days *Inn Worldwide, Inc. v. Sonia Investments*, not reported in F.Supp.2d, 2007 WL 1188028 (N.D. Tex. 2007); *Enron Corporation Securities, Derivatives and ERISA Litigation v. Citigroup, Inc.*, 491 F. Supp. 2d 690, fn2 at 691 (S.D. Tex. 2007).

To state a claim for aider and abettor liability under the TSA, a plaintiff must show "(1) a primary violation of the securities laws, (2) that the aider and abettor has a general awareness of his role in the violation, (3) that he gave substantial assistance in the violation, and (4) that he intended to deceive the plaintiff or acted with reckless disregard for the truth of the primary violator's misrepresentations." *Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative & "ERISA" Litig.)*, 388 F. Supp. 2d 780, 787 (S.D.Tex.2005); *Dorsey v. Portfolio Equities, Inc.*, 540 F. 3rd 333, 344. Unlike a claim for seller liability under the TSA, a claim for aider and abettor liability requires that a plaintiff plead and prove scienter. *Dorsey*, 540 F.3d 333, 344.

The Texas Supreme Court explained the scienter necessary to plead and prove aiding and abetting liability under the TSA in *Sterling Trust Company v. Adderley*, 168 S.W.3d 835. As explained in the *Sterling* opinion, the TSA establishes both primary and secondary liability for securities violations. Primary liability arises under Art. 581-33A(2) when a person offers or sells a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading. Secondary liability is derivative liability for another person's securities violation. Derivative liability can attach to a control person under Article

581-33(F)(1).  Derivative liability can also attach to an aider, under Article 581-33(F)(2), as one who "directly or indirectly with intent to deceive or defraud, or with reckless disregard for the truth or the law materially aids a seller, buyer or issuer of a security".

The TSA adopted the Uniform Securities Act liability standard for control persons but modified its standard for aiders; while the TSA allows a broader class of persons to qualify as aiders, it imposes a stricter scienter requirement.   Furthermore, the TSA places the burden of proof on the plaintiff to prove that the defendant acted with the required scienter.  Article 581-33F(2); *Sterling Trust*, 168 S.W.3d 835, 843.  When it amended the TSA in 1977 to add section 33F, the Texas Legislature adopted an expanded class of persons who could be liable as aiders under the statute, but also adopted a more rigorous scienter requirement than required under the Uniform Securities Act.  Aiders are jointly and severally liable with the primary violator "to the same extent as if [they] were" the primary violator, under Article 581-33(F)(2).  Therefore, a more rigorous scienter requirement is necessary to curb lawsuits where plaintiffs seek to recover from defendants such as lawyers and accountants who do not have knowledge of improper activities.  Such baseless lawsuits are deterred only when plaintiffs must plead facts – not suppositions or conjecture or assumptions – showing intent to deceive or reckless disregard.  In this case, Plaintiff has pled only one fact – that the private placement memorandum did not contain an audited financial statement.  This single fact does not show intent to deceive or reckless disregard for the truth or the law by Secore & Waller.

In the *Sterling Trust* case, the Texas Supreme Court held that the TSA's "reckless disregard for the truth or the law standard means that an alleged aider can only be held liable if it rendered assistance "in the face of a perceived risk" that his assistance would facilitate untruthful or illegal activity by the primary violator.  *Sterling*, 168 S.W.3d 835, 842.  In order to perceive such a risk, the alleged aider must possess a "general awareness that his role was part of an overall activity that is improper."  *Sterling*, 168 S.W.3d 835, 842.  The opinion states:

> [i]n most cases, the alleged aider and abettor. . .will merely be engaging in customary business activities, such as loaning money, managing a corporation, preparing financial statements, distributing press releases, completing brokerage transactions, or **giving legal advice**.  **If each of these parties will be required to investigate the ultimate activities of the party whom he is assisting, a burden may be imposed upon business activity that is too great**… The essential point

> is that imposition of a duty to investigate under the guise of a "should have known" standard in essence would amount to eliminating scienter as a necessary element in imposing aiding and abetting liability and the substitution of a negligence standard.

