Kim D. Cannon, Wyoming State Bar #5-1401
J. Mark Stewart, Wyoming State Bar #6-4121
Davis & Cannon, LLP
422 West 26th Street
P.O. Box 43
Cheyenne, WY 82003
Phone:  307/634-3210
Facsimile:  307/778-7118
cannon@davisandcannon.com
mark@davisandcannonchey.com

John A Hutchings (*pro hac vice*)
Dill Dill Carr Stonbraker & Hutchings, P.C.
455 Sherman Street, Suite 300
Denver, CO 80203
Phone:        (303)777-3737
Facsimile:    (303) 777-3823
jhutchings@dillanddill.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| THE MARTHA W. GIBBS REVOCABLE TRUST, SUSAN GIBBS, SCOTT M. GIBBS, AND JAMES W. GIBBS, TRUSTEES, et al. | ) ) ) | |
| Plaintiffs, | ) ) | Case No.10CV0120-D |
| v. | ) ) | |
| DENNIS R. LAWRENCE, et al | ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' RESPONSE TO MOTION TO DISMISS OF DENNIS R. LAWRENCE

Plaintiffs' Amended Complaint (Doc. 39)[1] alleges in detail the role of Dennis R. Lawrence ("Lawrence") in the sale of fraudulent Ponzi scheme investments to the Plaintiffs which ultimately proved to be worthless.  The Plaintiffs are herein collectively referred to as the "Trusts" or the "Plaintiffs".  The Martha W. Gibbs Revocable Trust, Susan Gibbs, Scott M. Gibbs, and James W. Gibbs, Trustees, is hereinafter individually referred to as the "Gibbs Trust." The Alida D. Talmage Trust, FBO Martha Gibbs, Susan Gibbs, Scott M. Gibbs, and James W. Gibbs, Trustees, is hereinafter individually referred to as the "Talmage Trust."  The Trusts' claims involve investments in two of the same fraudulent schemes which the Plaintiffs invested in in the related case of *Naomi L. Miles Revocable Trust, Naomi L. Miles, Trustee, et al v. Dennis R. Lawrence, et al*, Case No. 10-CV-0034 (the "*Miles*" case) pending in this Court.  Also related to this case and the *Miles* case, is the case of *Russell C. Fieldgrove, et al v. Dennis  R. Lawrence, et al*, Case No. 10-CV-0104 (the "*Fieldgrove* case") also pending in this Court.  On August 19, 2010, this Court entered its Order consolidating cases for purposes of discovery pursuant to which this case, the *Miles* case, and the *Fieldgrove* case were consolidated pursuant to such Order (Doc. 43, *Fieldgrove* Doc. 35, *Miles* Doc. 107).  As pertains to this motion of Lawrence, as well as Rule 12(b) motions of other Defendants, the Court has advised that the parties may adopt and incorporate by reference motions or portions thereof filed in one or more of the related cases into one or more of the other related cases (Doc. 37, *Fieldgrove* Doc. 28, *Miles* Doc. 104).

The most significant factual difference between the Plaintiffs' purchases of the fraudulent investments in this case and those of the Plaintiffs in the *Fieldgrove* case and the *Miles*  case is

---

[1] Unless otherwise referenced "Doc" refers to documents filed in the above captioned case.

that the Defendant Lawrence was the Trustee of the Talmage Trust at the time of its purchase of $492,000 of Striker Series B Debentures (Amended Complaint, ¶ 4). As Trustee of the Talmage Trust, Lawrence, together with Randall Pope ("Pope") caused the Talmage Trust to liquidate all of its investments then held at First Interstate Bank, consisting of approximately $492,000 (Amended Complaint, ¶ 55), and place such money into an entity known as Indian Plains, LLC ("Indian Plains") (Amended Complaint, ¶ 44) for the express purpose of purchasing $492,000 of Striker Series B Debentures (Amended Complaint, ¶¶ 4, 44). The two other members of Indian Plains each purchased a smaller amount of Striker Series B Debentures, each such other member purchasing approximately $62,000 of Striker Series B Debentures (Amended Complaint, ¶ 44). Lawrence, as the Trustee of the Talmage Trust, and the accountant for Indian Plains, agreed to document the return of any money upon the Striker Series B Debentures to Indian Plains and see that it was properly allocated to the Talmage Trust, and other members of Indian Plains (Amended Complaint, ¶ 44). Lawrence structured the Talmage Trust's purchase of the Striker Series B Debentures through Indian Plains to disguise the fact that the Talmage Trust was the actual purchaser. Lawrence did this because the Talmage Trust was not an "accredited investor" which, according to the offering documents of the Striker Series B Debentures, was a requirement for purchase (Amended Complaint, ¶¶ 4, 44). In furtherance of this fraudulent contrivance, Lawrence, together with Pope, caused a Subscription Agreement of Indian Plains in the amount of $492,000 to be completed in a false and misleading manner, falsely portraying the actual purchaser as Indian Plains while, in fact, the actual purchaser was the Talmage Trust (Amended Complaint, ¶ 44). This fraudulent contrivance is remarkably similar to Lawrence's structuring of sham loan transactions between the Credit Trust and the Miles Trust, in the *Miles*

case, thus allowing the Credit Trust, and unaccredited investor, to purchase Striker debentures and other fraudulent investments through an accredited investor, the Miles Trust (*Miles Complaint*, ¶¶ 60, 62).

In addition to the above-described fraudulent contrivance of Lawrence in effectuating the Talmage Trust's purchase of $492,000 of Striker Series B Debentures, the Amended Complaint contains numerous allegations of acts and conduct of Lawrence which support the claims made against him (Amended Complaint, ¶¶ 4, 5, 6, 14, 44, 47, 49, 50, 54-66, 69-77, 107-116, 126, 132-145, 168-179, 186-188, 190-193 and 200-202). The Amended Complaint also alleges the details of the two fraudulent Ponzi schemes in which Lawrence offered and sold investments to the Trusts (Amended Complaint, ¶¶ 30-43). The detail with which the Amended Complaint alleges Lawrence's involvement in the sale of the fraudulent investments sold to the Trusts satisfies the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b) providing Lawrence with fair notice of the Trusts' claims under 15 U.S.C. § 78j(b) ("Section 10(b)") and 17 C.F.R. § 240.10b-5 ("Rule 10b-5") (First Claim for Relief). *Southland Securities Corp. v. InSpire Insurance Solutions*, 365 F.3d 353, 362 (5th Cir. 2000). The Trusts have also adequately stated their other claims against Lawrence for violation of 15 U.S.C. § 77l(a)(2) ("Section 12(a)(2)") (Third Claim for Relief), for violations of the Wyoming Securities Act, W.S. § 17-4-101, *et seq*. (Fifth Claim for Relief), professional negligence (Eighth Claim for Relief), breach of fiduciary duty (Ninth Claim for Relief), common law fraud (Eleventh Claim for Relief), civil conspiracy (Twelfth Claim for Relief), and negligence (Thirteenth Claim for Relief). Lawrence's Motion to Dismiss the Trusts' Amended Complaint for purported pleading deficiencies should be denied.

