Kim D. Cannon, Wyo. Bar #5-1401
J. Mark Stewart, Wyo. Bar #6-4121
Davis & Cannon, LLP
P.O. Box 43
Cheyenne, WY 82003
Telephone:      (307) 634-3210 Case No. 10CV0120D

Facsimile:      (307) 778-7118
cannon@davisandcannon.com
mark@davisandcannonchey.com
*Attorneys for Plaintiffs*

John A. Hutchings, Pro Hac Vice
Dill Dill Carr Stonbraker & Hutchings, P.C.
455 Sherman Street, Suite 300
Denver, CO 80203
Telephone:      (303)777-3737
Facsimile:      (303) 777-3823
Jhutchings@dillanddill.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| THE MARTHA W. GIBBS REVOCABLE TRUST, SUSAN GIBBS, SCOTT M. GIBBS, AND JAMES W. GIBBS, TRUSTEES; et al.<br><br>          Plaintiffs,<br>v.<br><br><br>DENNIS R. LAWRENCE; et al.<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 10CV0120D<br>)<br>)<br>)<br>)<br>) |

**THE TALMAGE TRUST'S RESPONSE TO DEFENDANT HANCOCK'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant Richard Hancock ("Hancock") has filed Defendant Richard Hancock's Notice

1

to the Court of Adoption of Motion for Judgment on the Pleadings Filed in Related Action (Doc. 66)[1] ("Notice of Adoption") pursuant to which he fully adopts and incorporates his Motion for Judgment on the Pleadings in the Related Case of Naomi L. Miles Revocable Trust, Naomi L. Miles Trustee, et al *v. Dennis R. Lawrence, et al*, Case No. 10-cv-0034 (the "*Miles* case") as his Motion for Judgment on the pleadings in the present case and requests that all claims brought by the Talmage Trust in this case be dismissed against him. Hancock's Notice of Adoption incorrectly states Plaintiffs' here asserted three claims for relief against him. The Talmage Trust has alleged four claims for relief against Hancock, which are:

1.    First Claim for Relief for violation of 15 U.S.C. 78j and 17 C.F.R. § 240.10b-5;

2.    Sixth Claim for Relief for violation of the Texas Securities Act, Vernon's Ann., Tex. Civ. St., Art. 581-33A(2) and F(2);

3.    Eleventh Claim for Relief for common law fraud; and

4.    Thirteenth Claim for Relief for negligence.

Pursuant to Fed.R.Civ.P. 12(c), Hancock seeks judgment on all of the Claims for Relief against him, however, neither in his Notice of Adoption or in is Motion for Judgment on the Pleading in the *Miles* case (*Miles* Doc. 62 and 63) does he state any reason why the negligence claim in this case or the *Miles* case should be dismissed.

This case is related to the *Miles* case and the case of *Russell Fieldgrove, et al v. Dennis R. Lawrence, et al*, Case No. 10-cv-0204 (the "*Fieldgrove* case") both of which are pending before this Court. On August 19, 2010 this Court entered an Order Consolidating Cases for purposes of discovery in this case, the *Miles* case, and the *Fieldgrove* case (Doc. 43, *Fieldgrove* Doc. 35, and

---

[1] Unless otherwise noted the reference to "Doc" refers to documents referenced in the above captioned case.

*Miles* Doc. 107).   On July 28, 2010, immediately following a Telephonic Status Conference, Minutes of the Status Conference were entered into the docket in each of this case, the *Fieldgrove* case, and the *Miles* case (Doc. 37, *Fieldgrove* Doc. 28, *Miles* Doc. 104).   Pursuant to the Minutes of the Telephonic Status Conference in all three cases, the Court advised that the parties may adopt and incorporate by reference motions or portions thereof filed in any of the related cases as a motion or portion thereof in any other of the related cases..   Hancock has done so by adopting in its entirety his Motion for Judgment on the Pleadings filed in the *Miles* case and Memorandum in Support thereof, (*Miles* Doc. 62 and 63), as his Motion for Judgment on the Pleadings in this case.

Plaintiffs initiated this action on June 16, 2010 by the filing of a Complaint and Jury Demand (Doc. 1).   On August 5, 2010, pursuant to F.R.Civ.P. 15(a)(1), Plaintiffs filed an Amended Complaint and Jury Demand for the sole purpose of adding as a Defendant Debra Harrawood White (Doc. 39).   Hancock's Motion for Judgment on the Pleadings is directed to the Amended Complaint.

The allegations of the Amended Complaint in this case against Hancock are substantially similar to the allegations against Hancock in the *Miles* case and the *Fieldgrove* case.   The principal difference is in the securities purchased in each of the related cases.   In this case, Plaintiffs purchased Striker Petroleum Series B and Series B-4 Debentures.   In the *Fieldgrove* case, Plaintiffs purchased the Striker Series B and B-2 Debentures, and in the *Miles* case, Plaintiffs purchased Striker Series B-2 Debentures.   Plaintiffs' claims in this case against Hancock relate only to the purchase by Plaintiff Alida D. Talmage Trust, FBO Martha Gibbs, Susan Gibbs, Scott M. Gibbs, and James W. Gibbs, Trustees (the "Talmage Trust") of Series B

Debentures in the amount of $492,000.  In this case, a claim is asserted against Hancock under the Texas Securities Act while in the *Fieldgrove* case and the *Miles* case, no claim under the Texas Securities Act is asserted against Hancock.

