Kim D. Cannon (Wyoming State Bar #5-1401)
J. Mark Stewart (Wyoming State Bar #6-4121)
Davis & Cannon, LLP
40 South Main
P.O. Box 728
Sheridan, WY 82801
Telephone:    (307) 672-7491
Facsimile:    (307) 672-8955
cannon@davisandcannon.com
mark@davisandcannonchey.com

John A Hutchings (*pro hac vice*)
Dill Dill Carr Stonbraker & Hutchings, P.C.
455 Sherman Street, Suite 300
Denver, CO 80203
Phone:    (303)777-3737
Facsimile:    (303) 777-3823
jhutchings@dillanddill.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| NAOMI L. MILES REVOCABLE TRUST, NAOMI L. MILES, TRUSTEE, and CHARLES W. MILES, JR. TRUST, NAOMI L. MILES TRUSTEE, | ) ) ) ) ) | Case Nos.    10-CV-0034-D 10-CV-0104-D 10-CV-0120-D |
| Plaintiffs, | ) | |
| v. | ) ) | |
| DENNIS R. LAWRENCE, et al. | ) ) | |
| Defendants. | ) ) | |
| **AND** | ) ) | |
| RUSSELL C. FIELDGROVE, et al, | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| DENNIS R. LAWRENCE, et al | ) ) | |

|                                              |   |
|----------------------------------------------|---|
| Defendants.                                  | ) |
|                                              | ) |
| **AND**                                      | ) |
|                                              | ) |
| THE MARTHA W. GIBBS REVOCABLE                | ) |
| TRUST, SUSAN GIBBS, SCOTT M. GIBBS,          | ) |
| AND JAMES W. GIBBS, TRUSTEES, et al.         | ) |
|                                              | ) |
| Plaintiffs,                                  | ) |
|                                              | ) |
| v.                                           | ) |
| DENNIS R. LAWRENCE, et al.                   | ) |
|                                              | ) |
| Defendants                                   | ) |

## PLAINTIFFS' RESPONSE TO MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION OF TIC CAPITAL MARKETS, INC.,
## PACIFIC SECURITY INCOME PARTNERS, LP,
## AND PACIFIC  SECURITIES GROUP, INC.

Defendants TIC Capital Markets, Inc. ("TIC Capital"), Pacific Security Income Partners, LP ("Pacific Security LP"), and Pacific Security Group, Inc. ("Pacific Security Group") (collectively the "Moving Defendants") have moved pursuant to Fed.R.Civ.P. 12(b)(2) to dismiss the claims of all of the Plaintiffs against them in the above-captioned actions ("Rule 12(b)(2) Motion").  The Moving Defendants have filed separate Rule 12(b)(2) Motions in each of the above-captioned cases; however, in accordance with this Court's advisement during the July 28, 2010 Telephonic Status Conference in each of the above cases, have incorporated by reference their Memorandum in Support of their Rule 12(b)(2) Motion filed in the case of *Russell C. Fieldgrove, et al v. Dennis R. Lawrence, et al*, Case No. 10-CV-0104-D (the "Fieldgrove case") into their 12(b)(2) Motion in the case of *Naomi L. Miles Revocable Trust, Naomi L. Miles, Trustee, et al v. Dennis R. Lawrence, et al*, Case No. 10-CV-0034-D (the "Miles case"), and the case of the *Martha W. Gibbs Revocable Trust, Susan Gibbs, Scott M. Gibbs, and*

*James W. Gibbs, Trustees, et al v. Dennis R. Lawrence, et al*, Case No. 10-CV-0120-D (the "Gibbs case"). In the interest of litigation efficiency, the Plaintiffs in the above-captioned cases are filing in each of the above-captioned cases, a combined Response to the Moving Defendants Rule 12(b)(2) Motions.

Plaintiffs in the Miles case are the Naomi L. Miles Revocable Trust, Naomi L. Miles, Trustee (the "Miles Trust") and the Charles W. Miles, Jr. Trust, Naomi L. Miles, Trustees (the "Credit Trust"). In the Fieldgrove case, the Plaintiffs are Russell C. Fieldgrove and Mary Jane Fieldgrove (the "Fieldgroves") and the Cecil H. Fieldgrove Trust, Cecil H. Fieldgrove, Trustee (the "Fieldgrove Trust"). In the Gibbs case, the Plaintiffs are the Martha W. Gibbs Revocable Trust, Susan Gibbs, Scott M. Gibbs, and James W. Gibbs, Trustees (the "Gibbs Trust") and the Alida D. Talmage Trust, FBO Martha Gibbs, Susan Gibbs, Scott M. Gibbs, and James W. Gibbs, Trustees (the "Talmage Trust"). Each of the Plaintiffs, except the Gibbs Trust, has asserted claims for relief against the Moving Defendants. The term "Plaintiffs" throughout this Response will mean all Plaintiffs except the Gibbs Trust.

