Kim D. Cannon, Wyo. Bar #5-1401
J. Mark Stewart, Wyo. Bar #6-4121
Davis & Cannon, LLP
P.O. Box 43
Cheyenne, WY 82003
Telephone:     (307) 634-3210
Facsimile:     (307) 778-7118
cannon@davisandcannon.com
mark@davisandcannonchey.com
*Attorneys for Plaintiffs*

John A. Hutchings, Pro Hac Vice
Dill Dill Carr Stonbraker & Hutchings, P.C.
455 Sherman Street, Suite 300
Denver, CO 80203
Telephone:     (303)777-3737
Facsimile:     (303) 777-3823
Jhutchings@dillanddill.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| THE MARTHA W. GIBBS REVOCABLE TRUST, SUSAN GIBBS, SCOTT M. GIBBS, AND JAMES W. GIBBS, TRUSTEES et al..      )   )   )   ) | |
|        Plaintiffs,      )   ) | |
| v.      )   ) | Case No. 10CV0120D |
| DENNIS R. LAWRENCE; et al      )   ) | |
|        Defendants.      ) | |

---

**PLAINTIFF'S RESPONSE TO ADOPTION OF MOTION TO COMPEL
ARBITRATION FILED BY DEFENDANTS CAPWEST SECURITIES, INC.,
CAPSTONE FINANCIAL GROUP, INC., COLORADO CAPITAL HOLDINGS, LLC,
PERSONAL MONEY MANAGEMENT, LLC, DAVID LEON SMITH, DALE KEITH
HALL, RANDALL POPE AND NATHAN GLOSSI IN THE RELATED ACTION**

---

Plaintiffs Martha W. Gibbs Revocable Trust, Susan Gibbs, Scott M. Gibbs, and James W. Gibbs, Trustees and Alida D. Talmage Trust FBO Martha Gibbs, Susan Gibbs, Scott M.Gibbs, and James W. Gibbs, Trustees,  hereby adopt and incorporate the statements, arguments and authorities set forth in their Response to Defendants CapWest Securities, Inc. ("CapWest"), Capstone Financial Group, Inc. ("Capstone"), Colorado Capital Holdings, LLC ("CCH"), Personal Money Management, LLC ("PMM"), David Leon Smith ("Smith"), Dale Keith Hall ("Hall"), Randall Pope ("Pope"), and Nathaniel Glossi ("Glossi") (the "CapWest Defendants") Motion to Compel Arbitration and to Dismiss Complaint *Naomi Miles Revocable Trust, et al., v. Dennis R. Lawrence, et al.,* Docket No. 10-CV-0034-D (Doc. No. #78) as follows:

The CapWest Defendants CapWest Securities, Inc. have moved this Court to compel arbitration of the Plaintiffs' claims against them and then to dismiss all of the Plaintiffs' claims against them, adopting the arguments set forth in their Motion to Compel Arbitration in the related case *Naomi Miles Revocable Trust, et al., v. Dennis R. Lawrence, et al.,* Docket No. 10-CV-0034-D (Doc. No. 60).

The CapWest Defendants base their Motion to Compel Arbitration and Dismiss Claims ("Motion to Compel Arbitration") upon predispute arbitration clauses contained in a New Account Form and Account Agreement and Disclosure Statement Confidential between the Martha W. Gibbs Revocable Trust and CapWest and in an Account Application and Account Agreement and Disclosure Statement between Indian Plains, LLC and CapWest(collectively the "Client Account Agreements"), which the CapWest Defendants have submitted as Exhibits A and B respectively to the Declaration of David Leon Smith.   The Plaintiffs agree that the New Account Form/Confidential Account Application and Account Agreement and Disclosure Statement, Exhibits A and B to the Declaration of David Leon Smith, are accurate copies of the

2

only New Account Form/Confidential Account Applications and Account Agreement and Disclosure Statements between the Plaintiffs and any of the CapWest Defendants.