*Id. (emphasis added) (citing Ruder, Multiple Defendants in Securities Law Fraud Cases:  Aiding and Abetting, Conspiracy, In Pari Delicto, Indemnification, and Contribution, 120 U. Pa. L. Rev. 597, 632-33 (1972).*

The Texas Supreme Court concluded that the TSA's scienter requirement of "reckless disregard for the truth or the law" is intended to impose the requirement of "recklessness in its subjective form" and this recklessness must be directly related to the securities violation by the primary violator.  The Texas Supreme Court pointed out that Section 33F(2) requires a plaintiff to prove that the aider acted with intent to deceive or defraud or with reckless disregard for the truth or the law.  The Texas Supreme Court concluded that the phrase "reckless disregard for the truth or the law" requires that an aider must be aware of the primary violator's improper activities before it may be held liable for assisting a securities violation.  *Sterling Trust*, 168 S.W.3d 835, 841.  Liability may not be imposed for a mere failure to investigate.

In another case, the Fifth Circuit explained that the use of the term "actual awareness" did not encompass a different standard than the term "general awareness".  "General awareness means knowledge which, though it may be adduced from reckless conduct, means actual awareness".  *Abell v. Potomac Insurance Company*, 858 F.2d 1104, 1126 (5th Cir. 1988).  The Sixth Circuit explained that "[t]he required knowledge of the act has been defined as a general awareness (on the part of the aider and abettor) that his role was part of an overall activity that is improper" and that "the proof offered must establish conscious involvement in impropriety or constructive notice of intended impropriety".  *SEC v. Coffey*, 493 F.2d 1304, 1316 (6th Cir. 1974), cert. denied, 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975).  Allegations of knowledge that fall short of stating facts indicating actual knowledge are insufficient. The requirement of knowledge may be less strict where the alleged aider and abettor derives benefits from the wrongdoing but even in this situation the proof offered must establish conscious involvement in impropriety or constructive notice of intended impropriety.  *Northway, Inc. v. TSC Industries, Inc.*, 512 F.2d 324, 339 (7th Cir. 1975).

Moreover, under the TSA, Plaintiff must plead facts showing both primary violation and aiding liability.  A secondary aider's liability must be based upon the primary seller's culpability; in other words, an aider may only be held liable "to the same extent as" the primary seller.  If it were proven that the seller reasonably believed its statements to be true, there would be no primary violation and no derivative liability to attach to the aider. A primary violator is the party actually making the misrepresentations or misleading omissions, and it therefore makes sense to focus on whether it knew the statements were untrue.  If the primary violator did not know statements were untrue when made, there is no primary violation and therefore no secondary liability.

The plaintiff has the burden of pleading and proving a primary violation, and also has the burden of pleading and proving that the alleged aider had the required intent to deceive or defraud or acted with reckless disregard for the truth or the law.  "Instead of requiring the aider to establish lack of knowledge as an affirmative defense, the section on aider liability requires a plaintiff to prove that the aider acted with intent to deceive or defraud or with reckless disregard for the truth or the law".  *Sterling Trust*, 168 S.W.3d 835, 844.

The plaintiffs must plead a cause of action in accordance with their burden of proof. Therefore, in order to meet the pleading requirements of the Federal Rules of Civil Procedure, the plaintiff must allege specific facts sufficient to show a primary violation of Article 581-33A by SR-12.  In this case, the only fact that can be gleaned from the voluminous pleadings by the plaintiff is that the private placement memorandum did not contain audited financial statements. This fact is disclosed in the private placement memorandum.  Therefore, plaintiff does not sufficiently plead either an omission or misrepresentation.  The remainder of the Plaintiffs' pleadings are merely conclusory allegations and do not plead or establish any facts.

Similarly, the plaintiff has failed to plead any fact which would establish that Secore & Waller itself acted with intent to deceive or defraud, or with reckless disregard for the truth or the law.  Plaintiff points to the absence of an audited financial statement to establish, in its mind, facts sufficient to meet the plaintiff's burden of proof.  However, the absence of a financial statement, in and of itself, fails to rise to the level of a fact that pleads an intent on the part of Secore & Waller to deceive or defraud, or reckless disregard for the truth or the law.