## THE COURT REVIEWS A RULE 12(b)(6) MOTION UNDER THE "PLAUSIBILITY" STANDARD

In the related cases, Plaintiffs, and many of the Defendants, have cited to the Court the applicable cases and argued the application of the "plausibility" standard established by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 50 U.S. 544, 555, 127 S.Ct. 1955, 1974 (2007) and as further construed by the Tenth Circuit in *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Circ. 2008) and *Phillips v. Bell*, 2010 W.L. 517629 (10th Cir. 2010). Rather than again restating the standard, Plaintiffs adopt and incorporate herein by reference as if set forth in its entirety, Plaintiffs' statement of the Rule 12(b)(6) plausibility standard as set forth in the section entitled "Plaintiffs' Complaint Passes the Plausibility Standard" contained in each of Plaintiffs' Response to Defendant Richard Hancock's Motion for Judgment on the Pleadings and the Plaintiffs' Response to Defendant Steve Holmes Motion to Dismiss in the Fieldgrove case.

### Plaintiffs State a Claim for Relief for Violation of Section 10(b) Under the Requirements of the PSLRA

Lawrence asserts Plaintiffs do not state a claim for violation of Section 10(b) because:

1.      The Talmage Trust was not a purchaser of the Striker Series B Debentures, instead the purchaser was Indian Plains, and thus the Talmage Trust lacks the standing to bring such claim.

2.      The Talmage Trust was not a "purchaser or seller of securities" and thus lacks the standing to bring a claim under Section 10(b).

3.      Plaintiffs have not alleged a strong inference of scienter as required under the PSLRA, 15 U.S.C. § 78u-4(b)(2).

Plaintiffs assert their standing argument with respect to the Talmage Trust's claims based

upon its alleged purchase of Striker Series B Debentures is applicable to all claims brought by the Talmage Trust.  However, for the reason that the Talmage Trust has standing to assert the Section 10(b) claims, it similarly has standing to assert all of its other claims.  Lawrence's lack of standing argument is really part and parcel of its argument that the Talmage Trust was not a "purchaser" of securities and thus lacks standing to bring a Section 10(b) action.  For the same reason that the Talmage Trust is considered a "purchaser" of the Striker Series B Debentures, it not only has standing to bring a Section 10(b) claim, but all other claims which it has brought. Further, although the Talmage Trust's claims are brought in relation to its purchase of the Striker Series B Debentures, many of Plaintiffs' claims derive from Lawrence's status as Trustee of the Talmage Trust which resulted in the loss of $492,000 to the Talmage Trust.  These include, the Talmage Trust's professional negligence claim (Eighth Claim for Relief), breach of fiduciary duty claim (Ninth Claim for Relief), common law fraud claim (Eleventh Claim for Relief), civil conspiracy claim (Twelfth Claim for Relief), and negligence claim (Thirteenth Claim for Relief).

## THE TRUSTS ADEQUATELY ALLEGE A SECTION 10(b) CLAIM

### The Talmage Trust is a Purchaser and Has Standing to Bring a Section 10(b) Claim

The Amended Complaint details that Lawrence, as the Trustee of the Talmage Trust, caused the liquidation of $492,000 of its investments at First Interstate Bank and directed that all of the proceeds be sent to an account controlled by Lawrence as Trustee of the Talmage Trust (Amended Complaint, ¶ 55).  By December 4, 2006, First Interstate Bank had transferred all of the Talmage Trust's assets to Lawrence as instructed (Amended Complaint, ¶ 55).  Lawrence, as Trustee of the Talmage Trust, then transferred all the Talmage Trust's assets to Indian Plains, which then transferred the funds to Striker on or about December 5, 2006 to complete the

Talmage Trust's purchase of the Series B Debentures (Amended Complaint, ¶ 55). The Talmage Trust was not an "accredited investor" which, pursuant to the terms contained in the offering documents for the Striker Series B Debentures, was a requirement to purchase Series B Debentures (Amended Complaint, ¶ 4). Lawrence believed that as a result of the financial status of the other two members of Indian Plains, Indian Plains would qualify as an "accredited investor" (Amended Complaint, ¶¶ 4, 44). Lawrence, as Trustee of the Talmage Trust, and as accountant for Indian Plains, agreed to document the return of money from the Striker Series B Debentures through Indian Plains to the Talmage Trust, and see that the Talmage Trust's portion was properly allocated to it (Amended Complaint, ¶ 44). A separate Subscription Agreement in the amount of $492,000 to permit the Talmage Trust's purchase of the Striker Series B Debentures was then executed by Indian Plains (Amended Complaint, ¶ 44). All of the foregoing events occurred within a matter of days. Plaintiffs have alleged the Talmage Trust as the purchaser of $492,000 of Striker Series B Debentures on or about December 5, 2006. But for Lawrence's role as Trustee of the Talmage Trust and accountant for Indian Plains, as alleged by the Talmage Trust, $492,000 of the Talmage Trust's money, representing virtually all of its assets, would not have been utilized to purchase $492,000 of Striker Series B Debentures.

A plaintiff must be a "purchaser" or a "seller" to have standing to bring a claim under Section 10(b) and Rule 10b-5. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975). However, Courts have uniformly refused to construe the "purchaser" requirement as narrowly as Lawrence would have this Court construe the requirement. *Blue Chip Stamps*, and the other case cited by Lawrence, *Unity House, Inc. v. North Pacific Investments, Inc.*, 918 F. Supp. 1384 (D. Ct. Hawaii 1996) are so far factually

removed from the facts and circumstances of this case, that they do nothing more than stand for the generally stated proposition of *Blue Chip Stamps*. *Blue Chip Stamps* involved a claim by a group that was offered the opportunity to purchase securities and declined the purchase. They then brought a claim under Section 10(b) and Rule 10b-5 alleging that the prospectus pursuant to which the offering had been made was unduly gloomy thereby fraudulently induced them not to purchase what would have been a favorable purchase. The controlling factor in *Blue Chip Stamps* was not the lack of formal privity but the Court's concern with the policy implications of removing the barriers against litigation by persons who did not have proof of injury demonstrated by their status as a real purchaser or seller. *Gardner v. Surnamer*, 608 F. Supp. 1385, 1393 (E.D. Pa 1985). The Court in *Blue Chip Stamps* was concerned as the plaintiff had neither purchased nor sold securities that any judgment or recovery would be largely conjectural or speculative depending upon the plaintiff's subjective hypothesis. *Blue Chip Stamps*, 421 U.S. at 735, 95 S. Ct. at 1925.