Hancock seeks judgment on the pleadings upon the First Claim for Relief, which alleges violation of 15 U.S.C. § 78j(b) ("Section 10(b)") and 17 C.F.R. § 240.10b-5 ("Rule 10b-5") asserting that the Talmage Trust has failed to meet the requirements of 15 U.S.C. § 78u-4(b)(2) by failing to allege facts giving rise to a strong inference of scienter on the part of Hancock. Hancock seeks judgment on the pleadings on the Sixth Claim for Relief which alleges violation of Vernon's Ann., Tex. Civ. St., Art. 581-33A(2) of the Texas Securities Act ("Section 33A(2)"), fraud in connection with the purchase and sale of securities and aiding and abetting liability under Vernon's Ann, Tex. Civ. St., Art. 581-33F(2) of the Texas Securities Act ("Section 33F(2)").  Hancock makes no argument as to why the Talmage Trust's claim under Section 33A(2) should be dismissed.  Hancock seeks judgment upon the Eleventh Claim for Relief for common law fraud asserting that the Talmage Trust has made no allegation that Hancock made a "false representation intended to induce action" (Defendant Richard Hancock's Memorandum of Law in Support of Motion for Judgment on the Pleadings, p. 11, *Miles* Doc. 63) and that the Talmage Trust has failed to adequately plead the intent requirement pursuant to F.R.Civ.P. 9(b). The Thirteenth Claim for Relief alleges negligence against Hancock.  Hancock makes no argument that Talmage Trust's negligence claim should be dismissed.  Hancock made no motion to dismiss Plaintiffs' negligence claim in the *Miles* case and presumably therefore makes no such claim in this case.

Hancock's Motion for Judgment on the Pleadings should be denied for the following reasons:

1.      Under the "group publication doctrine" as recognized by the Tenth Circuit, the Talmage Trust has alleged facts giving rise to a strong inference that Hancock acted with scienter, which includes recklessness, sufficient to adequately state a claim for violation of Section 10(b) and Rule 10b-5.

2.      The heightened pleading requirements of the PSLRA are not applicable to claims under Section 33(A)(2).  There is no intent element in a Section 33(A)(2) claim.

3.      F.R.Civ.P. 9(b) which is applicable to common law fraud claims only requires that a person's state of mind be generally alleged.

4.      Under the "group publication doctrine," the Talmage Trust has alleged false representations of Hancock which include investments in Striker Series B Debentures.

### <u>THE TALMAGE TRUST HAS PROPERLY STATED CLAIMS FOR RELIEF AGAINST HANCOCK</u>

The Amended Complaint details Striker Petroleum, LLC's ("Striker") fraudulent Ponzi scheme including the use of Private Placement Memoranda and the dates and amount of purchases by the Talmage Trust in the Striker Series B Debenture Offering (Amended Complaint, ¶¶ 31-38 and 45).  (Also see, Complaint in *In the Matter of Securities and Exchange Commission v. Striker Petroleum, LLC, et al*, Case No. 3:09-CV-02304-D, United States District for the Northern District of Texas ("Striker Litigation Complaint") referred to in the Amended Complaint ¶ 38 and attached to Plaintiffs' Response to Defendants Steve Holmes' Motion to Dismiss (*Miles* Doc. 48-2)).  The Amended Complaint identifies Hancock as the Chief Financial Officer of Striker, the promoter of the Striker Series B Debentures sold to the Talmage Trust

(Complaint, ¶¶ 28, 95, 96 and 97).  (Also see, Confidential Private Placement Memorandum for the Series B Debentures, pp. 12-13, which, under the "Management and Compensation" section of the Confidential Private Placement Memorandum, identifies Hancock as the Chief Financial Officer and contains his biography (*Miles* Doc. 94-4, p. 22, 23); Confidential Private Placement Memorandum for the Striker Series A Convertible Debentures (Doc. 94-2, p. 22-23); Confidential Private Placement Memorandum for the Series B-2 Convertible Debentures *Miles* Doc. 70, p. 22, 23); and Form D, Notice of Sale of Securities pursuant to Regulation D, Section 4(b), and Uniform Offering Exemption ("Form D") obtained from the public records of the Securities and Exchange Commission filed July 19, 2006, January 29, 2007, June 14, 2007, and December 31, 2007 (Exhibits A, B, C, and D to the Affidavit of John A. Hutchings, *Miles* Doc. 90-2 through 90-6)).  All of the foregoing identified Confidential Private Placement Memoranda identify Hancock as the Chief Financial Officer and contain his biography.  The above-referenced Form D's all identify Hancock as an executive officer of the Striker entity conducting the offering.

The Amended Complaint alleges:

1.  The material misrepresentations contained in the Private Placement Memorandum for the Series B Debentures and the reasons why such statements were misleading (Amended Complaint, ¶¶ 32, 33, 35, 36, 37, 52, 53, 56, 57, 58, 61, 69,  84, 85, 86, 92, 97 and 108(b));

2.  That Hancock was intimately familiar with the financial affairs of Striker and its subsidiaries and affiliates (Amended Complaint, ¶¶ 28, 55, 96 and 97);

3.  That Hancock knew or was reckless in not knowing of Striker's fraudulent Ponzi scheme (Amended Complaint, ¶ 95);

4.     That as the Chief Financial Officer of Striker, Hancock was a primary actor and material participant in Striker's fraudulent Ponzi scheme (Amended Complaint, ¶ 95, 96 and 97);

5.     That Hancock, along with other Defendants, engaged in "scheme liability" under Rule 10b-5(a) and (c) and the manner in which he did so (Amended Complaint, ¶¶ 107 and 110); and

6.     Material omissions of Hancock (Amended Complaint, ¶ 109).

The foregoing allegations adequately plead the circumstances of Hancock's fraudulent acts and conduct in accordance with 15 U.S.C. § 78u-4(b)(1) and state facts giving rise to a strong inference that Hancock acted with scienter, satisfying the pleading requirement of 15 U.S.C. § 78u-4(b)(2).