Plaintiffs' claims include claims under 15 U.S.C. § 78t(a) ("Section 20(a)") (all cases) and 15 U.S.C. § 77o ("Section 15") (Miles case only). Section 20 provides for what is known as "controlling person" liability by those persons who are "controlling persons" of persons or entities that engage in primary violations of provisions of the Securities and Exchange Act of 1934 (the "34 Act") (15 U.S.C. § 78a et. seq.). The Plaintiffs have brought claims against Direct Capital Securities, Inc. ("Direct Capital") for violation of 15 U.S.C. § 78j(b) ("Section 10(b)") and 17 C.F.R. § 240.10b-5 ("Rule 10b-5"). Plaintiffs have brought claims against the Moving Defendants under Section 20 as controlling persons of Defendant Direct Capital. Section 20

provides that persons who control those who engage in primary violations of the 34 Act are jointly and severally liable with and to the same extent as the persons they control.

Section 15 of the Securities Act of 1933 (the "33 Act") (15 U.S.C. § 77a et. seq.) parallels Section 20 of the 34 Act and provides that those who control persons liable under provisions of the 33 Act are jointly and severally liable with and to the same extent as those they control.  The Miles Trust and the Credit Trust have brought claims against Direct Capital for violation of 15 U.S.C. § 77l(a)(2) ("Section 12(a)(2)") and have asserted liability against the moving Defendants under Section 15 as controlling persons of Direct Capital.

Plaintiffs have brought additional claims against the moving Defendants for violation of the Texas Securities Act (Fieldgrove case and Gibbs case), common law fraud (all cases), civil conspiracy (Fieldgrove case and Gibbs case), and negligence (all cases).

Each of the Complaint in the Miles case (Doc. 1), the Amended Complaint in the Fieldgrove case (Fieldgrove Doc. 30), and the Amended Complaint in the Gibbs case (Gibbs Doc. 39) generally alleges the existence of a related group of companies consisting of Direct Capital, TIC Capital, Pacific Security LP, and Pacific Securities Group.  Further, the Plaintiffs allege all of these entities are under the common control of Defendant Clay Harriss Womack ("Womack").  In particular, Plaintiffs allege:

1.      Direct Capital as the Broker-Dealer, licensed and registered pursuant to FINRA, Federal law and Wyoming State law, served as the Managing Broker-Dealer and/or a Broker-Dealer of the Striker debenture offerings in which Plaintiffs purchased debentures.

2.      TIC Capital directly owns seventy-five percent or more of Direct Capital and directs the management and policies of Direct Capital.

3.      Pacific Security LP, through TIC Capital, owns Direct Capital and directs the management and policies of Direct Capital.

4.      Pacific Security Group is an owner of Direct Capital and directs the management and policies of Direct Capital.

5.      Womack was at all relevant times:

    a.   An Officer and Director of Direct Capital;

    b.   The Chairman and Chief Executive Officer of Direct Capital, TIC Capital, and Pacific Security Group;

    c.   Individually, and through TIC Capital and Pacific Security Group, directed the management and policies of Direct Capital; and

    d.   Was licensed as a general securities principal with Direct Capital.

Plaintiffs also allege in detail the manner in which Direct Capital participated in the fraudulent Ponzi scheme of Striker Petroleum, LLC ("Striker") including that, as the Managing Broker-Dealer of the offering of the Striker debentures involved in Striker's fraudulent Ponzi scheme, Direct Capital had a duty to conduct a reasonable and thorough due diligence investigation of the offerings for which it acted as the Managing Broker-Dealer, and that it failed to do so.  Plaintiffs allege the Moving Defendants, along with Womack, are liable under both Section 20 and Section 15 (Miles case only) by virtue of their direct and/or indirect control of Direct Capital.

In support of this Response, Plaintiffs have filed a Request for Judicial Notice to which is attached an Affidavit of John A. Hutchings, with Exhibits as referenced in the Affidavit of John A. Hutchings, of which Plaintiffs request this Court take judicial notice.  The documents of

which the Plaintiffs request this Court take judicial notice are the following:

      a.  The brokerage check report of Direct Capital Securities, Inc. as of August 3, 2010 obtained from the Financial Industry Regulatory Authority ("FINRA") website www.finra.org;

      b.  Annual Audited Report Form X-17A-5 Part III of Direct Capital Securities, Inc. for the year ending December 31, 2006 as filed with the United States Securities and Exchange Commission and as obtained from the SEC website at www.sec.gov;

      c.  Annual Audited Report Form X-17A-5 Part III for the year ending December 31, 2007 of Direct Capital Securities, Inc. obtained from the United States Securities and Exchange Commission website at www.sec.gov; and

      d.  Annual Audited Report Form X-17A-5 Part III for the year ending December 31, 2008 of Direct Capital Securities, Inc. obtained from the United States Securities and Exchange Commission website at www.sec.gov.