The Motion to Compel Arbitration of the CapWest Defendants should be denied for the following reasons:

1.     The arbitration clauses contained with the Client Account Agreements between the Gibbs Trust, and CapWest and between Indian Plains, LLC and CapWest ares invalid and unenforceable because of CapWest's failure to comply with the mandatory requirements of NASD Rule 3110 (f).

2.     There is no agreement of any nature whatsoever between the Talmage Trust and any CapWest Defendant and, in particular, no agreement to arbitrate any dispute between the Talmage Trust and any CapWest Defendant.

3.     In May of 2008, Martha Gibbs lacked the mental capacity to contract with CapWest Securities, Inc.

4.     The Tenth Circuit holds that upon the granting of a Motion to Compel Arbitration, pursuant to 9 U.S.C. § 3 dismissal of claims is not authorized; instead, the proper relief is a stay of proceedings pending arbitration.

## FACTS

Attached to the Declaration of David Leon Smith as Exhibits A and B are Client Account Agreements.  Exhibit A is a four page document titled "New Account Form" and includes an "Account Agreement and Disclosure Statement."  Exhibit B consists of a one page Confidential Account Application and an untitled page that appears to be an Account Agreement and

Disclosure Statement (Declaration of David Leon Smith, Exhibits A and B respectively). Regarding Exhibit A, at the top of the New Account Form is line item No. 2 entitled "Account Title." In the line immediately following such line item is the following: "Martha W. Gibbs Revocable Trust." The New Account Form is signed at the bottom by Martha W. Gibbs, TTEE." Regarding Exhibit B, at the top of the Confidential Account Application is a line item entitled "Account Title/Registration." In the line immediately following such line item is the following: "Indian Plains, LLC." The Confidential Account Application is signed at the bottom by John S. Gibbs, Managing Member. Plaintiffs further agree with paragraph 6 of the Declaration of David Leon Smith that there is no agreement of any nature whatsoever between the Alida D. Talmage Trust and ("Talmage Trust") and any CapWest Defendant.

Immediately preceding the signatures of Martha and John Gibbs on the respective forms is a four sentence paragraph which is difficult to read. This paragraph is identical in substance to that found in the Confidential Account Application for the *Naomi Miles Revocable Trust, et al., v. Dennis R. Lawrence, et al.,* Docket No. 10-CV-0034-D. As is the case in *Miles*, although there is no document called a "Client Agreement" the first sentence purports to have Martha and John Gibbs acknowledge receiving a copy of a "Client Agreement" and incorporating by reference into the New Account Form/Confidential Account Application this "Client Agreement." The third difficult to read sentence of the paragraph is a sentence in the same size type as the immediately preceding two sentences which references a predispute arbitration agreement "[l]ocated in Section 6 of the Confidential Account Agreement and Disclosure Statement." Although the CapWest Defendants highlight and prominently display in their Memorandum this third sentence referencing the predispute arbitration clause, it is anything but prominently displayed or "highlighted" on the Confidential Account Application. Additionally,

in the case of the New Account Form (Exhibit A), the arbitration clause is found at paragraph 5 of the Account Agreement and Disclosure Statement.

The Account Agreement and Disclosure Statement in Exhibits A and B to the Declaration of David Leon Smith consist of seven paragraphs, all in extremely fine print.  Buried within this one page of fine print are paragraphs 5 and 6 entitled "Arbitration Agreement."  As with virtually all of the preprinted portions of the New Account Form/Client Account Agreement, these paragraphs containing the predispute arbitration clause are in small print and difficult to read. The language and form of the CapWest Account Agreement and Disclosure Statement in Exhibit B is identical to the Account Agreement and Disclosure Statement at issue in *Miles*.  Except for the paragraph numbering, the Account Agreement and Disclosure Statement Exhibit A also appears to be identical to that at issue in *Miles*.