The private placement memorandum for SR-12 stated that the corporation was recently incorporated, and had no prior activities, no significant assets and no current cash flow, and explained that therefore, no balance sheet or other financial information was presented for the corporation.  Ex. 1, PPM at p. 1 "Summary of the Offering" and p. 23 "Historical Financial Information".  Investors were informed in the private placement memorandum that information regarding the performance of prior oil and gas related investment funds managed or financed by affiliates of the corporation was provided in an exhibit and that additional information could be obtained from the management of the corporation upon request.  Ex. 1, PPM at p. 23.  Clearly, these statements in the private placement memorandum show there was no intent to deceive.

Moreover, as Plaintiffs concede, the preferred stock was issued and sold under exemptions from registration under the Securities Act of 1933 ("1933 Act") and applicable state securities acts.  The conditions for certain exemptions are set out in Regulation D 17 CFR 230.501 et seq..  The preferred stock of SR-12 was offered and sold under Rule 506 of Regulation D.  SR-12 required, under the private placement memorandum, that brokers offer and sell the preferred stock only to accredited investors. Ex. 1, PPM at p. i.

Regulation D sets out the conditions for an exempt offering.  Regulation D requires an audited balance sheet of the issuer, such as SR-12, **only** where the securities are offered to non-accredited investors. 17 CFR 230.502(b)(1).  Where securities are offered only to accredited investors, as was the case here, (Ex. 1, PPM at p. i) Regulation D does not require that any financial information be provided.  In this case, a financial statement would not have added any material information as SR-12 was newly formed and had no financial history – as disclosed in the PPM.  A financial statement for its parent, Provident, was not required under Regulation D.  In addition, the investors in SR-12 were informed that no other person or entity would provide financial support to SR-12.  Ex. 1, PPM at p. 11 under "Risk Factor".  Therefore, the inclusion of a Provident financial statement might have misled investors into believing that Provident would provide financial support to SR-12.  The omission of an audited financial statement from the private placement memorandum is not a fact showing reckless disregard for the truth or the law.  Plaintiff has failed to plead any facts showing that Defendant S&W acted with intent to deceive or with reckless disregard for the truth or the law.

Finally, under federal and Texas law, Plaintiff has the burden of pleading facts sufficient to show a primary violation by SR-12 or Provident.  Plaintiff has failed to plead any facts showing an actionable omission or representation sufficient to establish a primary liability. Plaintiff alleges that it was told that eighty-six percent of investor funds would be placed in oil and gas investments.  In fact, the private placement memorandum stated that approximately 86% of the proceeds of the offering, after payment of expenses, fees and commissions, would "be used to implement the Corporation's plan of business" and that while proceeds would be used primarily to acquire oil and gas properties, the proceeds could also be used to pay overhead and administrative expenses and might include the payment of intangible costs which might not result in the acquisition of an asset. Ex. 1, PPM at p. 18.  The PPM also contains express and conspicuous language regarding the uncertainty of, and risk involved with, "forward-looking statements", such as the statement regarding the anticipated investment of 86% of the proceeds of the offering "to implement the Corporation's plan of business." Ex. 1, PPM at p. iii

Plaintiff alleges that funds were co-mingled but does not allege facts showing that funds were co-mingled, or that, if funds were co-mingled, how such co-mingling would be a fact establishing a primary violation.  Plaintiff does not allege any facts showing that, if funds were co-mingled, Secore & Waller had any knowledge or awareness of such co-mingling.