The Talmage Trust's purchase was structured through a fraudulent contrivance of Lawrence that Indian Plains was the purported purchaser. The Talmage Trust has alleged that, in fact, it was the purchaser of $492,000 of Striker Series B Debentures on December 5, 2006, and how the purchase was structured by Lawrence, as Trustee of the Talmage Trust (Amended Complaint, ¶¶ 4, 44, 45, 54 and 55).. The United States Supreme Court has expressly stated that Section 10(b) and Rule 10b-5 must be broad and flexible so that the remedial purpose of the section and the rule will be effectuated. *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S. Ct. 548, 553, 19 L. Ed. 2d 564 (1967). Courts have almost uniformly interpreted Section 10(b) and Rule 10b-5 to include as purchasers persons not in privity with the seller. *Sharp v. I.S., Inc.*, 685 F.

Supp. 688, 691-92 (S.D. Ill. 1988) (persons who advance money to a third party as their representative or agent to make the purchase may be a purchaser under Section 10(b) and Rule 10b-5).  *Mullen v. Sweet Water Development Corporation*, 619 F. Supp. 809, 814 (D. Colo. 1985) (plaintiffs were not record shareholders but possessed an equitable interest which was sufficient to give them standing as a purchaser under Section 10(b) and Rule 10b-5.  The Court noted the amount of stock was not conjectural, the claims arose out of a written contract, the number of shares were not in dispute and, thus, did not depend on the plaintiff's subjective hypothesis).  *Goodman v. Hentz & Company*, 265 F. Supp. 440 (N.D. Ill. 1967) (where the plaintiffs were actual parties to transactions that, except for the fraud of one of the defendants, would have resulted in actual purchases and sales of securities by the plaintiffs, they have standing to maintain an action under Section 10(b)).  *International Controls Corp. v. Vesco*, 593 F.2d 166, 188, n. 18 (2nd Cir. 1979), cert denied 442 U.S. 941, 99 S. Ct. 2884, 61 L. Ed. 2d 311 (1979) (when a complaint sufficiently pleads fraud pertaining to a contract or option to purchase shares, the plaintiffs have standing to sue under the 1934 Act).   The Talmage Trust has adequately alleged under controlling law it was a "purchaser" of the Striker Series B Debentures in the amount of $492,000.  The Talmage Trust thus not only has standing to bring a Section 10(b) claim, but standing to bring all other claims which depend upon its status as a "purchaser" of the Striker Series B Debentures.

### The Trusts Allege a Strong Inference of Scienter

In accordance with the courts advisement of July 28, 2010 , the Trusts adopt in its intirity, and incorporate by reverence as it fully set forth herein, the first two paragraphs of the section entitled, "The Plaintiffs Allege a Strong Interference of Scienter and Adequately State a Claim

under Section 10(b)" of Plaintiffs response to Motion to Dismiss of Dennis R. Lawrence filed in the Fieldgrove case.

The Trusts' numerous factual allegations of the conduct of Lawrence create a strong inference that he, at a minimum, acted with recklessness, if not with actual intent to deceive, manipulate, and defraud. The Talmage Trust alleges it is Lawrence, as its Trustee, who structured the purchase of Series B Debentures through Indian Plains so as to falsely disguise that it was the actual purchaser and not an accredited investor and in doing so agreed as the Trustee of the Talmage Trust and the accountant for Indian Plains that he would keep track of the proceeds from the Talmage Trust's Series B Debentures purchase (Amended Complaint, ¶¶ 4, 44).[2] This deliberate fraudulent contrivance is well beyond mere recklessness and is a fact creating a strong inference of a mental state embracing an intent to deceive, manipulate, and defraud. Lawrence not only recommended and advised the Talmage Trust's purchase of $492,000 of Striker Series B Debentures (Amended Complaint, ¶¶ 50, 54), as Trustee of the Talmage Trust, he effectuated the purchase (Amended Complaint, ¶¶ 4, 44, 54, 55, 59 and 60). Lawrence was also the accountant for both the Talmage Trust and the Gibbs Trust (Amended Complaint, ¶ 14). With respect to the Gibbs' Trust purchase of Striker Series B-4 Debentures and SR-12 preferred stock, on or about the purchase date of June of 2008, Martha Gibbs, the Gibbs Trust's then Trustee, was recovering from a serious debilitating physical condition and a diminishing mental capacity. As a result, she cannot recall any specific events regarding such transaction (Amended Complaint, ¶¶ 62, 63). The Gibbs Trust has alleged, on information and

---

[2] Pursuant to 17 C.F.R. § 230. 501(a) an "accredited investor" is an individual or entity meeting certain minimum financial requirements.

belief, Lawrence's involvement in the sale of Striker Series B-4 Debentures in the amount of $135,000 and SR-12 preferred stock in the amount of $135,000 to the Gibbs Trust (Amended Complaint, ¶ 63).  Plaintiffs have further alleged that Lawrence, as the accountant for the Gibbs Trust, in recommending and selling the Striker Series B-4 Debentures and SR-12 preferred stock owed a duty to the Gibbs Trust to conduct a reasonable and prudent due diligence investigation and that he failed to do so (Amended Complaint, ¶¶ 64, 66 and 66).  The Trusts allege that had Lawrence conducted a reasonable due diligence investigation, he would have discovered the fraudulent Ponzi schemes of Striker and Provident Royalties, LLC, which included the offering of SR-12 preferred stock (Amended Complaint, ¶¶ 69, 70).  The Trusts allege that Lawrence was aware that there were no audited financial statements of the offerings and that, as an accountant, he knew or should have known of the significance of the lack of audited or otherwise reliable financial information (Amended Complaint, ¶ 71) and that he did not disclose such risk's significance to the Trusts (Amended Complaint, ¶ 72).