In support of this Response to Hancock's Motion for Judgment on the pleadings, the Talmage Trust incorporates the Affidavit of John A. Hutchings filed in support of the Response to Hancock's Motion for Judgment on the Pleadings in the *Miles* case (*Miles* Doc. 90-2 through 90-6) to which is attached as Exhibits A through D, which are four Form D's filed by Striker and various Striker created entities, including certain of those that offered Striker Debentures.  As set forth in the Affidavit of John A. Hutchings, these Form D's are public records, having been obtained from the Website of the Securities and Exchange Commission (Affidavit of John A. Hutchings, ¶¶ 3 and 4, *Miles* Doc. 90-2, p.2.).  The Plaintiffs in the *Miles* case have also filed a request that this Court take judicial notice of the Form D's and the Striker Litigation Complaint (*Miles* Doc. 48-2)(*Miles* Doc. 90).  A Court may take judicial notice of its own files and records as well as facts which are a matter of public record.  *Tal v. Hogan*, 453 F.3d 1244, 1264, n. 24

(10th Cir. 2006).  The Court may also consider in a Motion to Dismiss without converting such motion to a Motion for Summary Judgment, documents referred to in the complaint, such as in this case the Confidential Private Placement Memoranda for the Series A, Series B and Series B-2 Striker Debentures.  *Chambers-Time Warner* 282 F.3d 147, 152-53 (2nd Cir. 2002).  The Form D's are public records of the Securities and Exchange Commission and the Court may take judicial notice of their contents, including Hancock's identification as an Executive Officer in each of the Form D's attached to the Affidavit of John A. Hutchings.  The first of these Form D's was filed July 19, 2006 (Exhibit A to the Affidavit of John A. Hutchings, *Miles* Doc. 96-3) and the last of the Form D's was filed December 31, 2007 (Exhibit D to the Affidavit of John A. Hutchings, *Miles* Doc. 96-6).  The Confidential Private Placement Memorandum of the Series B Debentures identifies Hancock as the Chief Financial Officer (*Miles* Doc. 94-4, p. 22, 23).  The Striker Litigation Complaint (*Miles* Doc. 48-2) details the Striker fraudulent Ponzi scheme.

### **Plaintiffs' Complaint Passes the Plausibility Test.**

In accordance with this Courts advisement of July 28, 2010, the Talmage Trust hereby adopts and incorporates by reference herein, as if fully set forth herein, the legal argument set forth in the section entitled "Plaintiffs' Amended Complaint Passes The Plausibility Test" contained in Plaintiffs Response to Defendant Richard Hancock's Motion for Judgment in the pleadings in the *Fieldgrove* case.

The Amended Complaint is very specific alleging in detail the Striker fraudulent Ponzi scheme.  The Amended Complaint alleges details of the Talmage Trust's purchase of the Series B Debentures including the dates of specific meetings, specific statements made at specific meetings and by whom such statements were made, the specific dates, amounts of the security

transaction, and the roll of each Defendant in the fraudulent investment, including Hancock's role.  These allegations, taken collectively and as true, which at this stage they must be, pass the plausibility test.

### The Talmage Trust Alleges a Strong Inference of Scienter.

Hancock argues that the Talmage Trust has not adequately alleged scienter under the Private Securities Litigation Reform Act ("PSLRA") which requires that the Amended Complaint state with particularity facts giving rise to a strong inference that Hancock acted with the required state of mind.  15 U.S.C. § 78u-4(b)(2).  Scienter has been defined by the United States Supreme Court to mean a mental state embracing an intent to deceive, manipulate or defraud.  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S. Ct. 1375, 47 L. Ed. 2d 688, n. 12 (1976).  The United States Supreme Court in *Ernst & Ernst* did not determine whether recklessness may be sufficient for establishing scienter.  *Id*.  The Tenth Circuit recognizes recklessness satisfies the scienter requirement for violation of Section 10(b) and Rule 10b-5.  *Hackbart v. Holmes*, 675 F.2d 114, 117 (10th Cir. 1982).  Recklessness is defined as conduct that is an extreme departure from the standards of ordinary care and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.  *Anixter v. Home-Stake Production Company*, 77 F.3d 1215, 1232 (10th Cir. 1996).  In *City of Philadelphia v. Fleming Companies, Inc.* 264 F. 3d 1245 (10th Cir. 2001), the Tenth Circuit reaffirmed the recklessness standard as sufficient to establish scienter and specified the requirements for pleading recklessness under the PSLRA.  Under the standard established by the PSLRA, a plaintiff must plead facts raising a strong inference of intentional conduct or reckless conduct, which is conduct that is an extreme departure from the standards of

ordinary care and which presents a danger of misleading buyers or sellers that is either known to the defendant or so obvious that the actor must have been aware of it. *Id*. at 1259-60.

In *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007), the United States Supreme Court clarified the standard by which Courts should determine whether a plaintiff has adequately plead the <u>inference</u> of scienter.  Initially, the Court noted that to qualify as "strong" the inference of scienter must be more than merely plausible or reasonable, but must be cogent and at least as compelling as any opposing inference of non-fraudulent conduct. *Id*.  551 U.S. at 314, 127 S. Ct. at 2504-05.  *Webster's Third New International Dictionary*, 1158 (1986) defines "inference" as "the act of passing from one or more propositions . . . considered as true to another the truth of which is believed to follow from the former".  The Court in *Tellabs* established three guidelines to be followed where a District Court is faced with a Rule 12(b)(6) motion to dismiss a Section 10(b) claim for failure to adequately plead scienter.  The first is that the Courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true.  *Tellabs*, 551 U.S. at 322, 127 S. Ct. at 2509.  Secondly, the District Court must consider the complaint in its entirety as well as other sources ordinarily examined when ruling on 12(b)(6) motions to dismiss, including documents referred to in the complaint and matters of which the Court may take judicial notice.  The inquiry is then whether all facts alleged, <u>taken collectively</u>, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets this standard.  *Id*., 551 U.S. at 322-23, 127 S. Ct. at 2509.  Finally, in determining whether the pleaded facts give rise to a "strong" inference of scienter, the Court must take into account plausible opposing inferences.  *Id*., 551 U.S. at 323,