      Judicial notice of the foregoing public records by the Court is proper. *Tal v. Hogan*, 453 F.3d 1244, n. 24 (10th Cir. 2006).

      Plaintiffs have also attached as Exhibit E to the Affidavit of John A. Hutchings the TIC Capital Markets' firm profile obtained from the website www.privateequitygrp.com.   As of September 27, 2010, the website is no longer active.   Thus, although the TIC Capital Markets' firm profile (Exhibit E to the Affidavit of John A. Hutchings) may not be subject to judicial notice, it is a document of Defendant TIC Capital and a matter which this Court may properly consider in resolving the Rule 12(b)(2) Motion.

      Exhibits A, B, C, D, and E disclose the following:

      1.    TIC Capital is a boutique financial services company that wholly owns Defendant

Direct Capital (Exhibits B, C, and D, notes to financial statements of Direct Capital Securities, Inc., p. 5, of Exhibits B and C and p. 7 of Exhibit D).

2.      During 2006 and 2007, Direct Capital engaged in the business of selling oil and gas interests, among other securities-related business (Exhibits B and C, notes to financial statements, p. 5).

3.      Direct Capital and TIC Capital filed consolidated federal income tax returns (notes to financial statements, Exhibits B, C, and D, pp. 5, 5, and 8, respectively).

4.      Direct Capital is a party to a Management Agreement with TIC Capital whereby TIC Capital is responsible for administrative expenses, including marketing support to Direct Capital.  In return, Direct Capital pays to TIC Capital a management fee: which for the year 2006 was $2,451,911; for 2007 was $815,866; and for 2008 was $495,929.00 (Exhibits B, C, and D, notes to financial statements, pp. 6, 7, and 9, respectively).

5.      For at least the year 2008, TIC Capital also provided due diligence support to Direct Capital (Exhibit D, notes to financial statements, p. 9).

6.      Direct Capital and TIC Capital share offices in Austin, Texas with affiliates that are controlled by the Company's Chairman and Chief Executive Officer, who is Womack (Exhibits C and D, notes to financial statements, pp. 7 and 9, respectively).

7.      TIC Capital had and/or has maintained offices, in addition to Austin, Texas, of Santa Monica, California, the mid-west, the southeast, and the west (Exhibit E to Affidavit of John A. Hutchings, p. 4).   Thus, TIC Capital is engaged in significant interstate financial activities.

8.      All of TIC Capital's securities-related activities which are conducted through its

wholly owned subsidiary, Direct Capital (Exhibit E to Affidavit of John A. Hutchings).

9.        Direct Capital is registered to sell securities in all 50 states and the District of Columbia (Exhibit E to Affidavit of John A. Hutchings, p. 2).

10.       Womack is the Chairman and CEO of Pacific Security Group, TIC Capital, and Direct Capital (Exhibit E to Affidavit of John A. Hutchings, p. 1).

Although TIC Capital, Pacific Security Group, and Pacific Security LP may be separate legal entities, there is significant evidence that the Moving Defendants, together with Direct Capital under the common ownership and control of Womack, operated as an integrated group of companies conducting business nationwide.  The major objective of federal securities laws is the protection of the investing public.  *SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 195, 85 S.Ct. 275, 284 (1963).  Section 20 of the 34 Act and Section 15 of the 33 Act are important in furthering this purpose by holding responsible entities and individuals who commit violations of the federal securities laws through others from which an aggrieved plaintiff may be unable to recover for a loss.  Under such circumstances, and the facts of these particular cases, the assertion of personal jurisdiction over the Moving Defendants does not defend the due process requirements of the Fifth Amendment.

## THIS COURT HAS PERSONAL JURISDICTION OVER THE MOVING DEFENDANTS

### Standard of Review

A District Court has discretion in determining the procedures to employ in considering a motion to dismiss for lack of personal jurisdiction.  *Ten Mile Industrial Park v. Western Plains Services*, 810 F.2d 1518, 1524 (10th Cir. 1987).  Facts regarding jurisdictional questions may be determined by reference to affidavits, *Rambo v. American Southern Insurance Company*, 839

F.2d 1415, 1417 (10th Cir. 1988), or in a trial when the jurisdictional issue is dependent upon a decision on the merits. *Schramm v. Oakes*, 352 F.2d 143, 149 (10th Cir. 1965). The plaintiff has the burden of establishing personal jurisdiction, *Williams v. Bowman Livestock Equipment Company*, 927 F.2d 1128, 1130 (10th Cir. 1991), and of also establishing the validity of service of process. *Saez Rivera v. Nissan Manufacturing Company*, 788 F.2d 819, 821, n. 2 (1st Cir. 1987) (per curiam). This burden varies depending upon the procedure employed by the District Court. *Federal Deposit Insurance Corporation v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). The Moving Defendants admit the validity of the service of process.