Martha W. Gibbs is a widow of age 79 years, lacking any significant investment knowledge and experience.  For some time prior to May and June of 2008, Mrs. Gibbs had suffered a series of disabling physical and mental conditions having been hospitalized for a series of back surgeries in February 2006.  (Ex. 1, Affidavit of Susan Gibbs, ¶2).    Following these surgeries, Mrs. Gibbs was moved to the Elms Haven rehabilitation facility in Thornton, Colorado in March of 2006 where she remained until October 31, 2006 when she returned to Buffalo, Wyoming.  *Id*.

In August 2007, Mrs. Gibbs was life flighted from Sheridan, Wyoming to Denver, Colorado for sudden paralysis associated with anesthesia administred during an MRI procedure. Following surgery and hospitalization, she moved again to the Elms Haves rehabilitation center on September 6, 2007 where she remained until October 1, 2007.  *Id*. at ¶3.  Mrs. Gibbs was

removed from Elms Haven for having suffered a series of mini-strokes and she was readmitted to Elms Haven on October 8, 2007 where she remained until April 26, 2008.  *Id.*

Mrs. Gibbs, having barely returned home to Buffalo signed the New Account Form on May 29, 2008. (Ex. B to the Declaration of David Smith).  During May and June of 2008, Mrs. Gibbs ability to read and absorb any legal documents or contracts was extremely limited.  She was frequently in pain, suffering spasms in her legs.  (Ex. 1, Affidavit of Susan Gibbs, ¶4; Ex. 2, Affidavit of James Gibbs, ¶4).  During this time, Mrs. Gibbs was taking Percocet for pain and muscle relaxants for the spasms in her legs (Ex. 2, ¶4).  This medication and her advanced age left her with a very limited attention span and inability to focus on a subject in conversation. *Id*. Mrs. Gibbs daughter, Susan Gibbs, and her son, James Gibbs, both noticed that her understanding of business matters had increasingly diminished from 2006 to May 2008.  (Ex. 1, ¶5; Ex. 2, ¶5). Although Mrs. Gibbs was the Trustee of her own Trust, she did not appear to her son and daughter to understand the nature and extent of investments she had made nor the terms and circumstances of those investments or any documents or contracts related thereto.  *Id*.

## ARGUMENT

### I.  THE COURT DETERMINES THE ENFORCEABILITY OF THE PREDISPUTE ARBITRATION CLAUSE

As in *Miles*, the CapWest Defendants have submitted the issue of the arbitrability of Plaintiffs' claims against them to the Court, not contending that such issue should be determined by arbitrators.   In response thereof and pursuant to the Court's minute order of July 28, 2010 (Doc. No. 37) Plaintiffs hereby adopt and incorporate the statements, arguments and authority set forth in the Plaintiffs' Response to Motion to Compel Arbitration and to Dismiss Claims Against Defendants Capwest Securities, Inc., et al. filed in Miles (10-CV-0034-D: Doc. No. 78).

## II.  **THE PREDISPUTE ARBITRATION CLAUSE IS INVALID AND UNENFORCEABLE**

Again, as in *Miles*, the CapWest Defendants argue that the arbitration provision in the New Account Form/Client Account Agreement is binding on the Plaintiffs.  Plaintiff argues that the arbitration provision is unenforceable against both the Talmage Trust and the Gibbs Trust as it fails to comply with the mandatory requirements of NASD Rule 3110 (f).  Plaintiffs' argument in this regard is provided in the Plaintiffs' Response to  Motion to Compel Arbitration and to Dismiss Claims Against Defendants Capwest Securities, Inc., et al. filed in *Miles* (10-CV-0034-D: Doc. No. 78) which Plaintiffs herein adopt and incorporate by reference.