**F.   Plaintiffs' Eleventh Claim For Relief Against "Defendants" (Assumingly Including Secore & Waller) for Fraud Must Be Dismissed.**

Under Wyoming common law, actionable common law fraud "is established when a plaintiff demonstrates, by clear and convincing evidence, that (1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages." *Marchant v. Cook,* 967 P.2d 551,554 (Wyo. 1998); *Birt v. Wells Fargo Home Mortgage, Inc.* 75 P.3d 640, 656 (Wyo. 2003).  As this Court held in *Ravenswood*, 374 F. Supp. 2d at 1066,

> In order to prevail on a common law fraud allegation under Wyoming law, a plaintiff must prove (1) that the defendant made a false representation to induce action, (2) that the plaintiff relied upon the representation to his detriment, and (3) that the plaintiff reasonably believed the representation to be true. *Halliburton Co. v. Claypoole,* 868 P.2d 252, 256 (Wyo.1994) (citing *Lavoie v. Safecare Health*

*Service, Inc.,* 840 P.2d 239, 252 (Wyo.1992)).

> Plaintiffs' common law fraud claim suffers from the same deficiencies as their §78r claim. Based upon the Amended Complaint, Plaintiffs cannot show that they relied upon a statement to their detriment.

*Id.*

The elements of common law fraud are similar to the elements of a §10(b) claim. *Id.* (dismissing Wyoming state law fraud claim for the same deficiencies as noted in plaintiff's claim under §78r of the Securities and Exchange Act.) Importantly, under §10(b) and common law fraud, the plaintiff must establish that the defendant made an untrue statement or false representation with intent or "scienter." *See, e.g., Willmschen v. Meeker,* 750 P.2d 669, 672 (Wyo. 1988); and *Brooks v. Zebre,* 792 P.2d 196,202 (Wyo. 1990).

In the case at bar, for substantially the same reasons that Plaintiffs cannot maintain their §10(b) and Wyoming Securities Act claims against Secore & Waller, Plaintiffs cannot maintain a common law fraud claim against Secore & Waller.

### a. Plaintiffs Failed to Plead Fraud With Particularity.

Dismissal of a claim for failure to meet the particularity requirements of Rule 9(b) is treated as a dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Seattle-First National Bank v. Carlstedt,* 800 F.2d 1008, 1011 (10th Cir.1986). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* The primary purpose of Rule 9(b) is to afford a defendant fair notice of the plaintiff's claim and of the factual ground upon which it is based. *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 987 (10th Cir.1992) (overruled on other grounds). Rule 9(b) also safeguards defendant's reputation and goodwill from improvident charges of wrongdoing and inhibits the institution of strike suits. *Id.* Courts within the Tenth Circuit rigorously enforce these purposes. *Id.* A complaint alleging fraud must set forth the time, place and contents of the false representation, the identity of the party making the false statements, and the consequences of the fraud. *Tal v. Hogan,* 453 F.3d 1244, 1263 (10th Cir.2006) quoting *Koch v. Koch Industries, Inc.,* 203 F.3d 1202, 1236 (10th Cir.2000).

Again, Plaintiffs have not specifically alleged that Martha Gibbs or any of her children relied on any part of the PPM when purchasing SR-12 preferred stock for the Gibbs Trust. Rather, Plaintiffs avers generally, and in a conclusory fashion, that they relied upon, among other things, "the written representations made in the private placement memoranda and other offering materials provided to her." *Am. Compl.,* ¶187.  This is not true with respect to the Gibbs Trust's $135,000 purchase of SR-12 preferred stock, however.

From the Amended Complaint it appears that Defendants Lawrence and Pope completed the SR-12 transaction on behalf of the Gibbs Trust.  Specifically, Plaintiffs allege that on or about May of 2008, Lawrence and Pope offered and sold to the Gibbs Trust $135,000 of preferred stock in SR-12.  *Am. Compl.,* ¶63.   None of Martha Gibbs' children: Susan Gibbs, Scott Gibbs or James Gibbs was aware of the Gibbs Trust's purchase of $135,000 of preferred stock in SR-12 until at least one year after the purchase. *Am. Compl.,* ¶ 63. Furthermore, Martha W. Gibbs is unable to recall any specific facts regarding the transaction and appears to not have been involved with this purchase.  *Id.*

From the allegations proffered in the Amended Complaint, Plaintiffs were not even involved in the purchase of SR-12 preferred stock.  Plaintiffs did not read a SR-12 PPM prior to purchasing the stock or rely upon one in any way. Therefore, the alleged false statements in the SR-12 PPM could legally have no consequences on Martha Gibbs or the Gibbs Trust.  As such, Plaintiffs common law fraud claim must be dismissed with prejudice as to Secore & Waller.