The failure to have advised the Trusts of the alleged risk was particularly glaring, creating a strong inference of conduct meeting the recklessness standard, in view of Lawrence's position as an accountant, a person who would understand and appreciate the significance of audited financial statements and the significance of the lack of audited financial statements in securities offerings of the type and nature of those offered and sold to the Trusts.  Further, as a Trustee of the Talmage Trust, and as an accountant for both of the Trusts, Lawrence owed to the Trusts a fiduciary duty, which included the duty to have checked the accuracy of the information he provided to the Trusts.

An underwriter's position when offering securities is similar to that of Lawrence's

position as a fiduciary to the Trusts.  Underwriters must exercise a high degree of care of investigation and independent verification of a company's representations.  *Feit v. Leasco Data Processing Equipment Corp.*, 332 F.Supp. 544, 582 (E.D.N.Y. 1971).  An underwriter may not blindly rely on information provided to it and where "red flags" arise, must particularly investigate such warnings.  *In re WorldCom Securities Litigation*, 346 F.Supp.2d 628, 672 (S.D.N.Y. 2004).  Courts insist that underwriters conduct meaningful investigations which has been deemed to include reasonable investigation of unaudited financial information.  *Glassman v. ComputerVision Corp.*, 90 F.3d 617, 629 (1st Cir. 1996).  A broker-dealer's due diligence investigation which was found cursory and thus insufficient has been held to satisfy the scienter recklessness standard.  *Everest Securities, Inc. v. Securities and Exchange Commission*, 116 F.3d 1235, 1239 (8th Cir. 1997); *Kaplin v. Rose*, 49 F.3d 1363, 1380 (9th Cir. 1994) cert. denied 116 S.Ct. 58 (1995).

When all of the allegations of the Amended Complaint are accepted as true, and <u>taken collectively</u>, a reasonable person would deem the inference of scienter at least as strong as any opposing inference.  Lawrence has not offered any opposing inference for his conduct as alleged in the Amended Complaint.  Further, Lawrence engaged in a deliberate fraudulent contrivance with respect to the Talmage Trust's purchase of the Striker Series B Debentures, and failed to check information he had a duty to monitor as the Trustee of the Talmage Trust, and as the accountant for both Trusts.  Plaintiffs have thus adequately alleged a strong inference of scienter as required under the PSLRA and thus state a claim for relief under Section 10(b) against Lawrence.

## THE GIBBS TRUST HAS STATED A CLAIM FOR RELIEF UNDER SECTION 12 (a)(2)

**The Gibbs Trust's Section 12 (a) (2) Claim is not Barred by Section 13**

Pursuant to 15 U.S.C. § 77m ("Section 13"), claims brought pursuant to Section 12(a)(2) must be brought:

> . . . within one year after the date of discovery of the untrue statement or the omission or after such discovery should have been made by the exercise of reasonable diligence . . . ; in no event shall any such action be brought . . . under Section 77l(a)(2) of this title more than three years after the sale.

The Gibbs Trust has affirmatively alleged that the purchase of the Series B-4 debentures and SR-12 preferred stock occurred on June 20 and June 26, 2008 respectively, and thus the securities subject to the Section 12(a)(2) claim were purchased within three years from the date of the filing of this case (Amended Complaint, ¶ 123). As to the basis for his request for dismissal of the section 12(a)(2) claim, Lawrence wrongly contends that Plaintiffs have not alleged any facts that the Gibbs Trust was unable to discover the alleged fraudulent Ponzi scheme within one year from the purchase of the securities. Lawrence's assertion is incorrect for the reasons that:

1.      The requirement is not the discovery of the alleged misrepresentations within one year from purchase of the securities, but one year from the date of when such discovery should have been made by the exercise of reasonable diligence (Section 13); and

2.      Plaintiffs have, in fact, alleged that the filing of this Complaint is within one year from the date of discovery of the untrue statement or omission and within one year after such a discovery should have been made by the exercise of reasonable diligence (Amended Complaint, ¶¶ 124, 155, and, 164).

The Shale Royalties Litigation, of which the SR-12 preferred stock offering was a part brought by the SEC, was filed on or about July 1, 2009 (Amended Complaint, ¶¶ 29, 43). The

Striker Litigation brought by the SEC was not filed until on or about December 3, 2009 (Amended Complaint, ¶ 38).  The Gibbs Trust has alleged it did not discover the actual untruth and omissions alleged in the Amended Complaint concerning the Series B-4 debentures and SR-12 preferred stock until on or about the date of filing of the Shale Royalties Litigation and the Striker Litigation (Amended Complaint, ¶ 124).  Further, the Gibbs Trust has alleged it could not have reasonably discovered the untruths or omissions prior to such date because on or about January of 2009 and continuing to the present time, Martha W. Gibbs, the Trustee and sole beneficiary of the Gibbs Trust was suffering from significant physical disabilities and a diminished mental capacity (Amended Complaint, ¶ 124).

The one year limitation period begins to run when the Plaintiff is on inquiry notice which is characterized as sufficient storm warnings to alert a reasonable person of the possibility that there were either misleading statements or significant omissions involved in the sale.  *Anixter v. Home-Stake Production Co.* 939 F.2d 1420, 1437 (10th Cir. 1991).  In *Anixter*, the Court found that the filing of an SEC complaint regarding the alleged fraudulent conduct together with a subsequent rescission offer and Wall Street Journal article was sufficient to put a plaintiff on notice that something was amiss.  *Id*. at 1438.  The Gibbs Trust has affirmatively plead the dates upon which the SEC actions related to its investments in the Striker Series B-4 Debentures and SR-12 preferred stock were filed.  This action was brought within one year of the filing of such actions as the initial Complaint in this case was filed June 16, 2010 (*Gibbs* Doc. 1).  Under the standard established by the Tenth Circuit, the Gibbs Trust has adequately plead itself within the applicable statute of limitations of Section 13 and thus the Section 12(a)(2) claim of the Gibbs Trust is timely.