127 S. Ct. at 2509-10.  The *Tellabs* Court also provided additional guidance.  The strength of the inference cannot be decided in a vacuum.  The inquiry is inherently comparative.  To determine whether a plaintiff has alleged facts that give rise to the required strong inference of scienter, the Court must consider plausible non-culpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff.  The inference that the defendant acting with scienter need not be irrefutable or a smoking gun or even the most plausible of competing inferences.  *Id*., 551 U.S. at 323-24, 127 S. Ct. at 2510.  A complaint will survive if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.  *Id*., 551 U.S. at 324, 127 S. Ct. at 2510.  In sum, when the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference.  *Id*., 551 U.S. at 326, 127 S. Ct. at 2511.  Subsequent to *Tellabs*, the Second Circuit in *ECA v. JP Morgan Chase Company*, 553 F.3d 187, 199 (2nd Cir 2009) recognized at least four separate circumstances which may give rise to a strong inference of the requisite scienter.  These circumstances are where the complaint sufficiently alleges that the defendants: (1) benefitted in a concrete and personal way from the purported fraud, (2) engaged in deliberate illegal behavior, (3) knew facts and had access to information suggesting that their public statements were not accurate, and (4) failed to check information they had a duty to monitor.

The Talmage Trust does not allege that Hancock made directly to them any material misrepresentation.  The Talmage Trust alleges Hancock's involvement in Striker's fraudulent Ponzi scheme and the making of material misrepresentations and omissions as one of the executive officers of Striker, and its subsidiaries and affiliates and, in particular, as the Chief

Financial Officer of Striker.  As one of the executive officers of Striker involved in the day-to-day operations and management of Striker, Hancock engaged in the fraudulent scheme in violation of Rule 10b-5(a) and (c), which is "scheme liability," as part of Striker's management and through the Private Placement Memoranda of Striker, made material misrepresentations of fact and omitted to disclose material facts.  The Talmage Trust has pled liability against Hancock pursuant to the "group publication doctrine."

Although there is a split among the Circuits as to whether the group publication doctrine can satisfy the scienter requirement of the PSLRA, the Tenth Circuit recognizes the group publication doctrine and that it can satisfy the scienter requirement.  *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1253-54 (10th Cir. 1997).  Since *Schwartz*, numerous cases of District Courts within the Tenth Circuit recognized the viability of the group publication doctrine as being sufficient to satisfy the pleading requirements of the PSLRA.  *Schaffer v. Evolving Systems, Inc.*, 29 F. Supp. 2d 1213, 1225 (D.Colo. 1998), *In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 119 F. Supp. 2d 1156, 1165 (D.Colo. 2000), *In re Qwest Communications International, Inc. Securities Litigation*, 387 F. Supp. 2d 1130, 1145-46 (D.Colo. 2005).  Additionally, the Second Circuit and Ninth Circuit, where a significant number of securities fraud cases are decided, also recognized the viability of the group publication doctrine as being sufficient to satisfy the heightened pleading requirements of the PSLRA.  *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1061-62 (9th Cir. 2000), *In re Van Der Moolen Holdings N.V. Securities Litigation*, 405 F. Supp. 2d 388, 398-99 (S.D. N.Y. 2005).

The group publication doctrine allows plaintiffs to rely on a presumption that statements in prospectuses, registration statements, and other group published information are the collective

work of those individuals with direct involvement in the every day business of the company.  *In re Van Der Moolen Holdings N.V. Securities Litigation*, 405 F. Supp. 2d at 398.  The Southern District of New York limits the group publication doctrine as applicable only to cognizable corporate insiders with daily roles in the relevant companies or transactions.  *Id*. at 398-99.  A Ponzi scheme is a form of financial fraud in which money invested by later investors is used to pay promised returns to earlier investors.  The Talmage Trust has alleged Hancock was the Chief Financial Officer of Striker and its subsidiaries and affiliates which engaged in the offer and sale of the Debentures to the Talmage Trust (Complaint, ¶¶ 28, 55, 56 and 97).  He is identified as such in the Confidential Private Placement Memorandum for the Striker Series B Debentures purchased by the Talmage Trust under "Management and Compensation" and his biography is contained in the "Management and Compensation" section of the Confidential Private Placement Memorandum (*Miles* Doc. 94-4, pp. 22, 23).  Hancock is also identified as the Chief Executive Officer and his biography is contained in the Confidential Private Placement Memorandum of the Series A Debentures (Miles Doc. 94-2, p22, 23) and the Series B-2 Debentures (*Miles* Doc. 70, pp. 27, 28).  Further, in Form D filings with the Securities and Exchange Commission between July 19, 2006 and December 31, 2007, Hancock is identified as an executive officer of Striker and various of the Striker subsidiaries and affiliates engaged in securities offerings, including Striker Debenture Offerings (Exhibits A through D to the Affidavit of John A. Hutchings, *Miles* Doc. 90-2 through 90-6).  The allegations of the Amended Complaint, together with the Confidential Placement Memoranda and the Form D's, of which this Court may take judicial notice, place Hancock in the role of a corporate insider with an active daily role in Striker and its subsidiaries and affiliates.  Although the Tenth Circuit and District Courts of the

Tenth Circuit have not so restricted the group publication doctrine as has the United States District Court for the Southern District of New York, Hancock would still be a person within the scope of the group publication doctrine even in the Southern District of New York.