When a motion to dismiss for lack of jurisdiction is decided based on the affidavits and other written materials, the plaintiff need only make a *prima facie* showing. *Id*, citing *Behagen v. Amateur Basketball Association*, 744 F.2d 731, 733 (10th Cir. 1984). The well plead facts of the complaint must be accepted as true if uncontroverted by the defendant's affidavits and the factual disputes at the initial stage must be resolved in plaintiff's favor when the parties present conflicting affidavits and evidence. *Federal Deposit Insurance Corporation v. Oaklawn Apartments*, 959 F.2d at 174, *Ten Mile Industrial Park v. Western Plains Services*, 18 F.2d at 1524.

A District Court, in deciding a motion to dismiss for lack of personal jurisdiction has the option of permitting discovery in aid of deciding a motion to dismiss for lack of personal jurisdiction. *Theunissen v. Mathews*, 935 F.2d 1454, 1458 (6th Cir. 1991). *Theunissen* is in accord with Tenth Circuit law that where the Court relies solely upon affidavits and other documents to determine the motion, the plaintiff must only make a *prima facie* showing that personal jurisdiction exists to defeat the motion. In requiring that factual disputes be resolved in

plaintiff's favor at this stage, the Sixth Circuit held that this was required to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts.  *Id*. at 1459.

<u>**This Court has Personal Jurisdiction over the Moving Defendants**</u>
<u>**In Accordance with Fifth Amendment Due Process Requirements**</u>

The allegations of the Complaint (Miles case) and the Amended Complaints (Fieldgrove case and Gibbs case) the Affidavit of John A. Hutchings, the public records submitted, and the  TIC Capital Firm Profile taken collectively make a *prima facie* showing that this Court has personal jurisdiction over the Moving Defendants.  The Moving Defendants acknowledge 15 U.S.C. § 78aa and its nationwide service of process provision.  The Moving Defendants further acknowledge they have properly been served with process in this matter and do not assert that 15 U.S.C. § 78aa is in any way inapplicable to Plaintiffs' claims.  15 U.S.C. § 78aa authorizes nationwide service of process.  It thus becomes a statutory basis for personal jurisdiction.  *Republic of Panama v. BCCI Holdings (Luxembourg) SA*, 119 F.3d 935, 942 (11th Cir. 1997).  Accordingly, personal jurisdiction is subject to the due process requirements of the Fifth Amendment.  *Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000).  Although it has been held that to satisfy due process under 15 U.S.C. § 78aa one must only be a resident of the United States, *Piper Acceptance Corporation v Slaughter*, 600 F. Supp. 169, 171 (D. Colo. 1985), the Tenth Circuit has held that in federal question cases where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires that plaintiff's choice of forum to be fair and reasonable to the defendant.  *Peay*, 205 F.3d at 1212.  In particular, the Tenth Circuit stated the following:

> To establish that jurisdiction does not comport with Fifth Amendment due process principles, <u>a defendant</u> must first demonstrate 'that his liberty interests actually have been infringed.' (citation omitted) <u>The burden is on the defendant</u> to show that the exercise of jurisdiction in the chosen forum will 'make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent.' *Burger King Corp.*, 471 U.S. at 478, 105 S.Ct. at 2174 (internal quotation marks and citations omitted); accord *Republic of Panama*, 119 F.3d at 948 (following *Burger King Corp.*.).

(emphasis added)

*Id.* Citing *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 201 (E.D. Pa. 1974), the Tenth Circuit held that any constitutional due process limitations upon a federal extra territorial (nationwide) service of process statute must be broadly defined. To meet this burden, the defendant must establish <u>constitutionally significant inconvenience</u>. *Republic of Panama*, 119 F.3d at 946. In evaluating whether a defendant has met his significant burden of establishing <u>constitutionally significant inconvenience</u>, the Court should consider the following factors:

> (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business including (a) the nature and extent and interstate character of the defendant's business; (b) the defendant's access to counsel; and (c) the distance from the defendant to the place where the action is brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of the impact that the defendant's activities have beyond the borders of his state of residence or business.

*Peay,* 205 F.3d at 1212. Citing *Republic of Panama*, 119 F.3d at 947, the Tenth Circuit in *Peay* emphasized that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern. The Tenth Circuit noted that in the current age of instant communication and modern transportation the burdens of litigating in a distant forum have significantly lessened.