## III. **THERE IS NO AGREEMENT REQUIRING THE TALMAGE TRUST TO ARBITRATE ITS CLAIMS**

Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed to so submit.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. at 83, 123 S. Ct. at 591.   As the CapWest Defendants acknowledge, there is no agreement of any nature whatsoever between the Talmage Trust and any CapWest Defendant. The Talmage Trust purchase was made through Indian Plains, LLC because Lawrence, as Trustee of the Talmage Trust, and Pope, as a registered representative of CapWest, caused the Talmage Trust to place $492,000 into an entity known as Indian Plains, LLC upon their belief that based upon the financial condition of one or more other members of Indian Plains, Indian Plains would qualify as an "accredited investor."  (Amended Complaint, ¶¶44).   The CapWest Defendants, adopting their argument in their motion in *Miles*, assert without any citation to authority that any claims invested through Indian Plains must be arbitrated.

The Ninth Circuit in *Wagner v. Stratton Oakmont, Inc.* 83 F.3d 1046 (9th Cir. 1996) considered a similar situation to that presented in this case.  Initially, Scott Serven opened a

brokerage account with Stratton Oakmont, Inc. which contained a predispute arbitration clause in the account agreement. Subsequently, Serven opened a partnership account at Stratton Oakmont for Wagner/Serven, a partnership in which Serven was a partner, and provided Wagner/Serven's tax identification number. No separate account agreement was entered into between Wagner/Serven and Stratton Oakmont. Ultimately, Wagner/Serven sustained losses in its account and brought claims against Stratton Oakmont for its losses. Stratton Oakmont sought to compel arbitration pursuant to the predispute arbitration clause contained in the agreement signed by Serven individually with Stratton Oakmont. The Court determined that the partnership was a distinct legal entity and there was no evidence that when Serven entered into the agreement individually containing the predispute arbitration clause that he intended to bind the partnership. The Court determined there was no predispute arbitration agreement between Wagner/Serven and Stratton Oakmont and denied Stratton Oakmont's motion to compel that Wagner/Serven arbitrate its claims. Similarly, here there is no basis upon which to compel the Talmage Trust to arbitrate its claims against the CapWest Defendants.

The Talmage Trust has alleged that it is an actual purchaser from CapWest and Pope of securities (Amended Complaint, ¶¶ 4, 44, 45, and 59). The claims asserted against the CapWest Defendants include: First Claim for Relief (Pope, PMM, and CapWest); the Second Claim for Relief (Capstone, CCH, Smith, Hall and White); the Fourth Claim for Relief (Capstone, CCH, Hall); the Fifth Claim for Relief (Pope, PMM, CapWest,Capstone, CCH and Hall); the Seventh Claim for Relief (Pope, CapWest, PPM, Capstone, CCH, Hall and White); the Tenth Claim for Relief (Pope); the Eleventh Claim for Relief (all CapWest Defendants); the Twelfth Claim for Relief (Pope and CapWest); the Thirteenth Claim for Relief (Pope and CapWest); and the Fifteenth Claim for Relief (CapWest). The CapWest Defendants have not asserted that the

8

Talmage does not state valid claims for relief.  The claims for relief, as stated by the Talmage Trust represent claims for relief and that are not subject to arbitration.

## IV. **THE GIBBS TRUST LACKED MENTAL CAPACITY TO CONTRACT**

In *Prima Paint*, the Supreme Court held that in the context of a fraud in the inducement challenge, the "making" of an agreement for arbitration is at issue when there is an independent challenge to the arbitration clause itself rather than to the entire agreement.  *Prima Paint*, 388 U.S. at 403-04.  *Prima Paint* established that arbitration clauses as a matter of law are separable from the contract in which they are imbedded and unless the fraud was directed to the arbitration clause itself, rather than the entire agreement, the arbitration clause will be enforced.   Thus, *Prima Paint* established that fraud in the inducement of the contract as a whole was insufficient to preclude enforcement of the arbitration clause, instead it must be established that the fraud in the inducement was as to the arbitration clause itself.   Courts have expanded this separability holding into other defenses.  *Geske v. Brooks*, 875 F.2d 71, 75 (4th Cir. 1989) (holding that unconscionability and lack of consideration defenses challenging the entire contract, rather than the arbitration clause itself, are for the arbitrator to decide); *UnionMutual Stock Life Insurance Company v. Beneficial Life Insurance Company*, 774 F.2d 524, 529 (1st Cir. 1985) (same with mutual mistake and frustration of purpose); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391, 398 (5th Cir. 1981) (same with duress and unconscionability); *Commonwealth Edison Company v. Gulf Oil Corp.*, 541 F.2d 1263, 1271 (7th Cir. 1976) (same with frustration of performance).   However, as to the defense of mental capacity, Courts have held such defense goes to the formation or very existence of the contract and therefore separability is not applied when the challenge to the enforcement of the arbitration clause is the lack of mental capacity to contract.  *Spahr v. Secco*, 330 F.3d 1226, 1271-73 (10th Cir. 2003); *In*