> **b. Plaintiffs have alleged Fraud Generally Against All Defendants In Violation of PSLRA Requirements.**

PSLRA "requires Plaintiff to distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud."  *Southland Securities Corp. v. Inspire Ins. Solutions,* 365 F.3d 353, 365 (5th Cir. 2004).  Instead, in their Eighth Claim for Relief, Plaintiffs group all Defendants, including Secore & Waller, together along with all Defendants' alleged participation in the multiple frauds allegedly perpetrated on Gibbs and both her Trusts.  Plaintiffs "shotgun" approach to pleading fraud in this matter demands dismissal of the common law fraud claim against Secore & Waller with prejudice.

**G. Plaintiffs' Thirteenth Claim For Relief Against Secore & Waller for Negligence Must Be Dismissed.**

Plaintiffs' Thirteenth Claim for relief seeks recovery under a theory of negligence. The four elements of negligence are, "(1) the defendant owed the plaintiff a duty to conform to a specified standard of care; (2) the defendant breached the duty of care; (3) the defendant breached that duty of care proximately causing injury to the plaintiff; and (4) the injuries sustained by the plaintiff is compensable by money damages." *Birt v. Wells Fargo Home Mortgage, Inc.*, 75 P.3d 640, 658 (Wyo. 2003). Count Thirteen of Plaintiffs' Complaint is utterly devoid of the facts that Plaintiffs allege compose their claim for negligence against Secore & Waller. *Complaint* ¶¶ 199-202).

Plaintiffs allege that Secore & Waller owed a duty to those who foreseeably would rely upon the PPM. *Am. Compl.,* ¶ 99. Plaintiffs are mistaken. This grafting of a tort concept of foreseeability in the context of securities litigation was rejected in the Supreme Court case of *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658. Secore & Waller owed no duty to anyone other than its clients. In fact, the existence of a duty to counterparties to a transaction could create a conflict with the duty of the firm to its client.

Further, under Wyoming law, to establish a negligence claim against a legal professional, the plaintiff must first establish that the attorney owed him a duty, then the plaintiff has the obligation to establish (1) the accepted standard of legal care or practice, (2) that the lawyer's conduct departed from the standard, and (3) that his conduct was the legal cause of the injuries suffered. *Moore v. Lubnau,* 855 P.2d 1245, 1248 (Wyo. 1993) (holding the long-held standards in a medical malpractice claim are analogous and should be applied to a legal malpractice claim).

The existence of a duty a defendant owes to a plaintiff is a question of law, " 'making an absence of duty the surest route to summary judgment in negligence actions.' " *In re Estate of Drwenski*, 83 P.3d 457, 461 (Wyo. 2004) (citing *Schuler v. Community First National Bank,* 999 P.2d 1303, 1306 (Wyo.2000)). Here, in Count Thirteen of Plaintiffs' Complaint, Plaintiffs failed to allege any facts whatsoever to establish that Secore & Waller owed Martha Gibbs, her children, or the Gibbs Trust a duty. *Am. Compl.* ¶¶ 199-202. This Court must dismiss Plaintiffs' negligence claim against Secore & Waller.

In Wyoming, an attorney is immune from negligence claims brought by a non-client except in limited circumstances where the client intends the attorneys' services to directly benefit

a third party non-client. *Estate of Drwenski,* 83 P.3d at 464. Thus, the threshold inquiry must be whether the plaintiff is the intended beneficiary of the transaction; if not, no further inquiry need be made. *Estate of Drwenski,* 83 P.3d at 464 (citing *Strait v. Kennedy,* 13 P.3d 671 (Wash. App. 2000)).  Put another way, if the plaintiff was not an intended beneficiary of the transaction, the plaintiff lacks standing to sue the attorney for legal malpractice. *Estate of Drwenski,* 83 P.3d at 464 (citing *Leipham v. Adams,* 832, 894 P.2d 576 (Wash. App. 1995)). An "intended beneficiary" of the transaction under means just that the transaction must have been intended to benefit the plaintiff; it is not enough that the plaintiff may be an incidental beneficiary of the transaction. *Estate of Drwenski,* 83 P.3d at 464 (citing *Trask v. Butler,* 872 P.2d 1080 (Wash. 1994)).