14

### The Gibbs Trust has Alleged Lawrence's Status as a Seller

Lawrence asserts he is not a "statutory seller" and therefore the Gibbs Trust fails to state a claim against Lawrence under Section 12(a)(2).  The leading case on statutory seller is *Pinter v. Dahl*, 486 U.S. 622, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988).  *Pinter v. Dahl* considered the definition of a statutory seller under Section 12(a)(1) rather than Section 12(a)(2).  However, since *Pinter*, Courts have applied the Supreme Court's Section 12(a)(1) language as to who constitutes a statutory seller for claims under Section 12(a)(2).  *Ryder International Corp. v. First American National Bank*, 943 F.2d 1521 (1lth Cir. 1991); *Allison v. Bank One-Denver*, 1994 W.L. 637403 (D. Colo. 1994).  In *Pinter*, the United States Supreme Court held that a statutory seller is not limited to persons who pass title but that a statutory seller includes individuals who engage in solicitation activity not inherently confined to the actual owner of the security.  *Pinter*, 486 U.S. at 642-43, 108 S. Ct. at 2076.  The United States Supreme Court noted an interpretation of statutory seller that includes those who solicit offers to purchase securities furthers the purposes of the Securities Act of 1933 which are to promote full and fair disclosure of information to the public in the sale of securities.  *Id.*, 486 U.S. at 646, 108 S. Ct. at 2078.  The Supreme Court further noted there is nothing incongruous about forcing one who solicits to be treated as the owner of the security.  As between the innocent purchaser and the wrongdoer who, although not in privity to the fraudulent contract, nonetheless participated in inducing the victim to make the purchase, equity requires the wrongdoer to restore the victim to the status quo.  *Id.*, 486 U.S. at 647, 108 S. Ct. at 2079, n. 23.

The Gibbs Trust has specifically alleged Lawrence engaged in the solicitation, offer, and sale of the Series B-4 debentures and SR-12 preferred stock to it (Amended Complaint, ¶¶ 62-66,

69-73, 75, 77, 107-116).   These allegations are notice that the Gibbs Trust intends to prove Lawrence's seller status.  *In re Electronic Data Systems Corp. ERISA Litigation*, 305 F. Supp. 2d 658, 681 (E.D. Tex 2004).   Under such circumstances, it is not appropriate for the court to resolve this fact intensive "seller" status issue on a Rule 12(b)(6) motion.  *Id*.  The court in *Electronic Data Systems* held that "seller" status should be considered in an evidentiary context rather than through a pleading which must be taken as true under Rule 12(b)(6).  *Id*. n. 29.  The court in *Electronic Data Systems* also noted that the leading cases which have interpreted Section 12 have involved fact intensive questions, almost always determined after an evidentiary hearing or trial.  *Id*.

### Lawrence Offered and Sold to the Gibbs Trust Series B-4 Debentures  and SR-12 Preferred Stock by Use of a Prospectus and/or Communications Related to a Prospectus

Lawrence's argument that the Gibbs Trust fails to state a Section 12(a)(2) claim because Section 12(a)(2) only applies to "public offerings" is wrong because Lawrence's argument equates "public offerings" to "registered offerings" meaning, offerings to sell securities registered with the U.S. Securities and Exchange Commission pursuant to the provisions of the Securities Act of 1933.  Lawrence's argument is an incorrect statement of the law.  Lawrence does not dispute that the private placement memoranda pursuant to which the Series B-4 Debentures and SR-12 preferred stock were sold contained untrue statements of material fact and material omissions.  The liability imposed by Section 12(a)(2) has nothing to do with the fact of registration; that is, the failure to file a registration statement that complies with provisions of the Securities Act of 1933.  The liability imposed by Section 12(a)(2) turns on misstatements contained in the prospectus.  *Gustafson v. Alloyd Company, Inc.*, 513 U.S. 561, 579, 115 S. Ct.

1061, 1071-72, 131 L. Ed. 2d 1 (1995).   Section 12(a)(2) applies to every class of securities (except one issued or backed by a governmental entity) whether exempted from registration or not.  *Id*. 513 U.S. at 580, 115 S. Ct. at 1072.   Thus, the real question is whether the private placement memoranda provided and the oral communications related to the private placement memoranda alleged in the Amended Complaint are "prospectuses" within the meaning of the Securities Act of 1933.  "Prospectus" is defined in 15 U.S.C. § 77b(a)(10) in relevant part as:

> ". . . any prospectus, notice, circular, advertisement, letter or communication written or by radio or television, which offers any security for sale or confirms the sale of any security; . . ."

In *Gustafson*, the United States Supreme Court held that the term "prospectus" relates only to documents that offer securities sold to the public by an issuer.  *Id*., 513 at 571, 115 S. Ct. at 1068.  However, in *Gustafson*, the Court was clear that "sold to the public by the issuer" does not mean or equate to the fact of registration under provisions of the Securities Act of 1933.  *Id*. 513 U.S. at 579-80, 115 S. Ct. at 1071-72.

In the case of the Striker debentures, the Gibbs Trust has have alleged that approximately $57,000,000 was raised from the sale of debentures to approximately 540 investors nationwide (Amended Complaint ¶ 31).   Based on the number of investors in the offerings and the dollar amounts involved, the Striker Series B-4 Debentures and SR-12 preferred stock were "offered to the public."   These were not privately negotiated transactions between the Gibbs Trust and the issuers based upon some preexisting business or personal relationship.   The Amended Complaint contains no such allegation.   In fact, the allegations of the Amended Complaint are that the Gibbs Trust was solicited to purchase the securities by not only Lawrence, but Pope, and registered broker-dealers, who were involved in the offer and sale of such investments to the public.   As a

result of such solicitations, sales occurred each of which involved a subscription agreement (Amended Complaint, ¶¶ 44, 63(d)).  The Series B-4 Debentures and SR-12 preferred stock were not registered and are what are generally referred to as private placements.  This does not result in the conclusion that they were not offered by means of a "prospectus" to the public.  Lawrence cites no cases holding otherwise.

The cases cited by Lawrence in support of his position did not involve any offering to the public.  *Gustafson* involved a private secondary transaction pursuant to a purchase agreement.  *Gustafson*, 513 U.S. at 564, 115 S. Ct. at 1064.  The Supreme Court noted with approval the District Court's conclusion that the private sales agreement involved in *Gustafson* cannot be compared to an initial offering because the purchasers in *Gustafson* had direct access to financial and other company documents and had the opportunity to inspect the seller's property whereas such is not the case in an offering to the public.  *Id*. 513 U.S. at 566, 115 S. Ct. at 1065.  The other case cited by Lawrence, *Perry v. Robinson & Investors Planning, Inc.*, 99 F. 3d 1150 (10th Cir. 1996) was decided on the basis that plaintiff presented no evidence that the securities were part of a public offering.  In this case, the conduct of Lawrence of offering and selling by means of a prospectus and oral communication the Series B-4 Debentures and SR-12 preferred stock, together with the existence of the other required elements of a Section 12(a)(2) claim, states a claim for relief under Section 12(a)(2) against Lawrence.