Under the group publication doctrine, the plaintiff does not have to point to one or more specific statements made by an individual defendant. Identifying the individual sources of statements is unnecessary when the fraud allegations arise from misstatements or omissions in group published documents which presumably involve collective actions of corporate directors and officers. *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d at 1246, 1254. Prospectuses, registration statements and similar statements, such as confidential private placement memoranda, are subject to the presumption of collective action. *In re Qwest Communications International, Inc. Securities Litigation*, 387 F. Supp. 2d at 1144. The Talmage Trust alleges Striker's fraudulent Ponzi scheme through group published private placement memoranda (Amended Complaint, ¶¶ 31-38), Hancock's status as an officer and corporate insider (Amended Complaint, ¶¶ 28, 95, 96 and 97), the making of untrue statements of material fact through the group published private placement memoranda (Amended Complaint, ¶¶ 32, 33, 35, 36, 37, 52, 53, 56, 57, 58, 61, 69, 84, 85, 86, 92, 97 and 108(b)), the omission to state material facts (Amended Complaint, ¶¶ 35, 58 and 109), as well as what is known as scheme liability under Rule 10b-5(a) and (c) (Amended Complaint, ¶¶ 31-38, 107 and 110). All of these statements and actions are subject to a presumption of collective action by corporate officers, such as Hancock, under the group publication doctrine. *Id*. at 1144-45.

In *In re Qwest Communications International Securities Litigation*, the Court held that the application of the group publication doctrine standing alone does not demonstrate a strong

inference of scienter as there must additionally be some indication that the individual defendant was aware of the falsity of the statement. *Id*. at 1145, citing *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1105-6 (10th Cir. 2003). The Talmage Trust has alleged Hancock was the Chief Financial Officer of Striker (Amended Complaint, ¶¶ 28, 95, 96 and 97). The Confidential Private Placement Memorandum for the Series B Debentures purchased by the Talmage Trust identifies Hancock as the Chief Financial Officer and includes his biography which is that of an individual with a financial and accounting background. Hancock was identified as the Chief Financial Officer and his biography was included in Confidential Private Placement Memoranda of Series A and Series B-2 Debentures. Form D's filed with the United States Securities and Exchange Commission over an 18 month period, between July 19, 2006 and December 31, 2007, for Striker and its subsidiaries and/or affiliates engaged in the fraudulent Ponzi scheme identify Hancock as an executive officer of each of such entities. The Talmage Trust's allegations of a pervasive and long standing Ponzi scheme combined with the contents of the Confidential Private Placement Memoranda and Form D's, of which this Court can properly consider and take judicial notice, provides the additional indication of Hancock's awareness of the fraudulent scheme and false statements.

The fraudulent Striker Ponzi scheme was a pervasive and long standing scheme involving tens of millions of dollars and hundreds of investors over approximately two years (Amended Complaint, ¶¶ 31 and 32) and Striker Litigation Complaint (*Miles* Doc. 48-2). Allegations of pervasive and long standing fraud may support a strong inference of scienter under the PSLRA. *In re Qwest Communications International, Inc. Securities Litigation*, 387 F. Supp. 2d at 1147. *In re MicroStrategy, Inc. Securities Litigation*, 115 F. Supp. 2d 620, 635 (E.D. Va. 2000)

(number, size, timing, nature, frequency, and context for the accounting manipulations combined with other circumstances can provide support for a strong inference of scienter), *In re Raytheon Securities Litigation*, 157 F. Supp. 2d 131, 147-48 (D. Mass. 2001) (magnitude of accounting overstatements, combined with other circumstances, can support strong inference of scienter).  In this case, the scope and magnitude of the fraud together with the allegations of Hancock's role as Chief Financial Officer provide the additional indication and substantial support for a strong inference of scienter on the part of Hancock.

The Talmage Trust does not have to allege or prove that Hancock knew Striker and its subsidiaries and affiliates, of which he was the Chief Financial Officer, was engaged in a fraudulent Ponzi scheme.  The Tenth Circuit as well as the Second Circuit recognizes that recklessness will satisfy the scienter standard under the PSLRA.  *City of Philadelphia v. Fleming*, 264 F.3d at 1259, *In re Van Der Moolen Holdings N.V. Securities Litigation*, 405 F. Supp. 2d at 404-05.  The Second Circuit has held that allegations of recklessness are sufficient to meet the scienter requirement where plaintiffs allege facts demonstrating that defendants failed to review or check information that they had a duty to monitor or ignored obvious warning signs.  *Novac v. Kasaks*, 216 F.3d 300, 308-09 (2nd Cir. 2000).  The duties of a chief financial officer encompass the duties to monitor the financial operations of the company in which the individual serves as the chief financial officer.  Further, as alleged in the Amended Complaint (¶¶ 31 through 38), Striker engaged in a blatant financial fraud involving an ongoing series of offerings pursuant to which tens of millions of dollars were raised over a period of several years without any audited financial statements.  The lack of audited financial statements or other reliable financial information in such circumstances is an obvious sign of a fraudulent Ponzi scheme.  A

person such as Hancock with a financial and accounting background as set forth in the Confidential Private Placement Memorandum (*Miles* Doc. 94-4, p. 23) can be presumed to be aware of the significance of the lack of audited financial statements as well as the blatant ongoing financial fraud.  Hancock was an executive officer in numerous of the Striker fraudulent Ponzi scheme offerings and such facts give rise to a strong inference of scienter at least under the recklessness standard of the Tenth Circuit.