If a defendant can demonstrate that litigation in the plaintiff's chosen forum arises to a level of constitutional concern, then the Court must determine if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant.  In making this determination, the Court should examine the federal policies advanced by the statute, the relationship between nationwide service of process and the advancement of these policies, the connection between the exercise of jurisdiction in the chosen forum and the plaintiff's vindication of his federal right, and concerns of judicial efficiency and economy.  *Peay*, 205 F.3d at 1213.

1.      **The extent of The Moving Defendant's interstate activities and contact with Wyoming.**

An evaluation of the factors set forth in *Peay* strongly support personal jurisdiction over the Moving Defendants.  The Moving Defendants, together with Direct Capital and Womack, operate as an integrated group of companies controlled by Womack, engaged in the interstate business of offering and selling securities. Each of TIC Capital, Pacific Security LP, Pacific Security Group and Womack own, directly and/or indirectly Direct Capital and direct the management and policies of Direct Capital.  (FINRA Broker Check Report of Direct Capital Securities, Exhibit A to Affidavit of John A. Hutchings).   TIC Capital admits:

> Generally, all securities related activities are conducted through the Firm's wholly owned broker-dealer subsidiary, Direct Capital Securities, Inc., licensed by the NASD and registered in all appropriate states.

(See Exhibit E to Affidavit of John A. Hutchings, p. 1)  In fact, Direct Capital is registered in all 50 states, including Wyoming (Exhibit E to Affidavit of John A. Hutchings, p. 2).  Womack is the Chairman and CEO of Direct Capital, TIC Capital, and Pacific Security Group (Exhibit E to

Affidavit of John A. Hutchings, p. 1).   A review of the TIC Capital Firm Profile reveals it appears to be engaged in significant interstate activity, consisting of various real estate investments, and maintains offices in various locations of the United States.   Thus, the Moving Defendants are engaged in significant interstate activity, including the sale of securities.

Direct Capital served as a Dealer Manager for the Striker offerings in which the Plaintiffs purchased debentures, and such securities were sold in the State of Wyoming.   Such sales occurred in 2006 and 2007.   In 2006 and 2007, TIC Capital provided marketing support to Direct Capital and received significant fees from Direct Capital in exchange (Exhibits B and C to Affidavit of John A. Hutchings, notes to financial statements, pp. 6 and 7, respectively). Although not expressly stated, such "marketing support" may very well have included marketing support for the Striker debenture offerings sold in Wyoming to the Plaintiffs.   TIC Capital received significant fees in exchange.   Further, in 2008, TIC Capital also provided "due diligence" support to Direct Capital (Exhibit D to Affidavit of John A. Hutchings, notes to financial statement, p. 9).   It is the lack of adequate due diligence which is one of the basis of the Plaintiffs' assertion of liability against Direct Capital and which, under Section 20 of the 34 Act and Section 15 of the 33 Act, would thus support joint and several liability over the moving Defendants.

These are not large independent publicly traded companies.   These are small companies engaged in interrelated business and under the common control of one individual, Womack, through which he conducts significant business activities, including the sale of securities by Direct Capital, in Wyoming.   Direct Capital is registered to sell securities in the State of

Wyoming.  The Moving Defendants, both directly and indirectly, through Direct Capital, engage in significant interstate business activity, including business activity in Wyoming.

2.       **There is no constitutionally significant inconvenience.**

The Moving Defendants cannot, and have not, shown constitutionally significant inconvenience.  Direct Capital, the controlled entity, engages in business activities in all 50 states and the District of Columbia, and is registered to do so.  TIC Capital maintains offices, not only in Austin, Texas, but in Santa Monica, California and in various other locations throughout the United States.  The Moving Defendants, through Womack and Direct Capital engage in business that is by nature interstate.

The Moving Defendants have access to and have retained competent counsel in this District.

In this day and age of modern transportation and instant communication, the Moving Defendants' distance from Casper, Wyoming is approximately 1,200 miles.  This is not constitutionally significant.  The Moving Defendants have not demonstrated any constitutionally significant inconvenience under Tenth Circuit requirements.  To the contrary, the Moving Defendants interstate activities would render it foreseeable that they may have to defend in any jurisdiction in which they, directly or indirectly, for their own financial gain, engages in business activities.

3.       **Judicial Economy Favors Assertion of Personal Jurisdiction.**

Judicial economy favors this Court upholding personal jurisdiction over the Moving Defendants.  Dismissing the Moving Defendants from this case for lack of personal jurisdiction would multiply the litigation proceedings.  For example, there would likely be no jurisdiction

over Defendant Dennis Lawrence in the Northern District of Texas as Plaintiffs are unaware of any activities of Dennis Lawrence within the State of Texas.   In *Oxford First Corporation*, the District Court held that it would be a "shameful waste" to require what is all part of a single litigation to proceed in two districts at once.   *Oxford First Corporation*, 372 F. Supp. at 202. Discussing the policy reasons for nationwide service of process under statutes such as 15 U.S.C. § 78aa, the District Court stated:

> When Congress decreed that certain types of causes were the subject of nationwide service, it may well have first made an implicit finding:  (a) that the subject matter of such types of litigation had such an impact upon the national economy that parties to such litigation would, by virtue of having involved themselves in the regulated area, have to suffer the consequences of being sued in a distant place, (footnote omitted) and/or (b) that the interests of judicial economy required that all facets of inevitably complex litigation arising under the given securities or anti-trust statute be handled in one court, regardless of where a given defendant might be located.