*re Morgan Stanley & Company, Inc.*, 293 S.W.3d 182, 185-190 (Tex. 2009).

In *Spahr*, the complaint alleged the plaintiff, Spahr, suffered from dementia and Alzheimer's disease and thus did not have sufficient mental capacity to understand the nature and effect of the contract.  The Tenth Circuit held that a mental capacity challenge can logically only be directed at the entire contract.  The Tenth Circuit held that Spahr's mental incapacity defense naturally goes to both the entire contract and the specific agreement to arbitrate.  He lacked the mental capacity to enter into an enforceable contract and place the "making" of the agreement to arbitrate at issue under Section 4 of the FAA.  On this basis, the Court refused to enforce the arbitration clause against Spahr.

*In re Morgan Stanley & Company, Inc.*, the claimant resisted arbitration on the grounds that she lacked the mental capacity to assent to the contract when she signed account agreements with arbitration clauses.  The Texas Supreme Court noted the differentiation between a defense raising an issue of a contract's validity, such as fraud in the inducement, and a formation defense, raising the issue of whether a contract was ever concluded, such as the lack of mental capacity to assent.  The Texas Supreme Court determined that a defense which goes to the formation of a contract, in other words, raises the issue of the very existence of a contract, is a challenge to the validity of the arbitration provisions.  The Texas Supreme Court held that lacking the requisite mental capacity to contract, there can be no assent to arbitrate anything at all.  *In re Morgan Stanley & Company, Inc.*, 293 S.W.2d at 190.  The Gibbs Trust's Amended Complaint alleges the following:

1.      In mid-February of 2006, Martha W. Gibbs, the Trustee of the Gibbs Trust, underwent extensive back surgery and was in a rehabilitation facility from approximately mid-February of 2006 through October 30, 2006.  During such time she was physically disabled and

mentally unable to make any significant investment or business decisions (Amended Complaint, ¶ 49).

2.      Between September 7, 2007 and April of 2008, Martha W. Gibbs underwent further surgery and extended rehabilitation as a result of such surgery.  By May of 2008, Martha W. Gibbs' physical condition had become further debilitating and her mental capacity had continued to diminish.  By May of 2008, she lacked the mental capacity to make informed investment decisions (Amended Complaint, ¶62).

3.      The allegations regarding the Gibbs Trust's purchase of $135,000 of preferred stock of SR-12 are made upon information and belief because Martha W. Gibbs, the then Trustee of the Gibbs Trust which made the purchase, is unable to recall any specific facts regarding the transaction (Amended Complaint, ¶ 63).

The Affidavit of Susan Gibbs, the daughter of Martha W. Gibbs, filed with this Response, further elaborates upon Martha W. Gibbs' physical and mental condition in May and June of 2008.  The Affidavit of Susan Gibbs provides the further details:

1.      In August of 2007, Martha W. Gibbs was flown by Flight for Life, from Sheridan, Wyoming to Denver, Colorado, as the result of a sudden paralysis associated with an anesthesia-administered incident related to additional surgery.  She was hospitalized and moved to Elms Haven Rehabilitation Facility on September 6, 2007.  On October 1, 2007, she suffered a series of mini-strokes requiring her to be moved from Elms Haven Rehabilitation Facility.  However, on October 8, she was returned and stayed until April 26, 2008.