Whether a limited duty an attorney owes to a nonclient exists must be assessed on a case-by-case basis utilizing the following factors: (1) the extent to which the transaction was intended to directly benefit the plaintiff; (2) the foreseeability of harm; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) whether expansion of liability to the nonclient would place an undue burden on the legal profession; and (6) the policy of preventing future harm.  *Estate of Drwenski,* 83 P.3d at 464-65.

Reviewing Plaintiffs' Compliant in a light most favorable to Plaintiffs, this Court must dismiss Plaintiffs negligence claim against Secore & Waller for failure to state a claim. Plaintiffs' Complaint is devoid of factual allegations that would establish any duty Secore & Waller owed to Gibbs, her children or her Trusts.  Further Plaintiffs have not pled facts that can plausibly establish Secore & Waller's work on this matter on behalf of Provident Royalties, LLC and SR-12 was intended to benefit Gibbs, her children or her Trusts.  As such, under Wyoming law, no further inquiry into the lawyers', Secore & Waller's, liability to non-clients, Plaintiffs, is necessary. *Estate of Drwenski,* 83 P.3d at 464.  As such, Plaintiffs' claim for negligence against Secore & Waller must be dismissed under Fed. R. Civ. P. 12(b)(6).

## V.    CONCLUSION

Based upon the foregoing and the authorities cited herein, Secore & Waller submit all of Plaintiffs' claims must be dismissed.  Plaintiffs cannot state a viable claim against Secore &

Waller under any theory pled.  Secore & Waller is entitled to dismissal.

**DATED** this 25th day of August, 2010.

Respectfully Submitted,

McConnell Fleischner Houghtaling & Craigmile, LLC

<u>*S/  *Traci L. Van Pelt*</u>
Traci L. Van Pelt, Wyo. Bar No. 6-4330
Michael T. McConnell, Wyo, Bar No. 5-2942
**McConnell Fleischner Houghtaling & Craigmile, LLC**
Denver Corporate Center, Tower 1
4700 South Syracuse Street, Suite 200
Denver, Colorado  80237-2710
Phone Number: 303-480-0400
Fax Number: 303-458-9520
tvanpelt@mfhc.com
mmcconnell@mfhc.com

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 25TH day of August, 2010 a copy of the foregoing **DEFENDANT SECORE & WALLER LLP'S BRIEF IN SUPPORT OF FED.R.CIV.P. 12(b)(6) MOTION TO DISMISS** has been e-filed and thereby served electronically via the Court's CM/ECF system to the following persons:

Kim D. Cannon, Esq.
J. Mark Stewart, Esq.
Davis & Cannon, LLP
422 West 26th Street, P.O. Box 43
Cheyenne, WY  82003
cannon@davisandcannon.com
mark@davisandcannonchey.com

John A. Hutchings, Esq.
Dill Dill Carr Stonbraker & Hutchings, P.C.
455 Sherman Street, Suite 300
Denver, CO  80203
jhutchings@dillanddill.com

David A. Baugh, Esq.
Baugh Dalton Carlson & Ryan
55 West Monroe Street, Suite 600
Chicago, IL  60603
dbaugh@baughdaltonlaw.com

Mark W. Gifford, Esq.
Jeffrey C. Brinkerhoff, Esq.
Gifford & Brinkerhoff
243 South Park Street, P.O. Box 2508
Casper, WY  82602
mark@giffordbrinkerhoff.com
jeff@giffordbrinkerhoff.com

_Traci L. Van Pelt_
Traci L. Van Pelt