## THE GIBBS TRUST ADEQUATELY PLEADS VIOLATION OF THE WYOMING SECURITIES ACT BY LAWRENCE

The Gibbs Trust's Fifth Claim for Relief alleges Lawrence violated the Wyoming Securities Act by engaging in the sale of unregistered securities in violation of W.S. § 17-4-107, sale of securities by an unregistered agent in violation of W.S. § 7-4-113(a)(ii), and fraud in

connection with the sale of securities in violation of W.S. § 17-4-122(a)(ii).  Civil liability arises

from violation of W.S. § 17-4-107 and W.S. § 17-4-113(a)(ii) pursuant to W.S. § 17-4-122(a)(i).

**Sale of unregistered securities.**

      The Gibbs Trust alleges that W.S. § 17-4-107 makes it unlawful for any person to offer or

sell a security in the State of Wyoming unless it is either registered, exempt under W.S. § 17-4-

114 or is a "covered security" (Amended Complaint, ¶ 133).  The Gibbs Trust alleges the sale of

Series B-4 Debentures and SR-12 preferred stock were not registered, not exempt, and not

covered securities under applicable provisions of the Wyoming Securities Act (Amended

Complaint ¶ 136).  Finally, the Gibbs Trust alleges that pursuant to W.S. § 17-14-122(a)

Lawrence, along with other Defendants, is liable to the Gibbs Trust (Amended Complaint, ¶

137).  This is sufficient to state a claim for relief against Lawrence for the offer and sale of

unregistered securities to the Trusts.

      Lawrence complains that the Gibbs Trust has failed to plead facts which establish that the

Series B-4 Debentures and SR-12 preferred stock were not exempt from registration under the

Securities Act of 1933 or were sold in violation of W.S. § 17-4-107.  (The Gibbs Trust makes no

claim for the sale of unregistered securities under the Securities Act of 1933.)   On a Rule

12(b)(6) motion to dismiss, all well plead allegations of the Amended Complaint must be

accepted as true.  Therefore, it must be accepted as true that: (1) the Series B-4 Debentures and

SR-12 preferred stock were not registered under the Wyoming Securities Act; (2) neither the

securities themselves nor the transactions were exempt under W.S. § 17-4-114, and (3) they were

not a covered security.  These allegations, together with the allegations of the sale of the Series

B-4 Debentures and SR-12 preferred stock, state a claim for relief for sale of unregistered

securities.  It is not the Gibbs Trust's obligation to plead facts that the securities were not exempt from registration.  Establishing the private offering exemption is an affirmative defense which must be proven by the person claiming the exemption.  *United States v. Arutunoff*, 1 F.3d 1112, 1118-19 (10th Cir. 1993).  Lawrence asserts no basis upon which the Series B-4 Debentures and SR-12 preferred stock would be considered an exempt security or their sale would be considered an exempt transaction under the provisions of W.S. § 17-4-114.

**<u>Lawrence acted as an unregistered agent.</u>**

It is unclear whether Lawrence is asserting that the Amended Complaint fails to state a claim for relief for sale of securities by an unregistered agent.  The Amended Complaint alleges that Lawrence was an agent within the meaning of W.S. § 17-4-113(a)(ii) (Amended Complaint, ¶ 140), that Lawrence was never registered as a "agent" under the provisions of the Wyoming Securities Act (Amended Complaint, ¶ 139), and that on the dates set forth in ¶ 132 of the Amended Complaint Lawrence, as an agent, in violation of W.S. § 17-4-103(a) transacted business in the State of Wyoming consisting of the offer and sale to the Gibbs Trust of the securities identified in ¶ 132 of the Amended Complaint (Amended Complaint, ¶140).  Apparently Lawrence does not deny that he was an agent; instead, asserting that the Gibbs Trust fails to allege he actually sold any of the investments identified in ¶ 132 of the Amended Complaint.  This assertion is not true.  The Gibbs Trust alleges that with respect to the $135,000.00 of preferred stock in SR-12 and Series B-4 Debentures purchased by the Gibbs Trust, Lawrence acted as the investment advisor for the Gibbs Trust (Amended Complaint, ¶¶ 10, 63(d)).  As discussed above, under the authority of *Pinter*, a seller includes those who engage in any solicitation activity.  *Pinter*, 486 U.S. at 642-43, 108 S. Ct. at 2076.  Additionally, an

agent as defined in W.S. § 17-4-113(a)(ii) means:  ". . . any individual other than a broker-dealer who represents a[n] . . . issuer in effecting or attempting to effectuate purchases or sales of securities."   The expressed definition of agent under the Wyoming Securities Act does not require an actual sale, but simply an attempt.   The Gibbs Trust has have alleged Lawrence's status as a fiduciary of the Gibbs Trust (Amended Complaint, ¶ 64) and as the investment advisor with respect to the SR-12 investments (Amended Complaint, ¶ 63(d) which would therefore bring him within the scope of a seller under *Pinter* as well as under the express language of the Wyoming Securities Act.  W.S. § 17-4-113(a)(ii).

A person who is unlawfully acting as an agent in the sale of un-exempt securities is automatically civilly liable under W.S. § 17-4-122(a)(i).  *Guadina v. Haberman*, 644 P.2d 159, 168 (Wyo. 1982).  A person who sells unregistered securities in violation of W.S. § 17-4-107 is automatically liable under § 17-4-122(a)(i).  *Id.*  All who participate in the sale of an unregistered security, including the salesman, have civil liability.  *Id.*  An agent is charged with knowledge of the registration statement and is liable for his assistance in the distribution of unregistered securities.  *Id.*  Liability attaches by operation of law to the sale by any person of any non-exempt unregistered security and gives rise to a cause of action against all those who have participated in the sale.  *Id.*  Further, recovery under the Wyoming Securities Act does not depend upon a showing of a seller's consciousness of the falsity of the material misrepresentations.  *Id.*  The Gibbs Trust's Fifth Claim for Relief adequately states claims against Lawrence for the sale of unregistered securities and the sale of unregistered securities by an unregistered agent.