In *Howard v. Everex Systems, Inc.*, *supra*, the Ninth Circuit evaluated an officer's liability for false financial statements contained in filings with the Securities and Exchange Commission and signed by corporate officers.  Private placement memoranda are not filed with the Securities and Exchange Commission and typically are not signed by the officers.  However, in the present case, the Confidential Private Placement Memorandum identifies only five individuals as "Management" of Striker in the offering of the Series B Debentures to the Talmage Trust.   These five individuals are: Mark Roberts, President and Chief Executive Officer; Christopher Pippin, Vice President; Steve Holmes, General Counsel; Richard Hancock, Chief Financial Officer; and Dave Knepper, Engineering Manager (*Miles* Doc. 94-4, p. 23). (Mark Roberts and Christopher Pippin are defendants in the Striker Litigation and thus the Plaintiffs are precluded from bringing claims against them.)   The small management group specifically identified in the Confidential Placement Memorandum renders the Ninth Circuit's holding as to the liability of corporate officers who sign documents containing false statements equally applicable.  When a corporate officer signs a document on behalf of the corporation, any such signature would be rendered meaningless unless the officer believes the statements in the document are true.  *Howard v. Everex Systems, Inc.*, 228 F.3d at 1061.  Similarly, when an

individual allows himself to be identified as part of the small management group, holding a key management position, such as chief financial officer, in a private placement memorandum, the same principle holds true.  Hancock's identification as an executive officer in Form D filings spanning an 18 month period between July of 2006 and December of 2007, as well as his specific inclusion in the Series A, Series B, and Series B-2 Confidential Private Placement Memoranda, renders the inference that Hancock was aware of his identification as the Chief Financial Officer and part of Executive Management and, in fact, occupied an executive management position, far stronger than any inference that he was either unaware of such identification or was not part of executive management.  The Ninth Circuit went on to hold that signors of documents should be held responsible for statements in a document.  *Id*.  Similarly, those small group of persons identified as management in a confidential private placement memorandum offering document, which includes their biography, lend their name and credibility to the offering and, as such, occupy the same status as the signor of a document filed with the Securities and Exchange Commission.  They should similarly be held responsible for the statements contained in the offering documents.

By placing responsibility in corporate officers to ensure the validity of corporate filings, investors are further protected from misleading information.  *Id*., *Central Bank of Denver N.A. v. First Interstate Bank of Denver N.A.*, 511 U.S. 164, 171, 114 S. Ct. 1439, l28 L. Ed. 2d 119 (1994) (the securities acts embrace a fundamental purpose which is to substitute a philosophy of full disclosure for the philosophy of *caveat emptor*).  Key officers of a company, such as chief financial officers, who are part of executive management, should not be allowed to make important false statements knowingly or recklessly and yet still shield themselves from liability

to investors simply by contending they were not involved in the preparation of those statements. *Howard v. Everex Systems, Inc.*, 228 F.3d at 1062.  If such was held to be the law, the securities laws would be significantly weakened.  Holding key corporate officers, such as chief financial officers and others involved in the executive management, responsible for false statements contained in offering documents furthers the purpose of the securities laws of full disclosure.

Although the elements of a claim under Section 10(b) and Rule 10b-5 are generally stated as requiring a material misrepresentation or omission to state a material fact (Rule 10b-5(b)), Rule 10b-5(a) and (c) also encompass claims for what is known as "scheme liability."  To state a claim under Rule 10b-5(a) or (c), a plaintiff must allege that a defendant:  (1) committed a manipulative or deceptive act; (2) in furtherance of the alleged scheme to defraud, (c) scienter, and (d) reliance.  *In re Qwest Communications International, Inc. Securities Litigation*, 387 F. Supp. 2d at 1143.  The Talmage Trust has alleged violation of Rule 10b-5(a) and (c) against Hancock.  The Talmage Trust has alleged Striker's fraudulent Ponzi scheme (Amended Complaint, ¶¶ 31 through 38) and provided to this Court the Striker Litigation Complaint (*Miles* Doc. 48-2) of which this Court may take judicial notice.  *Tal*, 453 F.3d at 1264, n. 24.  The Talmage Trust alleges Hancock was the Chief Financial Officer of Striker and intimately familiar with the financial affairs of Striker and its subsidiaries and affiliates (Amended Complaint, ¶¶ 28, 95, 96 and 97).  The Talmage Trust alleges Hancock participated directly and/or indirectly in managing and handling the financial affairs of Striker and its subsidiaries and affiliates (Amended Complaint, ¶¶ 95, 96 and 97).  These allegations are buttressed by the identification of Hancock as the Chief Financial Officer in the Confidential Placement Memoranda for the Series A, Series B, and Series B-2 Debentures and his identification as an

executive officer in the Form D filings with the Securities and Exchange Commission over a period of time ranging from July of 2006 through December of 2007.  The Talmage Trust has adequately alleged facts giving rise to a strong inference of scienter as discussed above.  The Talmage Trust has also alleged reliance upon the Confidential Private Placement Memorandum of the Striker Offerings (Amended Complaint, ¶¶ 61 and 115).  The group publication doctrine includes scheme liability under Rule 10b-5(a) and (c).  *In re Qwest Communications International, Inc. Securities Litigation,* 387 F. Supp. 2d at 1146-47.