*Id*.  Both of the foregoing purposes are applicable to the present case which is complex litigation arising under this nation's federal securities laws.  The Moving Defendants, through Direct Capital, engage in a regulated activity and business with a national impact.  Certainly, judicial economy favors resolving this dispute in one proceeding, rather than in multiple proceedings.

4.       **There are Multiple Discovery Locations, including Wyoming.**

The situs of discovery in this case will occur in several places, including Wyoming, Colorado, and Texas, where the Moving Defendants contend they are located.  Thus, all parties will suffer some "inconvenience" in having to travel to certain discovery.   However, the inconvenience of the Moving Defendants is no greater than that of any other party, including the Plaintiffs.

**5. The Moving Defendants, through Direct Capital, Engaged in a Regulated Activity with Nationwide Impact.**

The Moving Defendants, through Direct Capital, engaged in a regulated activity with a nationwide impact. This is the sale of securities nationwide, including in the State of Wyoming, a State in which Direct Capital is registered to sell securities. As TIC Capital admits in its Firm Profile, all of its securities activities are conducted through Direct Capital. It provides marketing and due diligence support to Direct Capital's securities activities. The 34 Act is remedial legislation with one of its central purposes to protect investors. *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 553 (1967). Section 10 was specifically created to proscribe fraudulent representations and concealment of material facts. Section 20 of the 34 Act is to impose secondary liability on one who controls a violator of the securities laws and fails to show he acted in good faith. *Borden Inc. v Spoor, Behrins, Campbell & Young, Inc.* 735 F.Supp. 587, 588, (S.D.N.Y. 1990). One of the principal congressional purposes is to protect investors in a slightly sophisticated field and to provide such remedies as are necessary to effectuate congressional purpose. *Hecht v. Harris, Upham & Company*, 430 F.2d 1202, 1208 (9th Cir. 1970). Section 20 provides for liability of persons controlling a violator unless the controlling person acted in good faith and did not directly or indirectly induce the violation. *Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 716 (2nd Cir. 1980). The analysis for determining whether a defendant has controlling person liability is the same under both the Securities Act and the Securities Exchange Act. *Arena Land and Investment Company v. Petty*, 906 F.Supp. 1470, 1482 (D. Utah 1994), affirmed 69 F.3d 547 (10th Cir. 1995). The Moving Defendants, in connection with Direct Capital and under the common control of Womack, have engaged in an

activity regulated for the principal purpose of protecting investors, and did so through significant interstate activities.

An analysis of each of the five factors set for in *Peay* yields the conclusion that the Moving Defendants have failed to meet their burden of establishing constitutionally significant inconvenience.  The Tenth Circuit emphasizes that it is only in a highly unusual case that inconvenience will rise to the level of constitutional concern.  The Moving Defendants cite no case that has held the inconvenience of travel time and expense rises to the level of constitutionally significant inconvenience.  Further, the federal policies of the securities laws and the advancement of those policies, weighs heavily in favor of the exercise of jurisdiction in the present forum which allows the Plaintiffs' vindication of their federal rights, and satisfies concerns of judicial efficiency and economy.  Thus, even if the Moving Defendants could or had demonstrated that litigation in this forum is so inconvenient that its liberty interest has been infringed, the federal interest in litigating the dispute in this forum outweighs any burden imposed on them.  Although the Moving Defendants may have shown some inconvenience through travel time and expense, they have not shown that this Court's assertion of personal jurisdiction will infringe upon their liberty interest and their Motion to Dismiss for Lack of Personal Jurisdiction should be denied.