2.      In May and June of 2008, Martha W. Gibbs had just returned to her home in Buffalo, Wyoming.  Her capacity to read and absorb and legal documents or contracts was very limited.  She was frequently in pain, suffering spasms in her legs.  The pain, and medication she

was then on, caused her to have a very limited attention span and she was unable to focus on a subject in conversation.

3.      Susan Gibbs directly observed that Martha W. Gibbs, her mother, had an increased diminishing mental capacity to understand business matters from 2006 to May of 2008 and that she did not seem to understand the nature and extent of investments she had made and the terms and circumstances of those investments.

4.      Susan Gibbs specifically states she does not think Martha W. Gibbs was mentally competent to understand the terms of her contract in May and June of 2008.

James W. Gibbs, a son of Martha W. Gibbs, has also filed an Affidavit providing further information regarding Martha W. Gibbs' diminished mental capacity in May and June of 2008. In his Affidavit, filed with this Response, James W. Gibbs states the following:

1.      He had occasion to observe his mother, Martha W. Gibbs, in May and June of 2008 when she returned from Elms Haven Rehabilitation Facility.

2.      James W. Gibbs observed that Martha Gibbs was on medication for pain, including Percocet, a muscle relaxant for leg spasms.

3.      He believed at the time, and believes currently, that Martha W. Gibbs suffers from a diminished mental capacity as a result of the taking of pain medication and muscle relaxants, as well as old age.

4.      Based upon such observations, he does not think Martha W. Gibbs was mentally competent to understand the terms of a contract and enter into a contract in May and June of 2008.

The evidence is undisputed that Martha W. Gibbs, the Trustee of the Gibbs Trust, who signed the Subscription Agreement containing the arbitration clause, lacked the mental capacity

to contract.  Under such circumstances, she did not assent to arbitrate anything and the arbitration agreement cannot be enforced against her or the Gibbs Trust.

### V.  SHOULD THE COURT COMPEL ARBITRATION IT SHOULD STAY PROCEEDINGS RATHER THAN DISMISS THE CLAIMS

Should the Court compel arbitration, the rule in the Court of Appeals for the Tenth Circuit is to stay the proceedings rather than to dismiss the claims.  Plaintiffs' argument in this regard is fully set out in Plaintiffs' Response in *Miles (*10-CV-0034-D: Doc. No. 78) which Plaintiffs herein adopt and incorporate by reference.

### CONCLUSION

The Plaintiffs agree should this Court determine the predispute arbitration agreement is enforceable that the Plaintiffs' claims against Capstone, CCH, and PPM are sufficiently intertwined with the claims of the other CapWest Defendants that under applicable law, the Plaintiffs can be compelled to arbitrate their claims against those entities.  However, in this particular instance, the Court does not need to reach this issue as in both law and in equity the predispute arbitration clause is unenforceable against the Plaintiffs.   Additionally, the Talmage Trust is not a signatory to any predispute arbitration agreement or any other agreement with any CapWest Defendant.  The CapWest Defendants agree with this.   Arbitration is a matter of contract and in the absence of an agreement within which the Talmage Trust has agreed to arbitrate its claims against the CapWest Defendants there is no basis at law, or in equity, to compel the Talmage Trust to arbitrate any claims against the CapWest Defendants.  Further, the arbitration clause is unenforceable against the Gibbs Trust as Martha W. Gibbs, the Trustee of the Gibbs Trust lacked the mental capacity to contract.