## Lawrence Engaged in Fraud in Connection With the Sale of Securities Under the Meaning of the Wyoming Securities Act.

Lawrence wrongfully asserts that W.S. § 17-4-122(a)(ii) is equivalent to Section 10(b). This assertion is incorrect as W.S. § 17-4-122(a)(ii) is equivalent to Section- 12(a)(2) (15 U.S.C. § 77l(a)(2)).  There are no cases setting forth the elements of a fraud claim in connection with the purchase and sale of securities under W.S. § 17-4-122(a)(ii) or whether scienter is a required element of such claim. However, see *Guadina v. Haberman*, 644 P.2dat 168, holding that recovery under the Wyoming Securities Act does not depend on a showing of a seller's consciousness of the falsity of representation, thereby strongly suggesting scienter is not an element of a W.S. § 17-4-122(a)(ii) claim.   Other States have expressly held that scienter is generally not a necessary element of a fraud claim under state securities laws.  *Banton v. Hackney*, 557 S.2d 807, 826 (Ala. 1989); *DeJonghe v. E.F. Hutton & Company, Inc.*, 830 P.2d 862, 865-66 (Ariz. App. 1991); *Foster v. Alex*, 752 N.E.2d 1242, 1243-44 (Ill. App., 5th Dist. 1991); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 343-44 (5th Cir. 2008) (The Texas Securities Act has no scienter requirement.).   Alabama Code § 8-6-19(a) is virtually identical to W.S. § 17-4-122(a).  In determining that intent to defraud was not an element of a claim under Alabama Code § 8-6-19(a), the Alabama Supreme Court compared such statute to Section 12(a)(2), and Section 4(10)(a)(2) of the Uniform Securities Act.  *Banton v. Hackney*, 557 S.2d at 826.  The Alabama Supreme Court recognized that under Section 12(a)(2) there is no intent to defraud element.  Both Section 12(a)(2) and Alabama Code § 8-6-19 are "strict liability" statutes and there is no scienter requirement under either provision.  *Id*.

In interpreting provisions of the Wyoming Securities Act involving the sale of unregistered securities by an unregistered agent, the Wyoming Supreme Court has drawn upon other States' interpretation of the Uniform Securities Act.  *Guadina v. Haberman*, 644 P.2d at

168.  The Wyoming Supreme Court also recognizes federal court determinations as applicable to construing provisions of the Wyoming Securities Act.  *Id.* at 165.  Consistent with the Wyoming Supreme Court's previous interpretation of the Wyoming Securities Act, W.S. § 17-4-122(a)(ii) has no scienter element but is a "strict liability" statute with the seller's defense being that of "due care."

Even if this Court were to determine that W.S. § 17-4-122(a)(ii) does contain an "intent" or state of mind element, there is nothing to suggest that anything more than the Rule 9(b) requirement that intent may be generally alleged is required.  This the Gibbs Trust has done.  The Gibbs Trust adequately states a claim for violation of W.S. § 17-4-122(a)(ii).

## THE TRUSTS HAVE ADEQUATELY ALLEGED A CLAIM OF PROFESSIONAL NEGLIGENCE AGAINST LAWRENCE

Lawrence asserts that the Talmage Trust's claim of professional negligence against him is barred by the Statute of Limitations provisions of W.S. § 1-3-107.  Lawrence makes no assertion that the Gibbs Trust's claim of professional negligence against him should be dismissed.  Lawrence asserts that the Talmage Trust's claims are not within the Statute of Limitations of W.S. § 17-1-3-107, arguing there is no allegation the Talmage Trust either did not discover or could not have reasonably discovered the alleged act, error or omission within the Statute's two year provision.  The Trusts' professional negligence claim incorporates into it paragraphs 1 through 166 of the Amended Complaint.  This incorporation by reference is proper.  (F.R.Civ.P. 10(c)).  The Amended Complaint alleges the following:

1.     The Striker Litigation Complaint was not filed until on or about December 3, 2009 (Amended Complaint, ¶ 38).

2.      The Shale Royalties Litigation was not filed until or about July 1, 2009 (Amended Complaint, ¶ 43).

3.      In mid-February of 2006, Martha W. Gibbs, the then Trustee of the Talmage Trust underwent extensive back surgery and as a result was in a rehabilitation facility from approximately mid-February of 2006 through October 30, 2006.  During such time, she was physically disabled and mentally unable to make significant investment or business decisions (Amended Complaint, ¶ 49).

4.      On November 3, 2006, Lawrence became the Trustee of the Talmage Trust (Amended Complaint, ¶ 55).

5.      Between September of 2007 and April of 2008, Martha W. Gibbs underwent further surgery and extended rehabilitation as a result of such surgery.  By May of 2008 her physical condition had become further debilitated and her mental capacity had continued to diminish.  In May of 2008, she lacked the mental capacity to make informed investment decisions (Amended Complaint, ¶ 62).

6.      The Gibbs Trust, through Martha Gibbs as Trustee, could not have discovered the untruths or omissions and did not actually discover the untruths or omissions concerning the Gibbs Trust's investments in the Series B-4 debentures and SR-12 preferred stock until the filing dates of the Securities and Exchange Commission Complaints in each case (Amended Complaint, ¶ 124).

The Series B-4 debentures were a part of Striker's fraudulent Ponzi scheme (Striker Litigation Complaint; *Miles* Doc. 48-2) and there is no basis upon which it can be asserted that there was any basis for the Talmage Trust to have discovered the fraud associated with the Series

B Debentures any earlier than it could have discovered the fraud with respect to the Series B-4

Debentures.  Further, Lawrence was the Trustee of the Talmage Trust.  Based on his alleged

involvement in Striker's fraudulent Ponzi scheme, he was in the best position to know or he

should have known of the alleged fraud.  Yet, he makes no assertion that he ever advised Martha

Gibbs, the beneficiary of the Talmage Trust, of the alleged fraud.  Lawrence makes no assertion

that he <u>ever</u> advised Martha Gibbs or anyone else related to the Talmage Trust of anything amiss

with the Talmage Trust's investment in the Series B Debentures or that he did so more then two

years prior to the bringing of claims for professional negligence against Lawrence in this case.

Finally, statute of limitations is an affirmative defense and has not been held to be an element of

a claim of professional negligence or breach of a fiduciary duty which a plaintiff must plead or

prove.  The statute of limitations defense is the burden of the defendant and Lawrence has done

nothing more than to incorrectly assert that Plaintiffs have not set forth "any allegations of fact"

related to their professional negligence claim against Lawrence.

## THE TALMAGE TRUST SETS FORTH A CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST LAWRENCE

The Talmage Trust brings a claim of breach of fiduciary duty against Lawrence based

upon Lawrence's status as Trustee of the Talmage Trust.  W.S. § 1-3-107 has never been held to

be applicable to a breach of fiduciary duty claim by a trust against the trust's trustees.  Further,

even if it were, as with the Talmage Trust's professional negligence claim, were W.S. § 1-3-107

applicable to the Talmage Trust's breach of fiduciary duty claim, it would not bar the claim.