When all of the facts alleged in the Amended Complaint, together with those which this Court may properly consider and take judicial notice of are taken collectively, they give rise to a strong inference of scienter of Hancock under Tenth Circuit law.  Hancock offers no plausible opposing inferences with which this Court can compare the strong inferences of scienter alleged by the Talmage Trust.  At best, Hancock does nothing more to assert that it is "incorrect" that he was the Chief Financial Officer of Striker (Defendant Richard Hancock's Memorandum of Law in Support of Motion for Judgment on the Pleadings, p. 7, *Miles* Doc. 63).  This unsupported conclusory statement of Hancock's legal counsel, without any facts given tending to support the assertion does not even rise to a level of a plausible inference that he was not the Chief Financial Officer of Striker.  The inferences of Hancock's scienter do not at this stage need to be irrefutable.  Such inferences only need be as compelling as any opposing inference which could be drawn.  *Telabs v. Makor Issues & Rights, Ltd.*, 551 U.S. at 323-24, 127 S. Ct. at 2510.  Taking the Talmage Trust's allegations as true, and taking them collectively, under the law of the Tenth Circuit, which includes the recklessness standard for scienter and the group publication doctrine, the inference of scienter of Hancock is at least as strong as any opposing inference.  The

Talmage Trust has, therefore, adequately plead scienter on the part of Hancock under the standards of the PSLRA.

### The Talmage Trust  Adequately Pleads Fraud in Connection with the Purchase and Sale of Securities Under the Texas Securities Act Against Hancock

The Sixth Claim for Relief alleges that Hancock violated Section 33A(2), fraud in connection with the purchase and sale of a security and Section 33F(2) as a person that materially aided in the violation by a person liable under Section 33A(2).  Section 33A(2) provides in relevant part:

> A person who offers or sells a security (whether or not the security or transaction is exempt under Section (5) or (6) of this Act) by means of an untrue statement of a material fact or omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in equity . . . .

The elements of a claim arising under Section 33A(2) are the offer and sale of a security by means of an untrue statement of material fact or omission of the material fact which is necessary in order to make the statement made in light of all the circumstances, not misleading.  *Anderson v. Vinson Exploration, Inc.*, 832 S.W.2d 657, 661-62 (Tx. App. 1992).  Scienter, or proof that the speaker knew the representation was false or made it without regard to truth or falsity is not a required element under a Section 33A(2) claim.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 343-44 (5th Cir. 2008).  Further, a claim under Section 33A(2) does not require the buyer allege or prove reliance upon the misrepresentations or omissions.  *In the Matter of Westcap Enterprises*, 230 F.3d 717, 726 (5th Cir. 2000).  The Talmage Trust alleged the purchase of the Series B Debentures by means of untrue statements of material facts and omission to state material facts (Amended Complaint, ¶¶ 45, 50-58).  The Talmage Trust has also alleged

Hancock's role in the making of untrue statements of material fact and omission to state material facts with regard to its purchase of the Series B Debentures (Amended Complaint, ¶¶ 95, 96 and 97).  The Talmage Trust has thus stated a claim for relief under Section 33A(2).

To establish secondary liability for aiding and abetting under Section 33F(2), a plaintiff must allege:  (1) a primary violation of the securities laws; (2) that the alleged aider and abetter had a "general awareness" of his role in the violation; (3) that the aider and abettor rendered "substantial assistance" in this violation; and (4) that the aider and abettor either intended to deceive the plaintiff or acted with reckless disregard of the true of the representations made by the primary violator.  *In re Enron Corporation Securities, Derivative& ERISA Litigation*, 540 F.Supp.2d 759, 769-70 (S.D.Tx. 2007).  The Talmage Trust has alleged a primary violation by Striker (Amended Complaint, ¶¶ 31-38), Hancock's role in Striker's fraudulent Ponzi scheme, and his awareness of such role by virtue of his status as the Chief Financial Officer (Amended Complaint, ¶¶ 28, 95, 96 and 97), that Hancock rendered substantial assistance by serving as the Chief Financial Officer, managing and handling the financial affairs of Striker, and in lending his name and credibility to the offering of Series B Debentures (Amended Complaint, ¶¶ 95, 96 and 97), and that Hancock acted with scienter. (See above discussion that Hancock acted with scienter sufficient to satisfy the requirements of a PSLRA.)   The Talmage Trust has thus adequately alleged a claim for aider and abettor liability under Section 33F(2) of the Texas Securities Act against Hancock.

### The Talmage Trust Has Properly Plead Common Law Fraud Against Hancock

Hancock raises two issues by which he seeks judgment on the pleadings on the Eleventh Claim for Relief of common law fraud.  Hancock asserts that the Talmage Trust makes no

allegation that he made a "false representation intended to induce action" (Defendant Richard Hancock's Memorandum of Law in Support of Motion for Judgment on the Pleadings, p. 11, *Miles* Doc. 63) and that the Talmage Trust has failed to plead the required state of mind under F.R.Civ. P. 9(b).

The elements of a common law fraud claim in Wyoming are:  (1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages.  *Birt v. Wells Fargo Home Mortgage, Inc.*, 75 P.3d 640, 656 (Wyo. 2003). The Talmage Trust admits that Hancock did not, in person, either verbally, or by handing a written document to it, make a false representation.  However, as has been discussed above, the Talmage Trust has alleged facts that under the group publication doctrine, Hancock was part of executive management of Striker which prepared and/or caused to be prepared Confidential Private Placement Memoranda containing false representations which, with the knowledge of Hancock, was distributed to the Talmage Trust and others (Amended Complaint, ¶¶ 28, 31-38, 95-97 and 108(b)).  There is no reason why the group publication doctrine as applied to claims under Section 10(b) and Rule 10b-5 should not be equally applicable to common law fraud claims in Wyoming.  There exists no greater justification for allowing an individual such as Hancock, who is presumed to have participated in the preparation of a document intended to, and which did induce, an investment by the Talmage Trust, to escape liability upon a Wyoming state common law fraud claim, than under Section 10(b) and Rule 10b-5 claim.  Hancock does nothing to attempt to rebut the presumption under the group publication doctrine that as part of Striker's executive management he participated in the preparation of Private Placement

Memorandum containing the false representations.