### The Plaintiffs Have Shown More Than Mere Control Over Direct Capital

The Moving Defendants rely on *In re Baan Company Securities Litigation*, 245 F.Supp.2d 117 (D.D.C. 2003), arguing a plaintiff must allege more than mere control over a primary violator to establish personal jurisdiction and, the Plaintiffs have done nothing more than allege such mere control.  In *San Mateo County Transit District v. Dearman, Fitzgerald &*

*Roberts, Inc.*, 979 F.2d 1356, 1358 (9th Cir. 1992), the Court held that personal jurisdiction for a controlling person is satisfied if the plaintiff makes a non-frivolous allegation that the defendant controlled the person liable for the fraud.   Under this standard, looking no further than the allegations of the Complaints, personal jurisdiction exists over the Moving Defendants.   The Court in *Baan* noted the Ninth Circuit's *San Mateo* decision and found it distinguishable as in *San Mateo*, domestic controlling corporations were involved, while in *Baan*, foreign corporations and individuals were alleged to have controlling person liability.   The Court in *Baan* noted that the Supreme Court in *Ashi Metal Indus. Company v. Superior Court of California*, 480 U.S. 102, 115-16, 107 S.Ct. 1026 (1987) cautioned that in the light of potential international repercussions, American Courts should exercise extra caution in asserting personal jurisdiction over foreign defendants.   Thus the Court in *Baan* stated even if it found the *San Mateo* Court's analysis persuasive, it would not necessarily follow the same approach with respect to foreign controlling person defendants.

Some Courts have held that controlling person liability gives rise to personal jurisdiction when it creates the inference that a defendant's relationship to the controlled party renders it at least constructively aware of the party's alleged unlawful conduct.   *Landry v. Price Waterhouse Chartered Accountants*, 715 F.Supp. 98, 102 (S.D.N.Y. 1989).   In this case, given the interrelatedness of the Moving Defendants with Direct Capital and the common control of the Moving Defendants and Direct Capital by Womack, it is easily inferred that the Moving Defendants, through Womack, were constructively aware of Direct Capital's conduct.   In *Baan,* the Court did uphold personal jurisdiction over a foreign corporation and individual on the allegation of controlling person liability of a domestic corporation.   The Court noted factors,

including the controlling person's receipt of money from the activities of the controlled person, the common control among various related entities by the foreign individual, and the aid and assistance provided by the foreign entity controlling person were such that it did not offend the due process requirements of the Fifth Amendment to assert personal jurisdiction over the foreign corporation and individual.  Similar circumstances exist in the present case.  TIC Capital provides marketing support and due diligence support to Direct Capital in exchange for significant amounts of money.  The Moving Defendants share offices with Direct Capital.  The Moving Defendants and Direct Capital are under the common control of one individual, Womack.  TIC Capital sells all of its securities through Direct Capital.  Direct Capital is licensed to sell securities in the State of Wyoming and, presumably, any securities which TIC Capital may seek to sell in Wyoming, it sells through Direct Capital.

The allegations of the Complaints, together with the documents of which this Court may take judicial notice and which it may consider, show that the assertion of personal jurisdiction over the Moving Defendants comports with Fifth Amendment due process requirements.  Further, the Plaintiffs need only make a *prima facie* showing at this time.  The well plead facts of the Complaints are not controverted and therefore must be accepted as true and all factual disputes at this stage must be resolved in Plaintiffs' favor.  When this is done, considering the evidence before this Court, the due process requirements of the Fifth Amendment are satisfied as to the moving Defendants.

### **Alternatively, the Court Should Allow the Plaintiffs to Conduct Discovery Regarding the Nature of the Moving Defendants' Activities in Relationship with Direct Capital and Womack**

Under applicable Tenth Circuit case law discussed above, the Plaintiffs submit they have made a *prima facie* showing of personal jurisdiction in this District over the moving Defendants. However, if this Court determines Plaintiffs have not made such a *prima facie* showing, because of the significant number of material facts presently unknown to the Plaintiffs, and within the knowledge and possession of the Moving Defendants, Plaintiffs submit that the Court, rather than granting the Motion, should promptly allow the Plaintiffs discovery to fully ascertain the nature of the relationships among the Moving Defendants, Direct Capital, and Womack as well as the nature and extent of the Moving Defendants' interstate activities, particularly any that may either directly or indirectly involve the State of Wyoming.   The particular facts and circumstances of which discovery would be necessary are:  (1) the details of the ownership of Womack of the Moving Defendants and  Direct Capital; (2) the details of the ownership interest of the Moving Defendants in Direct Capital; (3) the nature of the TIC Capital's interstate activities; (4) the nature, extent and amount of securities of TIC Capital sold by Direct Capital; (5) the nature and extent of the marketing support provided by TIC Capital to Direct Capital; (6) the nature and extent of due diligence support provided by TIC Capital to Direct Capital; (7) the amount of compensation received by TIC Capital from Direct Capital for marketing support and due diligence support; and (8) the nature and extent of any involvement of the Moving Defendants in the Striker debenture offerings.