13

The threshold issue is whether the predispute arbitration agreements are invalid and unenforceable by reason of CapWest's failure to comply with NASD Rule 3110(f).  At both law, and in equity, the predispute arbitration agreements are unenforceable.  Both Congress, the Securities and Exchange Commission, which regulates this nation's securities laws, and FINRA, the successor to the NASD, which regulates the conduct of its member broker-dealers, including CapWest, have determined that rules and regulations such as NASD Rule 3110(f) are necessary and appropriate for the protection of investors such as the Gibbs and Talmage Trusts.  The Securities and Exchange Commission in adopting what is now NASD Rule 3110(f) made specific reference to the clear obligations regarding the use by members such as CapWest of predispute arbitration clauses.  The predispute arbitration clauses in the present case incorporates by reference the NASD rules and thus the NASD rules (now FINRA rules) are controlling law, including controlling law with respect to the validity of the predispute arbitration agreement. Applying this law, which imposes very specific requirements for disclosure of predispute arbitration agreements for the protection of investors and the policy (equity) considerations expressed by the Securities and Exchange Commission, the predispute arbitration clause in the present case is invalid and unenforceable.

Rather than highlighting the predispute arbitration agreement, CapWest buried the predispute arbitration agreement in the middle of one page of fine print.  Rather than presenting the important disclosures regarding the effect of arbitration in outline form, CapWest further buried such important disclosures within the middle of the predispute arbitration agreement contained within one page of fine print.  CapWest failed to highlight the existence of the predispute arbitration agreement as required immediately above the signature of the Martha Gibbs and John Gibbs.  Finally, it is ambiguous, at best, whether CapWest obtained the

14

acknowledgment of receipt of the predispute arbitration agreement from either Trust.   Both

legally and equitably, the predispute arbitration agreement is invalid rendering it unenforceable.

For the foregoing reasons, the Motion of the CapWest Defendants to Compel Arbitration

should be denied.

Respectfully submitted this 1st day of October, 2010.

DAVIS & CANNON, LLP

By:_____/s/_____
J. Mark Stewart
422 West 26th Street
P.O. Box 43
Cheyenne, WY 82003
Telephone:     (307) 634-3210
Facsimile:     (307) 778-7118
mark@davisandcannonchey.com

Kim D. Cannon
DAVIS & CANNON, LLP
40 South Main
P.O. Box 728
Sheridan, WY 82801
Telephone:     (307) 672-7491
Facsimile:     (307) 672-8955
cannon@davisandcannon.com

John A Hutchings (*pro hac vice*)
DILL DILL CARR STONBRAKER
    & HUTCHINGS, P.C.
455 Sherman Street, Suite 300
Denver, CO 80203
Phone:          (303)777-3737
Facsimile:      (303) 777-3823
jhutchings@dillanddill.com

Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing on the 1st day of October, 2010 to the following:

Jeffrey C Brinkerhoff
Mark W. Gifford
Gifford & Brinkerhoff
jeff@giffordbrinkerhoff.com
mark@giffordbrinkerhoff.com

David A. Baugh
Baugh Dalton Carlson & Ryan, LLC
dbaugh@baughdaltonlaw.com


Jason Tangeman
Anthony Nicholas Goodrich & Tangeman
jtangeman@wyolegal.com

Charles W. Gameros, Jr.
Hoge & Gameros, LLP
bgameros@legaltexas.net


K Lawson Pedigo
Miller Keffer Bullock & Pedigo
KLPedigo@mkp-law.net

Thomas N. Fitzgibbon
Kimberly Thigpen
Pfeiffer Thigpen FitzGibbon & Ziontz LLP
tnf@ptflaw.com
klt@ptflaw.com


Thomas N Long
Long Reimer Winegard
tlong@lrw-law.com

Rick L. Koehmstedt
Schwartz, Bon, Walker & Struder, LLC
rick@schwartzbon.com


Michael T. McConnell
Traci L. Van Pelt
Jared C. Lockwood
McConnell Fleischner Houghtaling &
Craigmile, LLC
mmcconnell@mfhc.com
tvanpelt@mfhc.com
jlockwood@mfhc.com


               /s/_____

               J. Mark Stewart