## THE TRUSTS ADEQUATELY PLEAD COMMON LAW FRAUD AGAINST LAWRENCE

The Trusts agree that F.R.Civ.P. 9(b) is applicable to their fraud claim (Eleventh Claim

for Relief) against Lawrence and that *Birt v. Wells Fargo Home Mortgage, Inc.*, 75 P.3d 640 (Wyo. 2003) sets forth the elements of a fraud claim in the State of Wyoming.  The Trusts' common law fraud claim against Lawrence satisfies both the requirements of F.R.Civ.P. 9(b) and Wyoming law by alleging with particularity the requisite elements for fraud claims under Wyoming law.

The Trusts' common law fraud claim incorporates within it paragraphs 1 through 184 of the Amended Complaint.  Contrary to Lawrence's assertions, the Amended Complaint sets forth the circumstances constituting the fraud with particularity, (F.R.Civ.P. 9(b)), by alleging the time, place, and contents of the false representations, the identity of the party making the false statements, and the consequences thereof (see Amended Complaint, ¶¶ 4, 5, 6, 14, 44, 47, 49, 50, 54-66, 69-77, 107-116, 126, 132-145, 168-179, and 186-188).  The requirements for pleading the circumstances constituting securities fraud under Section 10(b) are more stringent than those of F.R.Civ.P. 9(b).  See 15 U.S.C. § 78u-4(b)(1) and compare to F.R.Civ.P. 9(b).  The most significant difference between the pleading requirements of the PSLRA and Rule 9(b) is that under Rule 9(b) malice, intent, knowledge, and other conditions of the mind of a person may be asserted generally while 15 U.S.C. § 78u-4(b)(2) requires the pleading of facts creating a strong inference of a state of mind.

In addition to pleading circumstances constituting Lawrence's fraud including the time, place, and contents of false representations, the identity of the parties making the false statements, and other circumstances of Lawrence's fraudulent conduct, the Trusts have plead they purchased the investments based upon Lawrence's conduct, thus believing Lawrence's misrepresentations to be true, relied upon the false representations (Amended Complaint, ¶ 187),

and suffered damages (Amended Complaint, ¶ 188).  The Trusts therefore state a claim for relief for common law fraud against Lawrence.

## THE TRUSTS STATE A CLAIM FOR RELIEF OF NEGLIGENCE AGAINST LAWRENCE

The Trusts' Thirteenth Claim for Relief is for negligence against Lawrence.  The elements of a claim of negligence under Wyoming law are substantially similar to a claim of professional negligence under Wyoming law.  Compare *Rino v. Mead*, 55 P.3d 13, 20 (Wyo. 2002) with *Birt v. Wells Fargo Home Mortgage, Inc.*, 75 P.3d at 658.

The Trusts' Thirteenth Claim for Relief incorporates within it paragraphs 1 through 198 of the Amended Complaint.  Thus, the allegations of duty and breach contained in the Trusts' professional negligence claim against Lawrence (Eighth Claim for Relief) are directly incorporated into the negligence claim (Thirteenth Claim for Relief).  Similarly, allegations of proximately caused injury and damages are both incorporated from the professional negligence claim into the negligence claim as well as separately alleged (Amended Complaint, ¶ 202). Thus, the Trusts' Thirteenth Claim for Relief adequately states a claim for negligence against Lawrence under Wyoming law.

## CONCLUSIONS

The totality of the allegations contained in the Amended Complaint more than gives Lawrence fair notice of the claims which are asserted against him.  Lawrence does not move to dismiss Plaintiffs' Twelfth Claim for Relief for civil conspiracy against him.  The allegations against Lawrence are particular and detailed.  The requisite elements of all claims are contained within the Amended Complaint.  The Trusts therefore respectfully request that Lawrence's Motion to Dismiss be denied.

Respectfully submitted this 20th day of September, 2010.

DAVIS & CANNON, LLP

By: _s/_____
J. Mark Stewart
422 West 26th Street
P.O. Box 43
Cheyenne, WY 82003
Telephone:      (307) 634-3210
Facsimile:      (307) 778-7118
mark@davisandcannonchey.com

Kim D. Cannon
DAVIS & CANNON, LLP
40 South Main
P.O. Box 728
Sheridan, WY 82801
Telephone:      (307) 672-7491
Facsimile:      (307) 672-8955
cannon@davisandcannon.com

John A Hutchings (*pro hac vice*)
DILL DILL CARR STONBRAKER
   & HUTCHINGS, P.C.
455 Sherman Street, Suite 300
Denver, CO 80203
Phone:          (303)777-3737
Facsimile:      (303) 777-3823
jhutchings@dillanddill.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court

using the CM/ECF system which will automatically send email notification of such filing on the

20th day of September, 2010 to the following:


Jeffrey C. Brinkerhoff
Mark W. Gifford
Gifford & Brinkerhoff
jeff@giffordbrinkerhoff.com
mark@giffordbrinkerhoff.com

David A. Baugh
Baugh Dalton Carlson & Ryan, LLC
dbaugh@baughdaltonlaw.com

Thomas N. Long
Laura Jean Jackson
Long Reimer Winegard
tlong@lrw-law.com
ljackson@lrw-law.com

Jason Tangeman
Anthony Nicholas Goodrich & Tangeman
jtangeman@wyolegal.com

Michael T. McConnell
Jared C. Lockwood
McConnell Fleischner Houghtaling &
Craigmile, LLC
mmcconnell@mfhc.com
jlockwood@mfhc.com

K Lawson Pedigo
Miller Keffer Bullock & Pedigo
KLPedigo@mkp-law.net

Charles W. Gameros, Jr.
Hoge & Gameros
bgameros@legaltexas.com

David F. DeFazio
DeFazio Law Office
david@defaziolaw.com

Rick L. Koehmstedt
Schwartz, Bon, Walker & Struder, LLC
rick@schwartzbon.com

Thomas N. Fitzgibbon
Kimberly L. Thigpen
Pfeiffer Thigpen FitzGibbon & Ziontz LLP
tnf@ptflaw.com
klt@ptflaw.com


**and sent either electronically or by mail to:**
Nathan Glossi
605 E. Myrtle Street
Fort Collins, CO 80524
Email: nglossi@hotmail.com

_s/_ _____