Hancock asserts that the Talmage Trust fails to comply with the requirements of Rule 9(b) by failing to allege the fraud with particularity and to adequately allege Hancock's state of mind. The Talmage Trust has discussed at length above the particularity of Hancock's role in Striker's fraudulent scheme. These pleading requirements have satisfied the heightened pleading requirements of the PSLRA and are sufficient to satisfy the Rule 9(b) pleading requirements of a common law fraud claim. *In re Qwest Communications International, Inc. Securities Litigation*, 387 F. Supp. 2d at 1153. Under Rule 9(b), intent is required to be only generally alleged and the Talmage Trust has alleged facts of general intent (Amended Complaint, ¶¶ 28, 95, 96 and 97) alleging Hancock's status as the Chief Financial Officer of Striker and that of a primary actor and material participant in the specifically described Striker fraudulent Ponzi scheme. The Talmage Trust adequately plead a claim for relief of common law fraud against Hancock.

## CONCLUSION

Accepting all of the allegations of the Amended Complaint as true, which the Court must do in ruling upon Hancock's Motion for Judgment on the Pleadings, the Talmage Trust has plausibly stated claims for relief against Hancock for violation of Section 10(b) and Rule 10b-5, Section 33A(2), Section 33F(2), and common law fraud. Hancock seeks to escape liability by hiding behind the corporation, Striker, and asserting without support that he is incorrectly identified as the Chief Financial Officer. The Confidential Private Placement Memorandum of the Series B Debentures purchased by the Talmage Trust identifies Hancock as the Chief Financial Officer, one of five executive officers identified as "Management" of Striker. The Confidential Private Placement Memorandum also contains a biography of Hancock, the purpose

of which is clearly to add credibility to the offering.  Hancock is identified as the Chief Financial Officer in the Confidential Private Placement Memoranda of the Striker Series A Debentures and Series B-2 Debenture offerings.  Hancock is identified as an executive officer of Striker and its subsidiaries and affiliates in four separate Form D filings made with the Securities and Exchange Commission between July of 2006 and January of 2008.

The group publication doctrine is applicable to Section 10(b) and Rule 10b-5 claims in the Tenth Circuit.  Thus, Hancock cannot escape liability on the mere assertion that the Talmage Trust has not alleged a specific misrepresentation made by Hancock or a specific fraudulent act. As part of the small group of executive management of Striker, Hancock is presumed to have participated in the preparation of the Confidential Private Placement Memorandum.  The Talmage Trust specifically alleges the false representations and other fraudulent conduct of Striker perpetrated through the Confidential Private Placement Memorandum.  The totality of the facts alleged in the Amended Complaint, and the facts of which this Court may consider and take judicial notice, such matters being the Striker Litigation Complaint, the Confidential Private Placement Memoranda for the Series A, Series B, and Series B-2 Debenture offering, and the four separate Form D's filed with the Securities and Exchange Commission satisfy the heightened pleading requirements of the PSLRA as to Hancock.

Satisfying the heightened pleading requirements of the PSLRA, Plaintiffs also satisfy the pleading requirements of a claim under Section 33F(2) and for common law fraud.  There is no scienter or intent requirement under Section 33A(2).

For the reasons set forth herein, the Talmage Trust respectfully requests that Defendant Richard Hancock's Motion for Judgment on the Pleadings as to Plaintiffs' First Claim for Relief,

Sixth Claim for Relief, and Eleventh Claim for Relief be denied.

Respectfully submitted this 20th day of September, 2010.

DAVIS & CANNON, LLP

By: *s/*_____
J. Mark Stewart
422 West 26th Street
P.O. Box 43
Cheyenne, WY 82003
Telephone:     (307) 634-3210
Facsimile:     (307) 778-7118
mark@davisandcannonchey.com

Kim D. Cannon
DAVIS & CANNON, LLP
40 South Main
P.O. Box 728
Sheridan, WY 82801
Telephone:     (307) 672-7491
Facsimile:     (307) 672-8955
cannon@davisandcannon.com

John A Hutchings (*pro hac vice*)
DILL DILL CARR STONBRAKER
   & HUTCHINGS, P.C.
455 Sherman Street, Suite 300
Denver, CO 80203
Phone:          (303)777-3737
Facsimile:     (303) 777-3823
jhutchings@dillanddill.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing on the 20th day of September, 2010 to the following:

Jeffrey C. Brinkerhoff
Mark W. Gifford
Gifford & Brinkerhoff
jeff@giffordbrinkerhoff.com
mark@giffordbrinkerhoff.com

K Lawson Pedigo
Miller Keffer Bullock & Pedigo
KLPedigo@mkp-law.net

David A. Baugh
Baugh Dalton Carlson & Ryan, LLC
dbaugh@baughdaltonlaw.com

Charles W. Gameros, Jr.
Hoge & Gameros
bgameros@legaltexas.com

Thomas N. Long
Laura Jean Jackson
Long Reimer Winegard
tlong@lrw-law.com
ljackson@lrw-law.com

David F. DeFazio
DeFazio Law Office
david@defaziolaw.com

Jason Tangeman
Anthony Nicholas Goodrich & Tangeman
jtangeman@wyolegal.com

Rick L. Koehmstedt
Schwartz, Bon, Walker & Struder, LLC
rick@schwartzbon.com

Michael T. McConnell
Jared C. Lockwood
McConnell Fleischner Houghtaling &
Craigmile, LLC
mmcconnell@mfhc.com
jlockwood@mfhc.com

Thomas N. Fitzgibbon
Kimberly L. Thigpen
Pfeiffer Thigpen FitzGibbon & Ziontz LLP
tnf@ptflaw.com
klt@ptflaw.com

**and sent either electronically or by mail to:**
Nathan Glossi
605 E. Myrtle Street
Fort Collins, CO 80524
Email: nglossi@hotmail.com

_s/_ _____