### Pendent Personal Jurisdiction Confers Personal Jurisdiction Over the Moving Defendants for the State Law Claims

The Plaintiffs have brought state law claims against the Moving Defendants, including claims under the Texas Securities Act for common law fraud and for negligence.  These claims all arise from a common nucleus of facts from which Plaintiffs' claims under Section 10(b) and

Rule 10b-5 arise.  Under the doctrine of pendent personal jurisdiction, this Court has personal jurisdiction over the Moving Defendants for the state law claims.  *United States v. Botefuhr*, 309 F.3d 1263, 1272-75 (10th Cir. 2002); *Action Embroidery Corp. v. Atlantic Embroidery Corp.*, 368 F.3d 1174, 1180-81 (9th Cir. 2004).  When a defendant must appear in a forum to defend against one claim, it is generally reasonable to compel that defendant to answer other claims in the same suit arising out of a common nucleus of facts.  *Action Embroidery Corp.* at 1181. Judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties is best served by application of the doctrine of pendent personal jurisdiction.  *Id.*

### A Fourteenth Amendment Due Process Analysis is Unnecessary

The Moving Defendants argue lack of jurisdiction under a Fourteenth Amendment due process analysis in the event the Court considers Plaintiffs' state law claims independent of the federal claims.  The only way a Fourteenth Amendment due process analysis occurs is if this Court first finds personal jurisdiction over the Moving Defendants under Fifth Amendment due process considerations, then determines that Plaintiffs have failed to state claims for relief under Section 10(b) of the 34 Act and Section 12(a)(2) of the 33 Act, and dismisses such claims pursuant to Rule 12(b)(6), leaving only state law claims pending, and then revisits the existence of personal jurisdiction over the Moving Defendants for state law claims under Fourteenth Amendment due process considerations.  The Tenth Circuit has noted the similarity and purpose of due process requirements under both the Fifth Amendment and the Fourteenth Amendment. *Peay*, 205 F.3d at 1121-12.  Personal jurisdiction exists over the Moving Defendants under Fifth Amendment due process considerations, such that the assertion of personal jurisdiction over the Moving Defendants is fair and reasonable.  The same considerations would mandate that

personal jurisdiction over the Moving Defendants also satisfies the due process requirements of the Fourteenth Amendment.

## **CONCLULSION**

The Moving Defendants were part of an interrelated group of companies, owned and controlled by the same individual, Womack. The allegations of the Complaints, taken as true, and the evidence submitted to this Court, establish a *prima facie* showing of personal jurisdiction consistent with Fifth Amendment due process requirements. Accordingly, the Moving Defendants' Motion to Dismiss Plaintiffs' claims pursuant to Fed.R.Civ.P. 12(b)(2) should be denied.

Respectfully submitted this 1st day of October, 2010.

DAVIS & CANNON, LLP


By: *s/*_____
J. Mark Stewart
422 West 26th Street
P.O. Box 43
Cheyenne, WY 82003
Telephone:      (307) 634-3210
Facsimile:      (307) 778-7118
mark@davisandcannonchey.com

Kim D. Cannon
DAVIS & CANNON, LLP
40 South Main
P.O. Box 728
Sheridan, WY 82801
Telephone:      (307) 672-7491
Facsimile:      (307) 672-8955
cannon@davisandcannon.com

John A Hutchings (*pro hac vice*)
DILL DILL CARR STONBRAKER
  &HUTCHINGS, P.C.
455 Sherman Street, Suite 300
Denver, CO 80203
Phone:        (303)777-3737
Facsimile:    (303) 777-3823
jhutchings@dillanddill.com

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing on the 1st day of October, 2010 to the following:

Jeffrey C. Brinkerhoff
Mark W. Gifford
Gifford & Brinkerhoff
jeff@giffordbrinkerhoff.com
mark@giffordbrinkerhoff.com

K Lawson Pedigo
Miller Keffer Bullock & Pedigo
KLPedigo@mkp-law.net

David A. Baugh
Baugh Dalton Carlson & Ryan, LLC
dbaugh@baughdaltonlaw.com

Charles W. Gameros, Jr.
Hoge & Gameros
bgameros@legaltexas.com

Thomas N. Long
Laura Jean Jackson
Long Reimer Winegard
tlong@lrw-law.com
ljackson@lrw-law.com

David F. DeFazio
DeFazio Law Office
david@defaziolaw.com

Jason Tangeman
Anthony Nicholas Goodrich & Tangeman
jtangeman@wyolegal.com

Rick L. Koehmstedt
Schwartz, Bon, Walker & Struder, LLC
rick@schwartzbon.com

Michael T. McConnell
Jared C. Lockwood
McConnell Fleischner Houghtaling &
Craigmile, LLC
mmcconnell@mfhc.com
jlockwood@mfhc.com

Thomas N. Fitzgibbon
Kimberly L. Thigpen
Pfeiffer Thigpen FitzGibbon & Ziontz LLP
tnf@ptflaw.com
klt@ptflaw.com

**and sent either electronically or by mail to:**
Nathan Glossi
605 E. Myrtle Street
Fort Collins, CO 80524
Email: nglossi@hotmail.com

_s/_____